**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

**BRUCKNER BURCH PLLC**
Richard J. Burch (TX 24001807) *(Pro Hac Vice Motion Pending)*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone:  713-877-8788

**UNITED STATES DISTRICT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEVIN HUGHES and CRYSTIE KILGER on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br>          -against-<br><br>GETRONICS WANG LLC;<br>GETRONICS USA, INC.; and<br>GETRONICS FLEXIBLE SOLUTIONS, LLC,<br><br>                              Defendants. | **07-CV-10356 (LAK)** |

**DECLARATION OF OSSAI MIAZAD IN OPPOSITION TO DEFENDANTS'
MOTION FOR DETERMINATION THAT THIS ACTION IS NOT
APPROPRIATE FOR CERTIFICATION AS A CLASS OR COLLECTIVE
ACTION PURSUANT TO FEDERALS RULES OF CIVIL PROCEDURE 12(C)
AND 23(D) AND 29 U.S.C. §216(B)**

I, Ossai Miazad, declare, upon personal knowledge and under penalty of perjury,

pursuant to 28 U.S.C. Section 1746, that the following is true and correct:

1.      I am an associate at Outten & Golden LLP, attorneys for Plaintiffs, and an

attorney in good standing admitted to practice in the State of New York and before this

Court.  I make this Declaration in support of Plaintiffs' Opposition to Defendants' Motion

For Determination That This Action Is Not Appropriate For Certification As A Class Or Collective Action.

2.    Plaintiffs filed this lawsuit on November 15, 2007.

3.    Plaintiffs filed their First Amended Class Action Complaint ("FAC") on February 26, 2008 and served it on February 27, 2008.  Attached as **Exhibit ("Ex.") 1** is a true and accurate copy of Plaintiffs' First Amended Class Action Complaint.

4.    On April 14, 2008, the Court entered an Order setting the discovery cut-off for August 15, 2008.  Attached as **Ex. 2** is a true and accurate copy of the Court's Scheduling Order.

5.    Plaintiffs served their First Request for Production of Documents on April 25, 2008.  Attached as **Ex. 3** is a true and accurate copy of Plaintiffs' First Request for Production on Documents dated April 25, 2008.

6.    Defendants' responses are due on May 27, 2008.  To date, Defendants have not produced any documents.

7.    Plaintiffs have noticed the deposition of Stephanie Fields, for June 12, 2008.  Ms. Fields is a human resources consultant for Defendants and filed an affidavit in Support of Defendants' Motion For Determination That This Action Is Not Appropriate For Certification As A Class Or Collective Action.  Attached as **Ex. 4** is a true and accurate copy of Plaintiffs' Amended Notice of Deposition for Stephanie Fields, dated May 21, 2008.

8.    Plaintiffs have noticed the deposition of Rick Kremer for June 13, 2008.  According to Mr. Kremer's Affidavit in Support of Defendants Motion he was one on the Managers who made decisions regarding named Plaintiff Kevin Hughes' work.  Attached

as **Ex. 5** is a true and accurate copy of Plaintiffs' Notice of Deposition for Rick Kremer, dated May 21, 2008.

9.      Pursuant to Fed.R.Civ.P. 30(b)(6), Plaintiffs have noticed deposition pertaining to Getronics' corporate structure for June 23, 2008.  Attached as **Ex. 6** is a true and accurate copy of Plaintiffs' Notice of Deposition Pursuant to Rule 30(b)(6), dated May 19, 2008.

10.      Pursuant to Fed.R.Civ.P. 30(b)(6), Plaintiffs have noticed deposition pertaining to Getronics' policies and procedures for June 24, 2008.  Attached as **Ex. 7** is a true and accurate copy of Plaintiffs' Amended Notice of Deposition Pursuant to Rule 30(b)(6), dated May 21, 2008.

11.      Defendants have noticed the deposition of both named Plaintiffs and served a third-party subpoena on Deutsche Bank, Defendants' customer for whom Plaintiff Hughes provided support while employed by Defendant.

***Decisions Not Available Through Westlaw***

12.      Attached as **Ex. 8** is a true and accurate copy of *Diaz v. Scores Holding Co.*, No. 07-CV-8718, 2008 U.S. Dist. LEXIS 38248 (S.D.N.Y. May 9, 2008).

13.      Attached as **Ex. 9** is a true and accurate copy of *Freeman v. Hoffman-Laroche, Inc.*, 2007 U.S. Dist. LEXIS 92589 (D.N.J. Dec. 18, 2007).

14.      Attached as **Ex. 10** is a true and accurate copy of *Greene v. Robert Half Int'l, Inc.*, No. C05-03248, 2006 U.S. Dist. LEXIS 97050, (N.D. Cal. Mar. 28, 2006).

Dated: New York, New York
        May 27, 2008

_/s/ Ossai Miazad_____
Ossai Miazad

**Outten & Golden LLP**

Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

**AND**

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone:  713-877-8788

Attorneys for Plaintiff and the Putative
Classes

# Exhibit 1

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burch (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000



FEB 26 2008
U.S.D.C. S.D. N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KEVIN HUGHES and CRYSTIE KILGER on behalf
of themselves and all others similarly situated,

                             Plaintiffs,

        -against-

GETRONICS WANG LLC;
GETRONICS USA, INC.; and
GETRONICS FLEXIBLE SOLUTIONS, LLC,

                      Defendants.

---

**CASE NO. 07-CV-10356 (LAK)**

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiffs Kevin Hughes (Hughes) and Crystie Kilger (Kilger) (collectively, "Plaintiffs"),

individually and on behalf of all others similarly situated as class representatives, by their

attorneys Bruckner Burch PLLC and Outten & Golden LLP, allege, upon personal knowledge

and upon information and belief as to other matters, as follows:

1

## PRELIMINARY STATEMENT

1.     Getronics Wang LLC, Getronics USA, Inc. and Getronics Flexible Solutions, LLC (collectively, "Getronics" or "Defendant") is an Information and Communication Technology (ICT) company which designs, integrates and manages ICT systems for companies across New York and around the world.  Upon information and belief, Defendant employs thousands of workers in New York alone.

2.     Upon information and belief, it has been Getronics's policy to deprive its employees in "computer user support positions," such as Plaintiffs, of wages to which they are entitled under the law.  Getronics's unlawful conduct includes, but is not limited to, requiring its workers, including Plaintiffs, to work extensive overtime without paying them at overtime wages.

3.     Upon information and belief, in an attempt to avoid paying some of its workers their earned wages, Getronics has given some of its computer user support positions job titles to create the impression that these employees are exempt from overtime pay requirements under state and federal law.  Hughes and Kilger were victims of this unlawful conduct.

4.     Getronics scheduled Hughes and Kilger to work more than forty hours per week.

5.     Throughout their employment at Getronics, Hughes and Kilger worked overtime but were not paid proper overtime wages of time and a half for the hours they worked in excess of 40 hours per week.

6.     By the conduct described in this Complaint, Getronics willfully violated the Fair Labor Standards Act and the New York Labor Law by failing to pay its employees, including Plaintiffs, proper overtime wages as required by law.

## NATURE OF THE ACTION

7.     This action is brought to recover unpaid wages owed to Hughes, Kilger, and all other similarly situated current and former employees of Defendant as well as for injunctive and declaratory relief against Defendant's unlawful actions, and attorneys' fees and costs.

8.     Plaintiffs bring this action on behalf of themselves and all similarly situated current and former employees of the Defendant who elect to opt into this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and specifically the FLSA's collective action provision (29 U.S.C. § 216(b)), to remedy violations of the wage-and-hour provisions of the FLSA by Defendant, that have deprived Plaintiffs and others similarly situated of their lawful overtime wages.

9.     Hughes also brings this action on behalf of himself and a class of similarly situated current and former employees of Defendant, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for unpaid overtime wages, pursuant to the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 ("New York Labor Law").

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the FLSA action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, as well as original jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy exceeds $5,000,000 and Hughes and/or Kilger is a citizen of a state different from the states in which Defendants are incorporated and/or have their principal places of business.  In addition, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

11.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).

## THE PARTIES

### The Plaintiffs

13.     Hughes is an adult individual who is a resident of Rockaway Beach, New York.

14.     Hughes was an employee of the Defendant in New York State from approximately January 2006 through approximately June 2007.

15.     Kilger is an adult individual who is a resident of Houston, Texas.

16.     Kilger was an employee of Getronics in Texas from approximately January 2002 through approximately June 2007.

### The Defendants

17.     Upon information and belief, Getronics Wang LLC is an inactive limited liability company, incorporated in Delaware, which did business within the City and County of New York.

18.     Getronics USA, Inc. is a Delaware corporation which does business within the City and County of New York.

19.     Getronics Flexible Solutions, LLC is a foreign limited liability company, incorporated in Delaware, which does business within the City and County of New York.

20.     Getronics Wang LLC, Getronics USA, Inc. and Getronics Flexible Solutions, LLC at all relevant times, upon information and belief, jointly employed Plaintiffs.

4

21.    Upon information and belief, Getronics Wang LLC, Getronics USA, Inc. and Getronics Flexible Solutions, LLC were part of a single integrated enterprise that employed Plaintiffs.

22.    Getronics maintains corporate headquarters within the City and County of New York at 440 Ninth Avenue, New York, NY 10001.

23.    Upon information and belief, Getronics maintains control, oversight, and direction over the operation of its facilities, including their employment practices.

## CLASS AND COLLECTIVE ALLEGATIONS

24.    Hughes and Kilger bring FLSA claims for themselves and on behalf of all similarly situated persons who work or have worked for Getronics in computer user support positions within the past three years who elect to opt in to this action (the "FLSA Collective").

25.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs.  Upon information and belief, there are many similarly situated current and former employees of Defendant who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.  Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

26.    Plaintiff Hughes also brings New York Labor Law claims on behalf of himself and a class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of "all persons who work or have worked for Getronics in computer user support positions between November 13, 2001 and the date of judgment in this action (the "Rule 23 Class").

27.     The persons in the Rule 23 Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of the Defendant.

28.     Defendant has acted or has refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

29.     There are questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members of the Rule 23 Class, including but not limited to:

(a)     whether Defendant has failed to keep true and accurate time records for all hours worked by Plaintiffs and the Rule 23 Class;

(b)     what proof of hours worked is sufficient where employer fails in its duty to maintain true and accurate time records;

(c)     whether Defendant has failed and/or refused to pay Plaintiffs and the Rule 23 Class overtime pay for hours worked in excess of 40 hours per work week within the meaning the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

(d)     the nature and extent of Rule 23 Class-wide injury and the appropriate measure of damages for the class;

(e)     whether Defendant has a policy of misclassifying workers as exempt from coverage of the overtime provisions of the New York Labor Law; and

(f)     whether Defendant's policy of misclassifying workers was done willfully or with reckless disregard of the statute.

30.     Hughes' claims are typical of the claims of the Rule 23 Class he seeks to represent.  Plaintiffs and the Rule 23 Class work or have worked for Defendant and have not been paid overtime wages for the hours they have worked in excess of 40 hours per week. Defendant has acted and refused to act on grounds generally applicable to the Rule 23 Class, thereby making declaratory relief with respect to the Rule 23 Class appropriate.

31.     Plaintiff will fairly and adequately represent and protect the interests of the Rule 23 Class.

32.     Plaintiff has retained counsel competent and experienced in complex class actions and in labor and employment litigation.

33.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of a wage and hour litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

## CLASSWIDE FACTUAL ALLEGATIONS

34.     All of the work that Plaintiffs and the members of the FLSA Collective and the Rule 23 Class (collectively "Class Members") have performed has been assigned by the Defendant and/or the Defendant has been aware of all of the work that Plaintiff and the Class Members have performed.

35.     Upon information and belief, it has been Defendant's policy and pattern or practice to classify computer user support positions as exempt from coverage of the overtime provisions of the FLSA and New York Labor Law, without reference to the types of duties these workers performed.

36.     Upon information and belief, Defendant has not trained Plaintiff and the Class Members, or their supervisors, on the differences between exempt and non-exempt work.

37.     As part of its regular business practice, the Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and the New York Labor Law.  This policy and pattern or practice includes but is not limited to:

(a)     willfully failing to record all of the time that its employees, including Plaintiffs and the Class Members, have worked for the benefit of the Defendant;

(b)     willfully failing to keep payroll records as required by the FLSA and New York Labor Law;

(c)     willfully misclassifying Hughes, Kilger and the Class Members as exempt from the requirements of the FLSA; and

(d)     willfully failing to pay its employees, including Plaintiffs and the Class Members, overtime wages for hours that they worked in excess of 40 hours per week.

38.     Upon information and belief, Defendant's unlawful conduct described in this Complaint is pursuant to a corporate policy or practice of minimizing labor costs by violating the FLSA and the New York Labor Law.

39.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

## PLAINTIFFS' FACTUAL ALLEGATIONS

### Background, Duties, and Compensation

**Plaintiff Hughes:**

40.     Hughes was hired by Getronics in approximately January 2006.  When he was hired, Hughes was told by Getronics that he would be considered exempt.

41.     Hughes worked for Getronics from approximately January 2006 through approximately June 2007.

42.     At all times relevant to this action, Hughes worked in one of Getronics's office. Hughes was scheduled and/or expected to work more than 40 hours a week.

43.     Hughes's primary duties included, but were not limited to, responding to customers questions regarding their computer equipment.

44.     Hughes did not hire, fire, schedule, or discipline the other employees who worked along side him.

45.     His hourly rate of pay was not substantially greater than the coworkers with whom he worked.

46.     Hughes did not exercise a meaningful degree of independent discretion with respect to the exercise of his duties.

47.     Hughes's primary duties were primarily mechanical in nature.

**Plaintiff Kilger:**

48.     Kilger was hired by Getronics in approximately January 2002.

49.     Kilger worked for Getronics from approximately January 2002 through approximately June 2007.

50.     At all times relevant to this action, Kilger worked in one of Getronics's office. Kilger was scheduled and/or expected to work more than 40 hours a week.

51.     Kilger's primary duties included, but were not limited to, responding to customers questions regarding their computer equipment.

52.     Kilger did not hire, fire, schedule, or discipline the other employees who worked along side her.

53.     Kilger's hourly rate of pay was not substantially greater than the coworkers with whom she worked.

54.     Kilger did not exercise a meaningful degree of independent discretion with respect to the exercise of her duties.

55.     Kilger's primary duties were mechanical in nature.

### Getronics Failed to Keep Accurate Records

56.     Upon information and belief, consistent with its policy and pattern or practice, Getronics did not keep accurate records as required by the FLSA and New York Labor Law.

### Plaintiffs Were Not Paid Proper Overtime Wages

57.     Consistent with Getronics's policy and pattern or practice, Plaintiffs regularly worked in excess of 40 hours per week without being paid overtime wages.

### Getronics's Violations of the Overtime Laws Were Willful

58.     Upon information and belief, Getronics was or should have been aware that state and federal law required it to pay employees performing non-exempt duties an overtime premium for hours worked in excess of forty per week.  Getronics has been investigated by the United States Department of Labor and/or sued for violations of the FLSA, and was therefore aware of the existence of the FLSA and its overtime requirements.

59.     Upon information and belief, Getronics was aware, or should have been, that Plaintiffs, *inter alia*: (a) primarily or solely performed non-exempt duties; (b) performed little or no supervisory functions; (c) did not have the right to hire or fire employees; (d) performed production, as opposed to administrative, work; and (e) wielded little or no discretion or judgment.

60.     Upon information and belief, Getronics was or should have been aware that Plaintiffs and the putative Class were not "executives" exempt from overtime protections.

61.     Upon information and belief, Getronics was aware, or should have been, that Plaintiffs and the putative Class were not "administrators" exempt from overtime protections.

62.     Getronics's failure to pay Plaintiffs overtime wages for hours worked in excess of 40 hours per week was willful.

### FIRST CAUSE OF ACTION
#### (Fair Labor Standards Act)
#### (Brought on Behalf of Plaintiffs and all FLSA Class Members)

63.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

64.     Getronics has engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

65. At all times relevant, Plaintiffs were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

66. The overtime wage provision set forth in § 207 of the FLSA applies to Getronics

67. Getronics is an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

68. At all times relevant, Plaintiffs were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

69. Getronics failed to pay Plaintiffs and the FLSA Collective the overtime wages to which they were entitled under the FLSA.

70. Getronics's violations of the FLSA, as described in this Complaint have been willful and intentional. Getronics has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other similarly situated current and former employees.

71. Because Getronics's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

72. As a result of Getronics's willful violations of the FLSA, Plaintiffs and all others similarly situated have suffered damages by being denied overtime wages.

73. As a result of the unlawful acts of Getronics, Plaintiffs and the FLSA Class have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

12

## SECOND CAUSE OF ACTION
### (New York Labor Law: Unpaid Overtime Wages)
### (Brought on Behalf of Plaintiff Hughes and all Rule 23 Class Members)

74.     Plaintiff Hughes re-alleges and incorporates by reference all allegations in all preceding paragraphs.

75.     At times relevant to this action, Plaintiff Hughes was an employee and Getronics has been an employer within the meaning of the New York Labor Law.

76.     The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Getronics.

77.     Getronics failed to pay Plaintiff Hughes and the Rule 23 Class the overtime wages to which they were entitled under the New York Labor Law.

78.     By Getronics's failure to pay Plaintiff Hughes and the Rule 23 Class Members overtime wages for hours worked in excess of 40 hours per week, it has willfully violated the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

79.     Due to Getronics's violations of the New York Labor Law, Plaintiff Hughes and the Rule 23 Class Members are entitled to recover from Getronics their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest. (Plaintiff Hughes does not seek liquidated damages under the New York Labor Law for himself or on behalf of the Rule 23 Class Members)

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Hughes and Kilger, individually and on behalf of all other similarly situated persons, pray for the following relief:

A.      That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Getronics in a computer user support position. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages.

B.      Unpaid wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) and the supporting United States Department of Labor regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

E.      Designation of Plaintiff Hughes as representative of the Rule 23 Class, and counsel of record as Class Counsel;

F.      Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under New York Labor Law, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations;

G.      Unpaid overtime pay pursuant to N.Y. Lab. Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations (Plaintiff Hughes does not seek liquidated damages under the New York Labor Law for himself or on behalf of the Rule 23 class);

H.      Pre-judgment interest;

14

     I.        An injunction requiring Defendant to pay all statutorily-required wages pursuant to the New York Labor Law;

     J.        Attorneys' fees and costs of the action; and

     K.       Such other relief as this Court shall deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated: February 26, 2008.

Respectfully submitted,

**OUTTEN & GOLDEN LLP**

By: _____

Justin M. Swartz (JS 7989)

**Outten & Golden LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

**AND**

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burke (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788

**Attorneys for Plaintiff and the Putative Classes**

15

# Exhibit 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

**Kevin Hughes,**
           Plaintiff(s)

        v.                         07-cv-10356(LAK)

**Getronics Wang, LLC,**
           Defendant(s).
- - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/14/08

### SCHEDULING ORDER

A pretrial conference having been held today, it is hereby,

ORDERED that the following schedule of deadlines shall govern the further conduct of pretrial proceedings in this case:

    (a)    Last date to join additional parties as of right or seek leave to do so - 5/5/08

    (b)    Last date to amend pleadings as of right or seek leave to do so - 5/15/08

    (c)    The parties shall make required Rule 26(a)(2) disclosures with respect to:

        (i)  expert witnesses on or before - 7/15/08

        (ii)  rebuttal expert witnesses on or before - 7/30/08.

    (d)    Completion of all discovery - 8/15/08

    (e)    Service of summary judgment motions - 9/15/08

    (f)    Filing of pretrial order, proposed jury instructions and requested voir dire questions -- case ready for trial - 9/15/08.

The following trial materials shall be filed at least ten days before trial:

    (a)    Trial brief stating the legal and factual issues and authorities relied upon and discussing any anticipated substantive or procedural problems

    (b)  Motions in limine to exclude evidence.

    Motions in limine shall be made returnable at the time and date fixed for trial unless made at or prior to the date fixed for filing the pretrial order, in which case they shall be made without a return date and dealt with in accordance with the Court's individual rules of procedure. Papers in opposition to motions in limine made returnable on the trial date shall be filed at least three days before trial.

Dated: April 11, 2008

                                  _____
                                    Lewis A. Kaplan
                             United States District Court

# Exhibit 3

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burch (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
_____

KEVIN HUGHES and CRYSTIE KILGER on behalf
of themselves and all others similarly situated,

                           Plaintiffs,

          -against-

GETRONICS WANG LLC;
GETRONICS USA, INC.; and
GETRONICS FLEXIBLE SOLUTIONS, LLC,

                        Defendants.
_____

**CASE NO. 07-CV-10356 (LAK)**

PLAINTIFFS' FIRST REQUEST
FOR PRODUCTION OF
DOCUMENTS

       Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiffs Kevin Hughes and

Crystie Kilger ("Plaintiffs") request that Getronics Wang LLC, Getronics USA, Inc and

Getronics Flexible Solutions, LLC ("Defendants" or "Getronics"), produce the documents and

electronically-stored information described below for inspection and copying within thirty (30)

days of service hereof at the offices of Outten & Golden LLP, 3 Park Avenue, 29th Floor, New

York, New York 10016 unless otherwise indicated herein.  Defendant is also required to serve

written responses to these requests within thirty (30) days of service hereof pursuant to Federal

Rule of Civil Procedure 34(b).

## DEFINITIONS

1.    **"AND/OR"** shall be construed either disjunctively or conjunctively as necessary

to bring within the scope of this discovery request all responses that might otherwise be

construed to be outside of its scope.

2.    "**COMMUNICATION**" means any conveyance of information from one or more

persons to one or more other persons and includes, but is not limited to, oral, written, electronic,

verbal, and nonverbal modes.

3.    "**COMPENSATION**" means all monies and benefits, including but not limited

to: salaries; hourly wages; overtime wages; commissions; raises; and bonuses; or any other

employment benefit plans, including, but not limited to, pension, severance, stock, retirement,

and medical plans.

4.    The terms **"DEFENDANT,"** "**YOU,**" and "**YOUR**" refer to Getronics Wang

LLC, Getronics USA, Inc. AND/OR Getronics Flexible Solutions, LLC, and includes its

subsidiaries, officers, employees, agents, consultants, attorneys, AND/OR any other persons

acting for it or on its behalf.

5.    To "**DESCRIBE**" a fact, thing, condition, action, or event means to state with

specificity all facts, times, and dates comprising or concerning such fact, thing, condition, action,

or event and to identify all persons involved in such fact, thing, condition, action, or event.

6.    The definition of "**DOCUMENTS and ELECTRONIC INFORMATION**"

(hereinafter **"DOCUMENTS"**) extends to the full limits of Federal Rule of Civil Procedure 34,

as amended on December 1, 2006.  The definition includes, but is not limited to:

      a.    Any written, recorded, or graphic matter or recording of symbols in tangible or electronic form, however produced or reproduced, of every kind, whether in draft or final form, and regardless of where located, including, but not limited to, correspondence, handwriting, records, transcripts, minutes, agreements, contracts, memoranda, notes, statements, maps, diagrams, illustrations, photographs, pictures, telegrams, letters, postcards, written analyses, reports, tape recordings, papers, books, computer printouts, diaries, journals, schedules, databases, worksheets, and records of oral communications;

      b.    All electronic mail and information about electronic mail (including message contents, header information, metadata, and logs of electronic mail system usage);

      c.    All databases (including all records and fields and structural information in such databases);

      d.    All word processing or other program files and file fragments; and

      e.    Any other electronic data.

Pursuant to the amendments to Federal Rule of Civil Procedure 34, electronic information includes information "stored in any medium" (as defined below).

7.    The term "**HOURS**" includes full hours and partial hour(s).

8.    **"IDENTIFY"** or **"IDENTIFICATION"** means, when used in reference to:

      a.    A natural person

            i.    Full name;
            ii.    Present or last known residence and business addresses (including street name and number, city or town, and state or country) and telephone number;
           iii.    Present position, business affiliation, and job description (if the present business or residence address or present position, business affiliation, or job description are unknown, indicate so with statement of such and provide the corresponding last known such

information);

    iv.    Position, business affiliation, and job description at any time in question, with respect to the Request or other request involved, with beginning and end dates.

    b.    A document or electronic information:

    i.    Its description (e.g., letter, memorandum, report, etc);
    ii.    Its title, date, and the number of pages thereof;
    iii.    Its subject matter;
    iv.    Its author's identity;
    v.    Its addressee's identity;
    vi.    The identity of each person who signed it;
    vii.    The identity of each person who received it;
    viii.    Its present location and its custodian's identity (if such document was, but is no longer, in the possession of or subject to control of Defendant, such a statement and the manner and date of the deposition made thereof).

    c.    An oral communication:

    i.    Its date and the place where it occurred;
    ii.    Its substance;
    iii.    The identity of each person to whom such communication was made, and each person who was present when such communication was made.

    d.    Any other context:

    i.    A description with sufficient particularity that the thing may thereafter be specified and recognized, including relevant dates and places, and the identification of relevant people, entities and documents;
    ii.    When used as a part of a request for facts to support a particular allegation or contention, it includes identification of documents and electronic information produced by others as part of the discovery process, experts' reports, and applicable portions of deposition transcripts, identification of oral communications, any and all other forms of recorded facts, whether or not you have finally decided on its use at trial.

    9.    "**IN ANY MEDIUM.**"  Pursuant to the amended Federal Rule of Civil Procedure

34, electronic information subject to disclosure includes information stored "in any medium."

Such media include, but are not limited to:

     a.     Active, online storage locations, such as magnetic disks and hard drives;

     b.     Near-line storage locations, such as optical disks;

     c.     Offline storage locations and archives, such as removable optical disks and magnetic tape media;

     d.     Back-up tapes; and

     e.     Any other media, including, but not limited to, floppy disks, diskettes, CD-ROMs, zip discs, jazz discs, flash memory, DVDs, videotapes, and audiotapes.

10.     "**PLAINTIFFS**" refers to the Plaintiffs named in the First Amended Complaint or any subsequent amended complaint filed in this matter.

11.     "**POLICY**" or "**POLICIES**" mean each rule, procedure, or directive, formal or informal, written or unwritten, and each common understanding or course of conduct that was recognized as such by DEFENDANTS or persons acting or purporting to act on DEFENDANTS' behalf, that has been in effect at any time during the period covered by these demands.  These terms include any change of policy.

12.     The term "**CLASS MEMBERS**" refers to any individual satisfying the class definition set forth in the First Amended Complaint, meaning all persons who were, are, or will be employed by DEFENDANTS in the United States in computer user and/or customer support positions, or individuals employed by DEFENDANTS in similar roles, during the six years preceding the filing of this lawsuit through the date of final disposition of this action.

13.     The term **"OPT-INS"** refers collectively to all individuals who file or have filed written consents to join this lawsuit pursuant to the Fair Labor Standards Act.

14.     "**RELATES TO**" and "**REFERS TO**" mean evidencing, constituting, reflecting, showing, comprising, including, containing, describing, considering, discussing, regarding,

setting forth, studying, analyzing, commenting upon, recommending, alluding to, or mentioning, in whole or in part.

15.    "**WORK**" includes, but is not limited to, all activities or tasks performed in whole or in part, directly or indirectly, for DEFENDANTS' benefit, including but not limited to such tasks performed at home.

## INSTRUCTIONS

Unless otherwise indicated, the following instructions apply to, and are incorporated into, all Definitions, Requests, and Instructions:

1.    All Requests pertain to the period from January 2001 through the time of trial.

2.    With respect to each DOCUMENT produced, Plaintiffs request that Defendants specifies the Request(s) to which the DOCUMENT is responsive.

3.    Plaintiffs request that DEFENDANTS and its counsel prevent the destruction or alteration of any DOCUMENTS requested herein by the operation of any electronic information system (routine or otherwise) and put DEFENDANTS on notice that any destruction or alteration of such DOCUMENTS, or any action that makes such DOCUMENTS more difficult or expensive to access and use, without completing a meet and confer process with Plaintiffs' counsel regarding such action,  will not be considered to be in "good faith," as contemplated in Fed. R. Civ. P. 37(f).  If DEFENDANTS do not believe that they can reasonably comply with this instruction, Plaintiffs request that DEFENDANTS contact Plaintiffs, in writing, within 10 days from receipt of these Requests, to meet and confer about whether immediate Court intervention is necessary.

4.    Unless otherwise indicated, Plaintiffs request that DEFENDANTS produce responsive DOCUMENTS after a meet and confer discussion with Plaintiffs' counsel about the

preferred format for such production.  Plaintiffs request that DEFENDANTS not unilaterally select an electronic format for production.

     5.     Alternatively, if DEFENDANTS do not wish to meet and confer about the format for production of DOCUMENTS, Plaintiffs request such DOCUMENTS as follows:

     a.     For emails: As PST files (with attachments preserved) or as TIFFs with associated text files (with attachments preserved);

     b.     For Word, WordPerfect, clipboard or other word processing documents: Native format or as TIFFs with associated text files;

     c.     For Excel or other spreadsheets: Native format;

     d.     For HTML DOCUMENTS: Native format;

     e.     For data compilations: Excel or comma-separated variable format;

     f.     For paper DOCUMENTS: TIFFs with associated text files;

     g.     For other DOCUMENTS: a searchable, manipulable format.

     6.     All DOCUMENTS should be produced on CD-ROMs or DVDs.

     7.     DOCUMENTS should not be zipped, compressed, encrypted, or otherwise restricted or proprietarily protected for specific use.

     8.     Where specialized or proprietary software is required to access or use DOCUMENTS in their native format, please supply such software.

     9.     All Requests should be read to include a request for all metadata associated with all DOCUMENTS responsive to the Request.

     10.     If a DOCUMENT is available to DEFENDANTS both in paper and electronic form, the Plaintiffs request that DEFENDANTS produce the requested DOCUMENT in electronic form, as described herein.

11.     With respect to each request, DEFENDANTS are requested to provide all DOCUMENTS in DEFENDANTS' possession, custody, or control that are known to DEFENDANTS or that DEFENDANTS can locate or discover through reasonably diligent efforts.

12.     If DEFENDANTS cannot respond to any part of the following Requests in full, please respond to the extent possible, specifying the reason or reasons for DEFENDANTS' inability to respond to the remainder of the Requests.

13.     If, to DEFENDANTS' knowledge, DOCUMENTS responsive to one or more requests were never in DEFENDANTS' possession, custody, or control but are or have been in the possession, custody, or control of any other person, please IDENTIFY all such persons.

14.     If any responsive DOCUMENT was formerly in DEFENDANTS' possession, custody, or control but has been eliminated from DEFENDANTS' possession in any way, including, but not limited to, having been lost, destroyed, transmitted, or discarded, please submit a written statement as follows:

a.     DESCRIBE in detail the nature of the DOCUMENT and its contents;

b.     IDENTIFY the person or persons who authored, prepared, or edited the DOCUMENT and, if applicable, the person or persons to whom the DOCUMENT was sent;

c.     List all dates when the DOCUMENT was copied, created or modified;

d.     List all dates when the DOCUMENT was eliminated from YOUR possession in any way;

e.     State any reason(s) the DOCUMENT was eliminated from YOUR possession in any way; and

f.     List all persons that have had possession of the DOCUMENT or have had

knowledge of its contents.

16.     In accordance with Fed. R. Civ. P. 26(b)(5) and Local Civil Rule 26.2, if any DOCUMENT responsive to PLAINTIFFS' discovery demands is withheld pursuant to a claim of attorney-client privilege, attorney work product privilege, litigation materials privilege, or any other common law or statutory privilege or protection, please specify the following:

       a.     The basis for withholding such DOCUMENT;

       b.     A generic description of the DOCUMENT being withheld;

       c.     The date the information contained in the DOCUMENT was learned or the DOCUMENT created;

       d.     The identity of the individual(s) who learned the information or authored the DOCUMENT;

       e.     The date the DOCUMENT was transmitted or otherwise made available to anyone; and

       f.     The specific Request(s) to which the withheld DOCUMENT relates.

17.     If requested DOCUMENTS are maintained in a file, folder, or other container, please produce the file, folder, or other container, or a complete copy of same, with the DOCUMENTS.

18.     Unless otherwise indicated in writing, the failure to produce any DOCUMENTS in response to any request herein means that such DOCUMENTS do not exist, or are not in DEFENDANTS' possession, custody, or control, or the possession, custody, or control of DEFENDANTS' agents or anybody acting on DEFENDANTS' behalf.

## REQUESTS

**REQUEST NO. 1**:

A list of job titles and the corresponding job descriptions, for all of DEFENDANTS' employees employed at any time between January 1, 2001 and the present, whose work, in any part, involves desktop or laptop support, troubleshooting, monitoring of computer equipment, responding to customer inquiries, AND/OR working at a helpdesk or customer support center.

**REQUEST NO. 2**:

Computer-readable DOCUMENTS sufficient to identify all of DEFENDANTS' employees employed at any time between January 1, 2001 and the present, who have held computer user and/or customer support positions or positions or titles with duties involving responding to customer inquires, desktop or laptop support, troubleshooting and/or help desk support listed by name, title(s), dates of employment, Social Security number, last known home address, and last known telephone number. To the extent that any CLASS MEMBERS are not identified through the production of these computer-readable DOCUMENTS, please produce other DOCUMENTS sufficient to identify such CLASS MEMBERS by name, title(s), dates of employment, Social Security number, last known home address, and last known telephone number.

**REQUEST NO. 3**:

A list of the individuals who supervised or managed the PLAINTIFFS AND/OR any of the CLASS MEMBERS by name, title(s), department(s) or division(s), position(s), location(s), dates of employment, last known address, and last known telephone number.

**REQUEST NO. 4:**

DOCUMENTS sufficient to ascertain the total number of CLASS MEMBERS.

**REQUEST NO. 5:**

All DOCUMENTS, including, but not limited to, memoranda, charts, diagrams, lists, directories, and maps, that REFER or RELATE to the managerial or organizational structure of DEFENDANTS; including, but not limited to, DEFENDANTS' corporate headquarters, other offices, divisions, regions, locations, subsidiaries, and/or worksites; and any other

**REQUEST NO. 6:**

DOCUMENTS sufficient to indicate the hierarchy, reporting relationships, supervisory structure, and levels of supervision above any of the positions held by PLAINTIFFS AND/OR CLASS MEMBERS.

**REQUEST NO. 7:**

All DOCUMENTS that REFER or RELATE to DEFENDANTS' POLICIES RELATING to the method(s) of COMPENSATION (including but not limited to criteria for bonuses or incentive payments), of individuals who have supervised PLAINTIFFS AND/OR CLASS MEMBERS.

**REQUEST NO. 8:**

All DOCUMENTS that REFER or RELATE to DEFENDANTS' POLICIES RELATING to the method(s) of COMPENSATION (including but not limited to criteria for payment of bonuses or incentive payments), of PLAINTIFFS AND/OR CLASS MEMBERS.

**REQUEST NO. 9:**

All DOCUMENTS that contain, REFER, or RELATE TO records of PLAINTIFFS' AND/OR CLASS MEMBERS' WORK time, time recorded by PLAINTIFFS AND/OR CLASS MEMBERS, time recorded by others on behalf of PLAINTIFFS AND/OR CLASS MEMBERS, or time credited to PLAINTIFFS AND/OR CLASS MEMBERS; including, but not limited to,

log-in or sign-in times, log-out or sign-out times, work schedules, computerized time records, time card records, time records DEFENDANTS' have been statutorily required to keep, and other DOCUMENTS indicating the times PLAINTIFFS AND/OR CLASS MEMBERS performed WORK by day.

**REQUEST NO. 10**:

All DOCUMENTS that indicate, REFER, or RELATE TO changes, edits, alterations, or corrections made to any document responsive to Request No. 7.

**REQUEST NO. 11:**

All DOCUMENTS that REFER or RELATE to, indicate, or could assist in determining, the amount of time PLAINTIFFS AND/OR CLASS MEMBERS spent performing WORK for DEFENDANTS.

**REQUEST NO. 12**:

All DOCUMENTS that contain, REFER, or RELATE TO records of PLAINTIFFS' AND/OR CLASS MEMBERS' COMPENSATION, including but not limited to check registers, paycheck stubs, wage summaries, tax documents, wage records DEFENDANTS have been statutorily required to keep, and other documents sufficient to indicate each PLAINTIFFS' and CLASS MEMBER'S COMPENSATION by day.

**REQUEST NO. 13:**

All DOCUMENTS that contain, REFER, or RELATE to PLAINTIFF' AND/OR CLASS MEMBERS' work schedules.

**REQUEST NO. 14:**

All DOCUMENTS that REFER or RELATE to COMMUNICATIONS to PLAINTIFFS AND/OR CLASS MEMBERS RELATED to working additional hours, working on weekends,

or otherwise working beyond PLAINTIFFS' AND/OR CLASS MEMBERS' typical shifts.

**REQUEST NO. 15:**

All DOCUMENTS that REFER or RELATE to DEFENDANTS' decision(s) to classify PLAINTIFFS AND/OR CLASS MEMBERS as exempt from overtime pay requirements under any federal or state law(s).

**REQUEST NO. 16:**

All DOCUMENTS that REFER or RELATE to POLICIES, practices, procedures, forms, methods, rules, standards, or guidelines for the supervision or management of PLAINTIFFS AND/OR CLASS MEMBERS, including, but not limited to DOCUMENTS RELATED to training of individual(s) who have supervised or managed PLAINTIFFS AND/OR CLASS MEMBERS.

**REQUEST NO. 17:**

All DOCUMENTS that REFER or RELATE to DEFENDANTS' human resources POLICIES, practices, records, or manuals applicable to PLAINTIFFS AND/OR CLASS MEMBERS.

**REQUEST NO. 18**:

All DOCUMENTS that REFER or RELATE to duties, responsibilities, qualifications, requirements, AND/OR primary or essential job functions for any position held by PLAINTIFFS AND/OR CLASS MEMBERS, including but not limited to all version of job descriptions and advertisements for employment, including all drafts.

**REQUEST NO. 19:**

All DOCUMENTS that REFER or RELATE to the training of PLAINTIFFS AND/OR CLASS MEMBERS; whether by person, computer, or other means; including, but not limited to,

all versions of curricula, syllabi, training materials, instructions, POLICIES, guidelines, handbooks, handouts, slides, overhead transparencies or their equivalent, presentations, instructors' materials, tests, answer keys, and videos.

**REQUEST NO. 20:**

All DOCUMENTS that REFER or RELATE to orientation or training materials provided by DEFENDANTS to newly employed individuals in any position held by PLAINTIFFS AND/OR CLASS MEMBERS.

**REQUEST NO. 21:**

All DOCUMENTS that REFER or RELATE to DEFENDANTS' POLICY, practice, AND/OR plan regarding the method(s) that PLAINTIFFS AND/OR CLASS MEMBERS were to use to record AND/OR track WORK time.

**REQUEST NO. 22:**

All DOCUMENTS that REFER or RELATE to audits, investigations, inquiries, or studies, by DEFENDANTS, or any third party; including, but not limited to, any union, independent auditor, law firm, individual litigant, or governmental agency, REFERRING or RELATING to:

      a.      DEFENDANTS' compliance or non-compliance with any state or federal wage and hour laws as to PLAINTIFFS AND/OR CLASS MEMBERS;

      b.      DEFENDANTS' compliance with requirements to pay workers all wages due AND/OR for all hours worked;

      c.      DEFENDANTS' compliance with requirements to keep accurate records of the time WORKED by PLAINTIFFS AND/OR CLASS MEMBERS; AND/OR

      d.      Whether DEFENDANTS have misclassified employees as exempt from state or

federal wage and hour laws.

**REQUEST NO. 23:**

      All DOCUMENTS that REFER or RELATE to lawsuits, administrative actions,

complaints, grievances, or expressions of concern (whether formal or informal), whether written

or oral, by any PLAINTIFFS AND/OR CLASS MEMBER, union, or governmental body, or

other person whether made to DEFENDANTS' employee, a union, or a governmental body, that

DEFENDANTS:

      a.     did not pay PLAINTIFFS AND/OR CLASS MEMBERS all wages due; including

but not limited to overtime wages;

      b.     did not pay PLAINTIFFS AND/OR CLASS MEMBERS for all WORK

performed;

      c.     did not record HOURS of WORK performed by PLAINTIFFS AND/OR CLASS

MEMBERS; AND/OR

      d.     misclassified PLAINTIFFS AND/OR CLASS MEMBERS as exempt from state

or federal wage and hour laws.

**REQUEST NO. 24:**

      All DOCUMENTS that REFER or RELATE to inquiries by DEFENDANTS to any

administrative agency RELATING to whether PLAINTIFFS AND/OR CLASS MEMBERS, or

any subset thereof, are exempt or non-exempt from overtime entitlement.

**REQUEST NO. 25:**

      All DOCUMENTS that REFER or RELATE to rulings, decisions, or opinions rendered

by any federal or state court or administrative or governmental agency regarding whether

PLAINTIFFS AND/OR CLASS MEMBERS, or any subset thereof, are exempt or non-exempt

from the protections of any federal or state wage and hour law.

**REQUEST NO. 26:**

All DOCUMENTS, including, but not limited to, training manuals, materials, and handouts, that DEFENDANTS used to educate employees about the requirements of federal or state wage and hour laws.

**REQUEST NO. 27:**

All DOCUMENTS that REFER or RELATE to all good faith efforts that DEFENDANTS has made to comply with the federal or state wage and hour laws, including but not limited to the Fair Labor Standards Act AND/OR the New York Labor Law.

**REQUEST NO. 28:**

All insurance agreements under which any insurer may be liable to satisfy all or part of any judgment or settlement which may be entered in this action or to indemnify or reimburse for payments made to satisfy all or part of any judgment.

**REQUEST NO. 29:**

All applicable insurance agreements under which any insurer may be liable to pay for any portion of the attorneys' fees or costs of defending this action or to indemnify or reimburse for such fees or costs.

**REQUEST NO. 30**:

All DOCUMENTS that REFER or RELATE to DEFENDANTS' document retention POLICY or computer record-keeping POLICY AND/OR any deviations from such policy.

**REQUEST NO. 31:**

All DOCUMENTS that REFER or RELATE to DEFENDANTS' POLICIES, practices, procedures, methods, or techniques for compiling, editing, modifying, AND/OR updating

computer readable files, records, or databases containing the information specified in these Requests.

**REQUEST NO. 32:**

All DOCUMENTS that REFER or RELATE to COMMUNICATIONS between or among DEFENDANTS and any other person(s) (excluding DEFENDANTS' outside attorneys) RELATING to this lawsuit, the allegations in the First Amended Complaint, AND/OR the conduct, policies, or practices described in the First Amended Complaint.

**REQUEST NO. 33**:

All DOCUMENTS that REFER or RELATE to DEFENDANTS' COMPENSATION plans, POLICIES, practices, and/or decision-making; including but not limited to DOCUMENTS related to wage rates, salaries, bonuses, and incentive compensation.

**REQUEST NO. 34:**

All DOCUMTS that REFER or RELATE to PLAINTIFFS, including their complete personnel files.

**REQUEST NO. 35**:

All DOCUMENTS that REFER or RELATE to DEFENDANTS' affirmative defenses.

Respectfully submitted,

**OUTTEN & GOLDEN LLP**

By: _____
Ossai Miazad (OM 1127)

**Outten & Golden LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor

17

New York, New York 10016
Telephone:  212-245-1000

**AND**

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burke (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone:  713-877-8788

**Attorneys for Plaintiff and the Putative Classes**

## CERTIFICATE OF SERVICE

I, Susan Zheng, under penalties of perjury, certify the following as true and correct: I am not a party to this action; and I am over 18 years of age. On this 25th day of April 2008, I served a true and correct copy of the foregoing **Plaintiffs' First Request for Production of Documents** by causing same to be served via email and courier service to the following attorneys of record for: Getronics Wang LLC, Getronics USA, Inc., and Getronics Flexible Solutions, LLC; defendants in this action, whose last known address is:

Felice B. Ekelman
Jackson Lewis LLP
59 Maiden Lane
New York, New York 10038
(212) 545-4000

Susan Zheng

# Exhibit 4

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burke (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

KEVIN HUGHES and CHRYSTIE KILGER on behalf
of themselves and all others similarly situated,

               Plaintiffs,

    -against-

GETRONICS WANG LLC;
GETRONICS USA, INC.; and
GETRONICS FLEXIBLE SOLUTIONS, LLC,

               Defendants.

**CASE NO. 07-CV-10356 (LAK)**

**AMENDED DEPOSITION
NOTICE FOR STEPHANIE
FIELDS**

---

PLEASE TAKE NOTICE THAT, pursuant to Rule 30 of the Federal Rules of Civil Procedure,

Plaintiffs will take the deposition upon oral examination of **Stephanie Fields** before an officer

authorized by law to administer oaths, at the law offices of Outten & Golden LLP, 3 Park

Avenue, 29th Floor, New York, New York, on **June 12, 2008 at 10:00 a.m.**, or any adjourned

date thereof, and continuing from day to day until completion.  The deposition testimony will be

recorded by stenographic means and videotape.

Dated: New York, New York
     May 21, 2008

By: _____
     Ossai Miazad (OM 1127)

**Outten & Golden LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

**AND**

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burke (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone:  713-877-8788

**Attorneys for Plaintiff and the Putative Classes**

# Exhibit 5

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burke (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KEVIN HUGHES and CHRYSTIE KILGER on behalf
of themselves and all others similarly situated,

                        Plaintiffs,

        -against-

GETRONICS WANG LLC;
GETRONICS USA, INC.; and
GETRONICS FLEXIBLE SOLUTIONS, LLC,

                     Defendants.

**CASE NO. 07-CV-10356 (LAK)**

**DEPOSITION NOTICE FOR
RICK KREMER**

---

PLEASE TAKE NOTICE THAT, pursuant to Rule 30 of the Federal Rules of Civil Procedure,

Plaintiffs will take the deposition upon oral examination of **Rick Kremer** before an officer

authorized by law to administer oaths, at the law offices of Outten & Golden LLP, 3 Park

Avenue, 29th Floor, New York, New York, on **June 13, 2008 at 10:00 a.m.**, or any adjourned

date thereof, and continuing from day to day until completion.  The deposition testimony will be recorded by stenographic means and videotape.

Dated: New York, New York
        May 21, 2008

By: _____
        Ossai Miazad (OM 1127)

**Outten & Golden LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

**AND**

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burke (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone:  713-877-8788

**Attorneys for Plaintiff and the Putative Classes**

# Exhibit 6

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burke (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone:  713-877-8788

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
———————————————————————

KEVIN HUGHES and CHRYSTIE KILGER on behalf
of themselves  and all others similarly situated,

               Plaintiffs,

    -against-

GETRONICS WANG LLC;
GETRONICS USA, INC.; and
GETRONICS FLEXIBLE SOLUTIONS, LLC,

            Defendants.
———————————————————————

**CASE NO. 07-CV-10356 (LAK)**

**DEPOSITION NOTICE FOR**
**POLICIES AND PRACTICES**

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs will take the deposition upon oral examination of a witness or witnesses

that defendants Getronics Wang LLC, Getronics USA, Inc. and Getronics Flexible Solutions,

LLC (collectively referred to as "Defendants" or "Getronics"), designate as a corporate

representative(s) before an officer authorized by law to administer oaths, at the law offices of

Outten & Golden LLP, 3 Park Avenue, 29th Floor, New York, New York, on **June 19, 2008 at 10:00 a.m.**, or any adjourned date thereof, and continuing from day to day until completion.  The deposition testimony will be recorded by stenographic means and videotape.

Unless otherwise stated, the time period of the inquiry is limited to January 1, 2001, through to the present.  The areas of inquiry of Getronics corporate representative(s) will be as follows:

1.      Job titles, and the corresponding job description, of positions that are "in some way related to the use of information technology and computers," as stated in paragraph 6 of the Affidavit of Stephanie Fields in Support of Defendant' Motion for Determination that this Action is Not Appropriate for Certification as a Class or Collective Action (attached hereto as Exhibit A), and which Getronics considers exempt for under the Fair Labor Standards Act (hereinafter referred to as "IT and computer support related positions").

2.      Getronics' policies and practices regarding the job duties of IT and computer support related positions;

3.      Getronics' policies and practices governing compensation of IT and computer support related positions since 2001; including but not limited to:

   a.   Wage rates, salary rates, bonuses, overtime rates, and/or total compensation;

   b.   the method and timing of compensation;

   c.   vacation compensation;

   d.   methods of tracking compensation; and

   e.   Deductions from pay.

4.      Any changes in Getronics' manner of compensating employees in IT and

computer support related positions during the last ten years;

5.      The workload of, and hours worked by, employees in IT and computer support related positions;

6.      Work schedules applicable to employees in IT and computer support related positions, including but not limited to any policies, practices, or procedures regarding times that these employees were required, recommended, or otherwise suffered to work.

7.      The decision to treat employees in IT and computer support related positions as exempt from entitlement to overtime compensation, including but not limited to:

> a.   the identity of the person, persons, or group, responsible for the decision or decisions;
>
> b.   the method by which a decision regarding an employee's or group of employees' exempt or non-exempt status is made;
>
> c.   the method by which an employee's or group of employees' exempt or non-exempt status is reviewed on an on-going basis;
>
> d.   any involvement by legal counsel in such a decision.

8.      Getronics' policies and practices governing compensation of the Getronics' employees who directly supervise IT and computer support related positions, including incentive compensation or bonuses, if any;

9.      Getronics' policies and practices concerning training of IT and computer support related positions, including training conducted as part of any initial orientation and training conducted on an ongoing basis.

Dated: New York, New York
      May 19, 2008

By: _____

    Ossai Miazad (OM 1127)

**Outten & Golden LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

**AND**

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burke (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788

**Attorneys for Plaintiff and the Putative Classes**

4

# Exhibit 7

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burke (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788

**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

KEVIN HUGHES and CHRYSTIE KILGER on behalf
of themselves and all others similarly situated,

                             Plaintiffs,

      -against-

GETRONICS WANG LLC;
GETRONICS USA, INC.; and
GETRONICS FLEXIBLE SOLUTIONS, LLC,

                        Defendants.

**CASE NO. 07-CV-10356 (LAK)**

**AMENDED DEPOSITION NOTICE FOR POLICIES AND PRACTICES**

---

PLEASE TAKE NOTICE THAT, pursuant to Rule 30(b)(6) of the Federal Rules of Civil

Procedure, Plaintiffs will take the deposition upon oral examination of a witness or witnesses

that defendants Getronics Wang LLC, Getronics USA, Inc. and Getronics Flexible Solutions,

LLC (collectively referred to as "Defendants" or "Getronics"), designate as a corporate

representative(s) before an officer authorized by law to administer oaths, at the law offices of

Outten & Golden LLP, 3 Park Avenue, 29th Floor, New York, New York, on **June 24, 2008 at 10:00 a.m.**, or any adjourned date thereof, and continuing from day to day until completion. The deposition testimony will be recorded by stenographic means and videotape.

Unless otherwise stated, the time period of the inquiry is limited to January 1, 2001, through to the present. The areas of inquiry of Getronics corporate representative(s) will be as follows:

1.      Job titles, and the corresponding job description, of positions that are "in some way related to the use of information technology and computers," as stated in paragraph 6 of the Affidavit of Stephanie Fields in Support of Defendant' Motion for Determination that this Action is Not Appropriate for Certification as a Class or Collective Action (attached hereto as Exhibit A), and which Getronics considers exempt for under the Fair Labor Standards Act (hereinafter referred to as "IT and computer support related positions").

2.      Getronics' policies and practices regarding the job duties of IT and computer support related positions;

3.      Getronics' policies and practices governing compensation of IT and computer support related positions since 2001; including but not limited to:

> a.  Wage rates, salary rates, bonuses, overtime rates, and/or total compensation;
>
> b.  the method and timing of compensation;
>
> c.  vacation compensation;
>
> d.  methods of tracking compensation; and
>
> e.  Deductions from pay.

4.      Any changes in Getronics' manner of compensating employees in IT and

computer support related positions during the last ten years;

5.      The workload of, and hours worked by, employees in IT and computer support related positions;

6.      Work schedules applicable to employees in IT and computer support related positions, including but not limited to any policies, practices, or procedures regarding times that these employees were required, recommended, or otherwise suffered to work.

7.      The decision to treat employees in IT and computer support related positions as exempt from entitlement to overtime compensation, including but not limited to:

    a.   the identity of the person, persons, or group, responsible for the decision or decisions;

    b.   the method by which a decision regarding an employee's or group of employees' exempt or non-exempt status is made;

    c.   the method by which an employee's or group of employees' exempt or non-exempt status is reviewed on an on-going basis;

    d.   any involvement by legal counsel in such a decision.

8.      Getronics' policies and practices governing compensation of the Getronics' employees who directly supervise IT and computer support related positions, including incentive compensation or bonuses, if any;

9.      Getronics' policies and practices concerning training of IT and computer support related positions, including training conducted as part of any initial orientation and training conducted on an ongoing basis.

Dated: New York, New York
      May 21, 2008

By: _____
    Ossai Miazad (OM 1127)

**Outten & Golden LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

**AND**

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burke (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788

**Attorneys for Plaintiff and the Putative Classes**

4

# Exhibit 8

2008 U.S. Dist. LEXIS 38248, *

LEXSEE 2008 US DIST. LEXIS 38248

**SIRI DIAZ, CAROLYN SIEGEL, TALIA BUMB, BLERTA VIKKI, DANIELLE OWIMRIN, SUSAN LEVIN, on behalf of themselves and all others similarly situated, Plaintiffs, -against- SCORES HOLDING COMPANY, INC.; GO WEST ENTERTAINMENT, INC. a/k/a SCORES WEST SIDE; SCORES ENTERTAINMENT, INC., a/k/a SCORES EAST SIDE; ENTERTAINMENT MANAGEMENT SERVICES, INC.; and 333 EAST 60th STREET, INC. a/k/a SCORES EAST SIDE, Defendants.**

**07 Civ. 8718 (RMB)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2008 U.S. Dist. LEXIS 38248**

**May 9, 2008, Decided
May 9, 2008, Filed**

**COUNSEL:** [*1] For Siri Diaz, on behalf of herself and all others similarly situated, Carolyn Siegel, Talia Bumb, Blerta Vikki, Danielle Owimrin, Susan Levin, on behalf of herself and all others similarly situated, Plaintiffs: Adam T Klein, Anjana Samant, Justin Mitchell Swartz, Tammy Theresa Marzigliano, Cara Elizabeth Greene, LEAD ATTORNEYS, Outten & Golden, LLP (NYC), New York, NY; Richard Jennings Burch, PRO HAC VICE, Bruckner, Burch, P.L.L.C., Houston, TX.

For Scores Holding Company, Inc., Go West Entertainment, Inc., Defendants: Jerrold Foster Goldberg, LEAD ATTORNEY, Eric Bruce Sigda, Greenberg Traurig, LLP (200 Park Ave.), New York, NY; Lauren Rachel Tanen, Greenberg Traurig, LLP (NYC), New York, NY.

For Scores Entertainment, Inc., also known as Scores East Side, Go West Entertainment, Inc., also known as Scores West Side, Entertainment Management Services, Inc., 333 East 60th Street, Inc., Defendants: Jerrold Foster Goldberg, LEAD ATTORNEY, Eric Bruce Sigda, Greenberg Traurig, LLP(200 Park Ave.), New York, NY.

**JUDGES:** RICHARD M. BERMAN, U.S.D.J.

**OPINION BY:** RICHARD M. BERMAN

**OPINION**

**ORDER**

**I. Background**

On February 21, 2008, Plaintiffs Siri Diaz, Carolyn Siegel, Talia Bumb, Blerta Vikki, Danielle Owimrin, and Susan Levin ("Plaintiffs") [*2] filed a Second Amended Complaint ("Complaint") on behalf of themselves and all other current and former Scores employees ("Class") "who have received part of their compensation as tips" (including, among others, bartenders, "servers," and dancers) at two New York City Scores "adult nightclubs" ("Scores East" and "Scores West") allegedly owned and/or operated by Scores Holding Company, Inc., Go West Entertainment, Inc. a/k/a Scores West Side, Scores Entertainment, Inc., a/k/a Scores East Side, Entertainment Management Services, Inc., and 333 East 60th Street, Inc. a/k/a Scores East Side (collectively, "Defendants"). (Compl. PP 1, 94, 104.) Plaintiffs allege, among other things, "unlawful wage deductions" and violations by Defendants of the mandatory minimum wage and overtime regulations under (.1) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* ("FLSA Claims"), and (2) New York Labor Law Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.* ("New York Labor Law Claims").

On March 28, 2008, Plaintiffs filed a motion for (A) "conditional certification" of a collective action pursuant to FLSA § 216(b), and (B) "court-authorized notice" ("Notice") to potential Class members [*3] that they may "opt-in" to the action. (Plaintiffs' Memorandum of Law, dated March 28, 2008 ("Pl. Mem."), at 1.) On April 11, 2008, Defendants opposed Plaintiffs' motion, arguing, among other things, that: (A) "conditional certifica-

tion . . . should be denied" because, among other reasons, "Plaintiffs have absolutely no evidence of common employment policies and practices" (Defendants' Memorandum of Law, dated April 11, 2008 ("Del Mem."), at 11); and (B) "Plaintiffs' proposed notice is not appropriate for distribution to the Putative Class" (*id.* at 23). Defendants also filed a cross-motion to dismiss (C) Plaintiffs' New York Labor Law Claims because they are "inherently inconsistent with the FLSA" and claims asserted on behalf of Danielle Owimrin and Susan Levin because they "failed to appear for depositions." (*Id.* at 2-10.) On April 21, 2008, Plaintiffs submitted a Reply Memorandum of Law ("Pl. Reply") opposing Defendants' cross-motion to dismiss and stating, apparently for the first time, that Plaintiffs "have not moved for collective treatment" of their "overtime claims." (Pl. Reply at 17 n.28.) On April 24, 2008, Defendants submitted a Reply Memorandum of Law ("Def. Reply"). The [*4] parties waived oral argument.

On April 23, 2008, Defendants advised the Court that "on April 18, 2008, Defendant Go West Entertainment, Inc. a/k/a Scores West Side filed a voluntary petition for bankruptcy under Chapter 11 in the United States Bankruptcy Court, Southern District of New York, Petition No. 08-11420," and that "[a]ccordingly, this action is stayed pursuant to 11 U.S.C. § 362." (Go West Notice of Bankruptcy and Automatic Stay, dated April 23, 2008 ("Bankruptcy Notice").) In an Order, dated April 24, 2008, the Court directed the parties to "apprise the Court . . . re: what effect, if any, the Notice has on pending motions" (Order, dated April 24, 2008) and, in a letter to the Court, dated April 24, 2008, Defendants stated that it is "likely that Go West will apply for a stay as to the entire *Diaz* action as the determination as to Scores East would have a negative impact on Go West" (Defs' Letter, dated April 24, 2008). In a letter to the Court, dated April 24, 2008, Plaintiffs stated that "the. Notice has no effect on this case as to any Defendant other than Go West . . . ." (Pls' Letter, dated April 24, 2008.)

In an Order, dated April 25, 2008, the Court directed the parties [*5] to furnish "the input of bankruptcy counsel (as to the current motions, etc.) with regard to Go West's Bankruptcy filing -- in writing by 5/1/08 [at] noon." (Order, dated April 25, 2008.) In a letter, dated April 30, 2008, Go West's bankruptcy counsel stated, among other things, that "in unusual circumstances the Automatic Stay will be applied to actions involving non-debtor third parties," and that "the bankruptcy proceeding of the debtor will involve a substantial claim by the Plaintiffs such that the civil litigation will distract the debtor from its reorganization efforts or that an adverse judgment is likely to have a significant *stare decisis* impact ... ." (Defs' Letter, dated April 30, 2008.) In a letter, dated May 1, 2008, Plaintiffs bankruptcy counsel argued,

among other things, that "the matter should proceed *vis a vis* the non-Debtor parties absent a specific order from the Bankruptcy Court extending the stay to non-debtor parties." (Pls' Letter, dated May 1, 2008, at 2.)

In a letter, dated May 1, 2008, Plaintiffs "request[ed] permission to file a motion, under Fed. R. Civ. P. 21, to sever the claims of the plaintiffs and putative class members who worked at the Scores club [*6] on the East Side . . . from the claims of the workers . . . at the Scores club on the West Side . . . ." (Pls' Letter, dated May 1, 2008.) In a letter, dated May 6, 2008, Defendants countered that "Plaintiffs' application to sever the case . . . will not advance the litigation and should be denied." (Defs' Letter, dated May 6, 2008.)

**For the reasons set forth below, Plaintiffs' motion for conditional certification of an FLSA collective action under 29 U.S.C. § 216(b) is granted; Plaintiffs' motion for Court-authorized notice of the collective action is granted (with modifications); Defendants' motion to dismiss the New York Labor Law Claims and the claims of Danielle Owimrin and Susan Levin is denied; the lawsuit is stayed with respect (only) to Defendant Go West; and Plaintiffs' request for permission to move to sever the claims relating to Scores West and Scores East is denied.**

**II. Legal Standard**

"Generally, courts proceed in two stages in determining whether a matter should be certified as an FLSA collective action." *Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039, 2006 WL 2819730, at *7 (S.D.N.Y. Sept. 29, 2006). "In the first stage, ... if the plaintiff satisfies 'the minimal burden of showing [*7] that the similarly situated requirement is met,' the court certifies the class as a collective action." *Id.* (citation omitted). "Potential class members are then notified and given an opportunity to opt-in." *Id.* "At the second stage, the court examines the record again, with the benefit of discovery, and revisits the question of whether plaintiffs are similarly situated." *Id.*. "The burden for demonstrating that potential plaintiffs are 'similarly situated' is very low at the [first] stage. Plaintiff need only make a 'modest factual showing' that plaintiff and potential collective action members were victims of 'a common policy or plan that violated the law.'" *Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted). "At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Id.* (citation omitted).

"It is well settled that courts may authorize notice when the Plaintiff has demonstrated that he and potential plaintiffs are similarly situated." *Fasanelli v. Heartland*

2008 U.S. Dist. LEXIS 38248, *

*Brewery, Inc.*, 516 F. Supp.2d 317, 322-23 (S.D.N.Y. 2007). "Court authorization [*8] of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).

In reviewing a Rule 12(b)(6) motion, the Court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Gorman v. Con. Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007). Although the complaint "does not need detailed factual allegations" to survive a motion to dismiss, plaintiffs must, at a minimum, sufficiently plead the facts underlying the claim "to raise the right to relief above the speculative level . . . ." *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (citation and internal quotations omitted); *accord Cannon v. Douglas Elliman, LLC*, 2007 U.S. Dist. LEXIS 91139, 2007 WL 4358456, at *3 (S.D.N.Y. Dec. 10, 2007).

"[T]he extension of the automatic stay under [Bankruptcy] Code Section 362(a) to a nondebtor" is "extraordinary relief," *In re McCormick*, 381 B.R. 594, 601 (Bankr. S.D.N.Y. 2008), and is "not favored absent some usual circumstance," *Millard v. Developmental Disabilities Institute, Inc.*, 266 B.R. 42, 45 (E.D.N.Y. 2001).

"A [*9] trial court may sever parties or claims in its discretion to promote judicial economy." *In re Methyl Tertiary Butyl Ether ("Methyl Ether") Prods. Liab. Litig.*, 247 F.R.D. 420, 424 (S.D.N.Y. 2007).

## III. Analysis

### Bankruptcy of Go West

Defendants argue that the entire case should be stayed because, among other reasons, "there appears to be such a significant identity of interest between the debtor and the co-defendants, [that] there is a great potential of binding preclusion in the event of an adverse judgment." (Defs' Letter, dated April 30, 2008.) Plaintiffs counter that that "the [Bankruptcy] Notice has no effect on this case as to any Defendant other than Go West" (Pls' Letter, dated April 24, 2008) and, apparently in the alternative, that Plaintiffs should be permitted to move to "sever the claims of the plaintiffs and putative class members who worked at the Scores club on the East Side . . . from the claims of the workers . . . at the Scores club on the West Side" because "[w]hile it is possible that the West Side Case may be stayed due to the bankruptcy filing, there is no reason that the East Side Case should not proceed" (Pls' Letter, dated May 1, 2008, at 1-2).

The action is stayed [*10] as to Defendant Go West. *See Millard*, 266 B.R. at 44-45 (staying FLSA action as

to bankrupt defendant). At the same time, the remainder of the case should proceed because, at present, there is no evidence the action "will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard Intern*, 321 F.3d 282, 287 (2d Cir. 2003) The Complaint alleges, among other things, that the employees at Scores West are "jointly employed" by Scores Holding Company, Inc., as to which there is no stay. (Compl. PP 35-82.) Courts have declined to extend a bankruptcy stay to co-defendants in similar (joint employment) situations. *See Millard*, 266 B.R. at 43-45. "We have not located any decision applying the stay to a non-debtor solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision." *Queenie*, 321 F.3d at 288.

It would not be appropriate to sever the claims involving Scores East from those involving Scores West at this time because these claims appear to "arise out of the same transaction or occurrence" and "present some common questions of law or fact," and severance would not "promote [*11] judicial economy." *In re Methyl Ether*, 247 F.R.D. at 424; *see also United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). [1]

> 1    This issue may be revisited in the future depending upon, among other things, the status of the Go West bankruptcy proceedings.

### (A) Collective Action Certification

Plaintiffs argue that the Court should conditionally certify a collective action because, among other reasons: "Scores applies the same compensation policies and practices to workers at Scores West and Scores East" (Pl. Mem. at 4); and "Scores subjected dancers to the same policies as non-dancers -- including taking part of their customer tips, failing to pay them minimum wages, and failing to pay their uniform expenses" (*id.* at 14-16).

Defendants counter, among other things, that: "Plaintiffs have absolutely no evidence of common employment policies and practices -- let alone payroll practices -- at Scores East Side and Scores West Side" (Def. Mem. at 11); and "plaintiffs seek conditional certification for a class that would include, on the one hand, bartenders, cocktail servers and waitresses, who are hourly paid W-2 employees, and on the other hand, dancers and entertainers, who are independent [*12] contractors without steady hours or schedules" (*id.* at 11, 20).

Conditional certification is granted. 29 U.S.C. § 216(b). Plaintiffs have satisfied their burden to "make a 'modest factual showing' that plaintiff[s] and potential collective action members were victims of 'a common policy or plan that violated the law.'" *Lynch*, 491 F. Supp. 2d at 368 (citation omitted). Among other things,

Scores East and Scores West appear to share the same ownership, the same upper management, and the same "day-to-day" management (*see* Deposition of John Neilson, President of Scores Holding Company, Inc., dated Feb. 7, 2008, at 31-43); they share the same "Employee Handbook" (*see* Declaration of Sin Diaz, dated Jan 16, 2008 ("Diaz Decl."), Ex. B: "Scores New York Employee Handbook," dated January 2007, at 1; and they share the same employee "Training Manual" (*see* Declaration of Talia Bumb, dated Jan. 17, 2008, Ex. B: "Scores New York Service Training Manual," dated Jan. 2007, at 11, 14, 37-38). Both clubs are also alleged to pursue, for example, "a policy of failing to pay workers the full value of the tips they earn in 'Diamond Dollars,' an imitation currency .... that Scores sells to credit card-paying  [*13] customers " (Pl. Mem. at 4-5; *see* Diaz Decl. P 6-8 ("When workers . . . presented Scores with the Diamond Dollars we received as tips and asked Scores to exchange them for cash, Scores deducted and retained a portion of those tips. Scores paid workers only 90 cents on the dollar . . ."); Deposition of Blerta Vikki, dated Jan. 28, 2008 ("Vikki Dep."), at 105-07 (Diamond Dollars were used at both locations); Employee Handbook at 8; Training Manual at 5, 20-21; *see also* Vikki Dep. at 22-24 (the two clubs sometimes "shared" employees).)

The evidence presented satisfies Plaintiffs' "very low" burden "at the [first] stage." *Lynch*, 491 F. Supp. 2d at 368; *see Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (plaintiffs' declarations as to common plan and policy sufficient to certify conditionally collective action); *Sipas v. Sammy's Fishbox, Inc.*, 2006 U.S. Dist. LEXIS 24318, 2006 WL 1084556, at *2 (S.D.N.Y. Apr. 24, 2006) (conditionally certifying class based on complaint and three affidavits); *see also Hallissey v. America Online, Inc.*, 2008 U.S. Dist. LEXIS 18387, 2008 WL 465112, at *2 (S.D.N.Y. Feb. 19, 2008). "The Court finds that, on balance, the policy objectives of reducing cost and increasing efficiency are best  [*14] furthered by granting collective action without undue prejudice to any party." *Torres*, 2006 U.S. Dist. LEXIS 74039, 2006 WL 2819730, at *11.

**(B) Class Notice**

Plaintiffs argue that the proposed Notice is "appropriate," and that it is "timely, accurate, and informative" (Pl. Mem. at 20), and "very similar to notices that other courts in this Circuit have approved" (Pl. Reply at 29). Defendants counter that "the Court should appoint a neutral third-party claims administrator to facilitate distribution of any notice deemed appropriate by the Court" (Def. Mem. at 25-26) and that "Plaintiffs' proposed notice is improper and inaccurate" because it: "appears to be endorsed by the Court" (*id.* at 24); "provides an inadequate description of Plaintiffs' claims and the pur-

ported class" (*id.*); "fails to offer any explanation or description of the legal process and what may be required of a class member who opts in to the action" (*id.*); "is devoid of a date by which the consents to sue are to be returned" (*id.* at 27); and "incorrectly sets the cut-off date" for the collective action period "as September 17, 2004 rather than October 9, 2004" (*id.* at 27 n.9).

Plaintiffs' proposed Notice is approved, with the following modifications:  [*15] First, references to "Go West" should be eliminated from the Notice **or** the Notice should reflect that all claims against Go West have been stayed by the court. *See* 11 U.S.C. § 362(a)(1). Second, the description of the lawsuit section should reflect that Plaintiffs have not applied for collective treatment of overtime claims. (Pl. Reply at 17 n.28.) Third, the Notice should be addressed to workers employed by Scores since October 9, 2004, rather than since September 17, 2004, because the FLSA statute of limitations, 29 U.S.C. § 255(a), bars claims accruing over three years prior to the commencement of this lawsuit on October 9, 2007, *see Fasanelli*, 516 F. Supp.2d at 323 & n.3, and Plaintiffs do not offer any support for equitable tolling, *see Greenberg v. Kraich*, 2004 U.S. Dist. LEXIS 21684, 2004 WL 2414006, at *4 (S.D.N.Y. Oct. 28, 2004). [2]

> 2    Defendants' other criticisms of the proposed Notice are without basis. There is no need for a third-party notice administrator, *see, e.g., Williams v. Trendwest Resorts, Inc.*, No. CVS05-0605, 2006 U.S. Dist. LEXIS 89370, 2006 WL 3690686, at *7 (D. Nev. Dec. 7, 2006); the statement that "[t]his is a court authorized notice" "is standard and is essential to inform potential litigants that in fact the Notice  [*16] that they are receiving has been approved and ordered by the court," *Bowens v. Atlantic Maintenance Corp.*, 2008 U.S. Dist. LEXIS 33533, 2008 WL 1827439, at *26 n.30 (E.D.N.Y. Apr. 23, 2008); the Notice adequately describes potential Plaintiffs' obligations should they opt-in (*see* Notice at 4-5); and the Notice properly states that the "signed Consent to Join form must be postmarked by [60 days from the mailing of this Notice]," *see, e.g., Bowens*, 2008 U.S. Dist. LEXIS 33533, [WL] at *26.

**(C) Motion to Dismiss**

**New York Labor Law Claims**

Defendants argue that the New York Labor Law Claims should be dismissed "as inherently inconsistent with the FLSA" because, among other reasons: (1) "allowing Plaintiffs to proceed with their state wage and hour opt-out class claims would contravene the Congressionally-mandated written [opt-in] consent requirement

of FLSA Section 216(b)" (Def. Mem. at 3); (2) "Plaintiffs' state law class claims under Rule 23 violate the Rules Enabling Act because they abridge the substantive rights of Plaintiffs to have their . . . claims adjudicated only with their written consent" (*id.* at 6); and (3) "[s]ince the members of the putative Rule 23 Class are mostly transient, unfindable, and therefore unlikely to receive notice, they will [*17] not have an effective opportunity to opt out" (*id.* at 7). Defendants also argue that (4) the "Court should decline to exercise supplemental jurisdiction over Plaintiffs' New York Labor Law Claims" because "attempting to prosecute, defend and adjudicate [such] claims on a Rule 23 opt-out basis raises novel and complex issues of state law," and "the state law claims would substantially predominate over FLSA claims." (*Id.* at 8-9.)

Plaintiffs counter, among other things, that: (1) "Courts in the Second Circuit 'routinely' allow workers to bring 'hybrid' wage and hour actions . . . in which Plaintiffs bring an opt-in FLSA collective action alongside an opt-out Rule 23 class action" (P1. Reply at 2 & n.4); (2) "Plaintiffs' [New York Labor Law] class action does not violate the Rules Enabling Act" (*id.* at 9); (3) the argument that "the Court should dismiss Plaintiffs' state law claims because the putative class members are 'transient and unfindable'" is "premature" and "is properly raised in an opposition to a class certification motion" (*id.* at 11-12); and (4) the Court may exercise original jurisdiction over the New York Labor Law Claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d), [*18] or "supplemental jurisdiction under 28 U.S.C. § 1367(a)" (*id.* at 13-14).

Defendants' motion to dismiss is denied for the following reasons. First, "the courts in this circuit do not consider FLSA opt-in and state-law opt-out class certification requirements conflicting." *Lynch v. United States Auto. Ass'n*, 2007 U.S. Dist. LEXIS 82625, 2007 WL 3355506, at *4 (S.D.N.Y. Nov. 8, 2007); *accord Gonzalez v. Nicholas Zito Racing Stable Inc.*, No. 04 CV 22, 2008 U.S. Dist. LEXIS 27598, 2008 WL 941643, at *9 (E.D.N.Y. March 31, 2008); *Guzman v. VLM, Inc.*, No. 07-CV-1126, 2008 U.S. Dist. LEXIS 15821, 2008 WL 597186, at * 10 (E.D.N.Y. March 2, 2008) ("it is routine for courts in the Second Circuit to certify state labor law classes in FLSA actions"); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 374 (S.D.N.Y. 2007) (collecting cases).

Second, Plaintiffs' assertion of state law Rule 23 class action claims does not violate the Rules Enabling Act. *See Guzman*, 2008 U.S. Dist. LEXIS 15821, 2008 WL 597186, at *10 ("neither FLSA nor the Rules Enabling Act preempts the [New York Labor Law] or its enforcement through a class action"); *Westerfield v. Wash. Mut. Bank*, 2007 U.S. Dist. LEXIS 54830, 2007 WL 2162989, at *1-3 (E.D.N.Y. July 26, 2007); *Klein v. Ryan Beck Holdings, Inc.*, 2007 U.S. Dist. LEXIS 51465, 2007 WL 2059828, at *5-7 (S.D.N.Y. July 13, 2007).

Third, it [*19] is premature to determine whether or not the members of the proposed Rule 23 Class are so "transient" or "unfindable" that "they will not [receive notice and] have an effective opportunity to opt out" (Def. Mem. at 7). *See Deen v. New School University*, 2007 U.S. Dist. LEXIS 25295, 2007 WL 1032295, at *5 n.9 (S.D.N.Y. March 27, 2007); *see also Cuzco V. Orion Builders, Inc.*, 477 F. Supp.2d 628, 635 (S.D.N.Y. 2007).

Fourth, it is not necessary at this time finally to determine whether the Court will exercise supplemental jurisdiction. Suffice to say at this point, "[t]he members of both classes performed the same type of work for the same related employers and were deprived of . . . compensation purportedly as the result of the same alleged scheme. There is no reason why the claims should be separately litigated in two different courts." *Brzychnalski v. Unesco, Inc.*, 35 F. Supp.2d 351, 354 (S.D.N.Y. 1999) (simultaneously certifying an FLSA collective action and a New York Minimum Wage Act Rule 23 class); *accord Gonzalez*, 2008 U.S. Dist. LEXIS 27598, 2008 WL 941643, at *8-9; *Guzman*, 2008 U.S. Dist. LEXIS 15821, 2008 WL 597186, at *9-10; *Iglesias-Mendoza*, 239 F.R.D. at 374; *see also Kuhl v. Guitar Center Stores, Inc.*, No. 07 C 214, 2008 U.S. Dist. LEXIS 17222, 2008 WL 656049, at *5 n.4 (N.D. Ill. March 5, 2008).

## Claims [*20] Of Owimrin and Levin

Defendants argue that the Court should dismiss the Complaint "insofar as it asserts claims for" Plaintiffs Danielle Owimrin and Susan Levin because they "failed to appear to depositions, despite being noticed for deposition in January 2008, not being available therefore, and having been ordered by the Court to appear for their depositions on or before April 7, 2008." (Def. Mem. at 10.) Plaintiffs have not responded to this aspect of Defendants' motion.

In order to dismiss a plaintiffs claim under Fed.R.Civ.P. 37(d) for failure to appear at a deposition, the court "must: (1) find willfulness, bad faith, or fault on the part of the party refusing discovery, and (2) give notice . . . that violation of the court's order will result in dismissal of the case with prejudice." *Connell v. City of New York*, 230 F. Supp. 2d 432, 436 (S.D.N.Y. 2002). The court must also find that "Defendants were seriously prejudiced by [Plaintiffs'] actions . . . .." *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 887 (S.D.N.Y. 1999). The Court declines to levy the "extreme sanction" of dismissal at this time because, among other reasons: (1) there is no evidence that Owimrin and Levin [*21] were notified that failure to appear for a deposition

2008 U.S. Dist. LEXIS 38248, *

would result in dismissal; and (2) there is no evidence that Defendants were unfairly prejudiced.

**IV. Conclusion and Order**

For the foregoing reasons, Plaintiffs' motion [52] conditionally to certify a collective action under FLSA § 216(b) is granted; Plaintiffs' motion to authorize Notice of the collective action is granted, with modifications; and Defendants' cross-motion [58] to dismiss certain claims is denied. The lawsuit is stayed with respect to claims against Go West, and Plaintiffs' request for permission to move to sever the claims relating to Scores West and Scores East is denied.

Dated: New York, New York

May 9, 2008

/s/ Richard M. Berman

RICHARD M. BERMAN, U.S.D

# Exhibit 9

2007 U.S. Dist. LEXIS 92589, *

LEXSEE 2007 U.S. DIST. LEXIS 92589



Positive
As of: May 27, 2008

**HELLANE FREEMAN and DAVID COEN, on behalf of themselves and others similarly situated, Plaintiffs, v. HOFFMANN-LAROCHE, INC. and ROCHE LABORATORIES, INC., Defendants.**

**Civil Action No.: 07-1503 (JLL)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

**2007 U.S. Dist. LEXIS 92589**

**December 14, 2007, Decided**
**December 18, 2007, Filed**

**NOTICE:**  NOT FOR PUBLICATION

**COUNSEL:**  [*1] For HELLANE FREEMAN, on behalf of herself and others similarly situated, DAVID COEN, Plaintiffs: ELIZABETH SYKES SAYLOR, LEAD ATTORNEY, EMERY CELLI BRINCKER-HOFF & ABADY LLP, NEW YORK, NY; MICHAEL R. DICHIARA, LEAD ATTORNEY, JOSEPH & HERZFELD, ESQS., NEW YORK, NY; STEVEN L. WITTELS, LEAD ATTORNEY, SANFORD, WITTELS & HEISLER, LLP, FORT LEE, NJ.

For HOFFMAN-LAROCHE INC., ROCHE LABORATORIES INC., Defendants: JOHN A. RIDLEY, LEAD ATTORNEY, DRINKER, BIDDLE & REATH, LLP, FLORHAM PARK, NJ.

**JUDGES:** JOSE L. LINARES, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JOSE L. LINARES

**OPINION**

**LINARES,** District Judge.

This matter comes before the Court on Defendants' motion to dismiss or strike portions of Plaintiffs' Second Amended Complaint, [1] pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(f). For the reasons set forth below, Defendants' motion is granted, in part, and denied, in part. [2]

1    The operative complaint is the Second Amended Complaint, which was filed on January 30, 2007 (hereinafter referred to as "Complaint").
2    The Court decides this matter without oral argument. Fed. R. Civ. P. 78. Jurisdiction is premised on (a) 28 U.S.C. §§ 1331 because this case is brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, [*2] and (b) 28 U.S.C. § 1367(a) because the state law claims "form part of the same case or controversy." (Compl., PP 5, 6).

**BACKGROUND**

3

3    For purposes of the instant motion to dismiss, the Court accepts Plaintiffs' factual allegations as true, and relies only on the Complaint. *See, e.g., Lum v. Bank of Am.,* 361 F.3d 217, 222 n.3 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Plaintiffs, Hellane Freeman, a New Jersey resident, and David Coen, a Kansas resident, were employed by Defendants, Hoffman-La Roche, Inc. and Roche Labora-

2007 U.S. Dist. LEXIS 92589, *

tories, Inc. (collectively "Defendants") as sales representatives from approximately 1997 until 2005. (Compl., PP 9, 10).

Plaintiffs commenced the instant cause of action in the Southern District of New York on November 28, 2006, [4] on behalf of themselves and all workers similarly situated, [5] alleging violations of the Fair Labor Standards Act ("FLSA"), the New York Minimum Wage Act, and the New Jersey Minimum Wage Act. (*Id.* PP 2, 41, 48, 59). Generally, the Complaint [*3] alleges that Defendants: (1) improperly classified Plaintiffs as exempt from overtime pay, (2) deprived Plaintiffs of their overtime compensation for working in excess of forty hours per week, and (3) failed to maintain accurate records of the hours worked by their employees.

4 The Second Amended Complaint was filed on January 30, 2007.

5 In particular, Plaintiffs seek to represent a proposed class of persons who: (1) "have been, are, or in the future will be employed in New York by Defendants in any of the 'Covered Positions' and/or (2) "have been, are, or in the future will be employed in New Jersey by Defendants in any of the 'Covered Positions.'" (Compl., PP 25, 33). "Covered Positions" include: (a) Sales Representatives, (b) Medical Sales Representatives, and (c) Senior Sales Representatives. (*Id.,* P 2).

On March 30, 2007, this case was transferred to this District from the Southern District of New York. Shortly thereafter, on April 4, 2007, Defendants filed the instant motion to dismiss or strike Plaintiffs' state law class claims. Generally, Defendants propose the following grounds for dismissal of Plaintiffs' state law claims: (1) the opt-out Rule 23 class action is inherently incompatible [*4] with the opt-in FLSA collective action, (2) supplemental jurisdiction should not be exercised over the state law claims because state law issues will substantially predominate, (3) Plaintiffs' assertion of the Rule 23 class action together with the FLSA collective action claim violates the Rules Enabling Act, and (4) class actions are not permitted under New York Labor Law.

### LEGAL STANDARD

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. [6] *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), *abrogated on other grounds* by *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Allegheny Gen. Hosp. v. Philip Morris, Inc.,* 228 F.3d 429, 434-35 (3d Cir. 2000). However, courts are not required to credit

bald assertions or legal conclusions improperly alleged in the complaint. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429 (3d Cir. 1997). Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. *See In re Nice Sys. Sec. Litig.,* 135 F. Supp. 2d 551, 565 (D.N.J. 2001).

6 In [*5] doing so, a court may look only to the facts alleged in the complaint and any accompanying attachments, and may not look at the record. *See Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1251, 1261 (3d Cir. 1994).

A sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Ultimately, however, the question is not whether plaintiffs will prevail at trial, but whether they should be given an opportunity to offer evidence in support of their claims. *Scheuer,* 416 U.S. at 236. With this framework in mind, the Court turns now to Defendants' motion.

### LEGAL ANALYSIS

As a preliminary matter, Defendants urge the Court to strike all references to: (a) Defendants' alleged record-keeping violations under the FLSA, [*6] (b) Plaintiffs' request for penalties under the New Jersey State Wage and Hour Law, and (c) the phrase "and all affiliates and subsidiaries" from paragraph 3 of the Complaint. (Def. Br. at 1 n. 1, 25-26). Plaintiffs do not oppose Defendants' request. (Pl. Opp'n Br. at 3 n. 1). [7] Accordingly, all such references are hereby stricken from the Complaint. [8]

7 The Court notes that although Plaintiffs do not expressly agree to the removal of the phrase "and all affiliates and subsidiaries" from paragraph 3 of the Complaint, Plaintiffs do not specifically oppose such a request.

8 To the extent that Defendants urge the Court to strike Plaintiffs' demand for a jury trial with respect to their state labor law claims, the Court declines to entertain such an argument at this stage of the litigation. Therefore, any such request is denied, without prejudice.

Defendants also propose the following four grounds for dismissal of Plaintiffs' state law claims: (1) the opt-out Rule 23 class action is inherently incompatible with the opt-in FLSA collective action, (2) supplemental jurisdiction should not be exercised over the state law claims because state law issues will substantially predominate and cause confusion, [*7] (3) Plaintiffs' assertion of the Rule 23 class action together with the FLSA collective action claim violates the Rules Enabling Act and (4) class actions are not permitted under New York Labor Law. The Court will now address each argument in turn.

**A. Inherent Incompatibility**

Defendants urge the Court to dismiss or strike [9] Plaintiffs' state law claims on the basis that "an FLSA opt-in collective action and a state law wage and hour opt-out class action are inherently incompatible and allowing both claims to proceed together contravenes Congressional intent." (Def. Br. at 8). However, Defendants cite to no legal authority permitting this Court to dismiss Plaintiffs state law claims on such a basis. To the contrary, Defendants refer the Court to the Third Circuit's decision in *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301 (3d Cir. 2003). The Court has reviewed the *DeAsencio* decision and finds that such does not permit the Court to dismiss Plaintiffs' state law claims without first conducting a thorough supplemental jurisdiction analysis. In particular, the Third Circuit explained that, in assessing whether a court should exercise supplemental jurisdiction over state law claims when brought [*8] alongside an FLSA collective action:

> A court must examine the scope of the state and federal issues, the terms of proof required by each type of claim, the comprehensiveness of the remedies, and the ability to dismiss the state claims without prejudice to determine whether the state claim constitutes the real body of the case. This necessarily is a case-specific analysis.

*De Asencio,* 342 F.3d at 312.

9  Federal Rule of Civil Procedure 12(f) provides that courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. *See also Clark v. McDonald's Corp.,* 213 F.R.D. 198, 205 n. 3 (D.N.J. 2003) ("A defendant may move to strike class action allegations prior to discovery in those rare cases where the complaint itself demon-

strates that the requirements for maintaining a class action cannot be met.").

Notwithstanding the foregoing, the Court is mindful that several courts within this district have dismissed similar state law class allegations solely on the basis of their "inherent incompatibility" with a collective action under the FLSA. *See, e.g., Herring v. Hewitt Assocs.,* No. 06-267, 2006 U.S. Dist. LEXIS 56189, 2006 WL 2347875, * (D.N.J. Aug. 11, 2006) (striking [*9] plaintiffs' class allegations on the basis of their inherent incompatibility with the FLSA collective action); *Himmelman v. Con'l Cas. Co.,* No. 06-166, 2006 U.S. Dist. LEXIS 56187, 2006 WL 2347873 (D.N.J. Aug. 11, 2006) (same). Nevertheless, in light of the Third Circuit's analysis in *DeAsencio,* and absent any specific directive to the contrary, this Court finds that the more prudent approach in assessing whether an opt-out Rule 23 class action and opt-in FLSA collective action should proceed together in federal court is to engage in a proper supplemental jurisdiction analysis. [10] *See, e.g., Hyman v. WM Fin. Servs.,* No. 06-4038, 2007 U.S. Dist. LEXIS 41433, 2007 WL 1657392 (D.N.J. June 7, 2007) (declining to dismiss state claims on the basis of inherent incompatibility, and, instead, engaging in supplemental jurisdiction analysis). [11] Therefore, to the extent that Defendants urge the Court to dismiss or strike Plaintiffs' state law class action allegations solely on the basis of their "inherent incompatibility" with the asserted FLSA collective action, Defendants' motion is denied.

10  *See generally Lindsay v. Gov't Employees Ins. Co.,* 371 U.S. App. D.C. 120, 448 F.3d 416, 424 (D.C. Cir. 2006) ("While there is unquestionably a difference -- indeed, an opposite [*10] requirement -- between opt-in and opt-out procedures, we doubt that a mere procedural difference can curtail section 1367's jurisdictional sweep.").

11  *See also Lehman v. Legg Mason, Inc.,* No. 06-2484, 532 F. Supp. 2d 726, 2007 U.S. Dist. LEXIS 69648, 2007 WL 2768519 (M.D. Pa. 2007) (declining to dismiss state claims on basis of inherent incompatibility, noting that "nothing in the plain text of the FLSA reflects Congressional intent to limit the substantive remedies available to an employee under state law, nor to limit the procedural mechanism by which such a remedy may be pursued," and deferring its supplemental jurisdiction analysis to the class certification stage).

**B. Supplemental Jurisdiction**

Defendants also urge the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. § 1367(c)(2), because state

2007 U.S. Dist. LEXIS 92589, *

law issues will substantially predominate. (Def. Br. at 14). In particular, Defendants point to: (1) the "tremendous differential in the number of putative class members," and (2) Plaintiffs' assertion that they may amend their Complaint to include claims under the laws of "other states," as evidence that state law issues will substantially predominate over the federal claims.

As [*11] previously indicated, the Third Circuit has explained that, in determining whether supplemental jurisdiction should be exercised, courts "must examine the scope of the state and federal issues, the terms of proof required by each type of claim, the comprehensiveness of the remedies, and the ability to dismiss the state claims without prejudice to determine whether the state claim constitutes the real body of the case." *De Asencio*, 342 F.3d at 312. [12] This Court finds that any such examination, however, would be premature at this stage of the litigation given that the parties have not yet engaged in discovery, nor have motions for class certification been filed. *See, e.g., Lehman*, 2007 U.S. Dist. LEXIS 69648, 2007 WL 2768519 at *4 (declining to conduct supplemental jurisdiction analysis at motion to dismiss stage, and noting that "[t]he court is far better equipped to examine the factors mitigating for or against the discretionary exercise of supplemental jurisdiction" at the class certification stage). In the same vein, the Court has considered the arguments raised by Defendants in support of their request, and finds that any such arguments are far too speculative at this time. Therefore, Defendants' motion to [*12] dismiss Plaintiffs' state law claims on the basis that this Court should decline to exercise supplemental jurisdiction over same is denied without prejudice. [13]

> 12 *See generally Farhy v. Janney Montgomery Scott, LLC,* Nos. 06-3202, 06-3969, 2007 U.S. Dist. LEXIS 39112, 2007 WL 1455764, *1 (E.D. Pa. April 26, 2007) (noting that *De Asencio* "made clear that the supplemental jurisdiction issue should only be decided on a complete record and not at the motion to dismiss stage.").

> 13 Defendants may, therefore, reassert this argument at the class certification stage, at which time all parties will have a clearer understanding of the nature and extent of this case. At that time, the Court will be in a better position to conduct a proper assessment of all issues relating to supplemental jurisdiction, including Defendants' claim that supplemental jurisdiction should not extend to state law class members who have no FLSA claim. (Def. Br. at 17). Should Defendants seek to raise such arguments prior to the class certification stage, they are advised to seek leave of the Court.

**C. Rules Enabling Act**

Defendants also argue that allowing an FLSA opt-in collective action and a Rule 23 opt-out class action to proceed together violates [*13] the Rules Enabling Act. (Def. Br. at 12). The Rules Enabling Act, 28 U.S.C. § 2072(b) provides that rules of procedure "shall not abridge, enlarge or modify any substantive right." In this regard, Defendants claim that applying Rule 23 to the instant action would "impermissibly deprive employees of the substantive FLSA rights Congress expressly legislated for them by effectively forcing the adjudication of their FLSA claims upon the Rule 23 adjudication of absent class members' state law overtime claims." (*Id.* at 13). Notably, however, Defendants cite to no legal authority in support of such a theory. Therefore, to the extent that Defendants move to dismiss Plaintiffs' state law class action claims on the basis that allowing such claims to proceed alongside Plaintiffs' FLSA collective action violates the Rules Enabling Act, Defendants' motion is denied. *See, e.g., Lehman*, 2007 U.S. Dist. LEXIS 69648, 2007 WL 2768519, *4 (finding that "the Rules Enabling Act . . . does not preclude [such] dual-filed suits" and noting that any procedural differences between an FLSA collective action and a Rule 23 class action "will not 'abridge, enlarge or modify' any substantive right of Plaintiff or Defendants under either statutory [*14] scheme."); *Farhy v. Janney Montgomery Scott, LLC,* Nos. 06-3202, 06-3969, 2007 U.S. Dist. LEXIS 39112, 2007 WL 1455764, *1 (E.D. Pa. April 26, 2007) (concluding that "the alleged violation of the Rules Enabling Act finds no support in the authorities relied upon by Defendant" and noting that in *De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301 (3d Cir. 2003), "the Third Circuit did not even suggest that the Rules Enabling Act was a factor to be considered" in determining whether state law claims could proceed alongside an FLSA collective action).

**D. New York Labor Law**

Finally, Defendants claim that "the purported class action under the New York Labor Law should be dismissed" because "New York law does not permit class treatment for Labor Law claims." (Def. Br. at 19, 24). Plaintiffs, on the other hand, claim that because Plaintiff Freeman has waived her right to demand penalties under New York law, "her right to assert a class action under the New York Labor Law is well-settled." (Pl. Opp'n Br. at 30).

Section 901(b) of the New York Civil Practice Law and Rules ("CPLR") "disallows a class action when the statute under which the action is brought imposes a penalty. This is so unless that particular statute specifically [*15] authorizes recovery in a class action." *Carter v. Frito-Lay, Inc.,* 74 A.D.2d 550, 425 N.Y.S.2d 115 (N.Y.

App. Div. 1980), *aff'd*, 52 N.Y.2d 994, 419 N.E.2d 1079, 438 N.Y.S.2d 80 (1981). Plaintiffs do not dispute that the sections of the New York Labor Law relied upon by Plaintiff Freeman [14] provide for the recovery of a "penalty," nor do Plaintiffs contend that such portions of the New York Labor Law expressly authorize recovery in a class action. Nevertheless, Plaintiffs claim that CPLR 901(b) does *not* bar such a class action where the plaintiff waives such penalties, so long as any absent class members are given the option of opting out of the class. (Pl. Opp'n Br. at 30).

14   Plaintiff Freeman seeks recovery under New York Labor Law §§ 198 and 663. *See* Compl., PP 54, 57.

The Court has considered the parties' positions and notes that the case largely relied upon by Defendants, *Carter*, does not address the issue of whether such a class action can proceed if the named plaintiff waives their right to liquidated damages. [15] 74 A.D.2d 550, 425 N.Y.S.2d 115. On the other hand, Plaintiffs cite to several cases in support of their position that CPLR 901(b) does *not* preclude a class action so long as (a) the named plaintiff waives his right to recover punitive damages, [*16] and (b) prospective class members are given the opportunity to opt-out and preserve their claims for punitive damages. *See, e.g., Pesantez v. Boyle Envtl. Servs., Inc.,* 251 A.D.2d 11, 673 N.Y.S.2d 659 (N.Y. App. Div. 1998) (certifying class of workers seeking to recover under New York Labor Law and noting that "[t]o the extent certain individuals may wish to pursue punitive claims . . . which cannot be maintained in a class action . . . they may opt out of the class action."); *Super Glue Corp. v. Avis Rent A Car Sys., Inc.,* 132 A.D. 2d 604, 606, 517 N.Y.S.2d 764 (N.Y. App. Div. 1987) ("Where, as here, the statute does not explicitly authorize a class recovery thereof, the named plaintiff in a class action may waive that relief and bring an action for actual damages only."). [16] In light of the foregoing, the Court will allow Plaintiff Freeman's purported class action under New York Labor Law to proceed at this time.

15   Similarly, this issue was not raised in *Ballard v. Cmty. Home Care Referral Serv., Inc.,* 264 A.D.2d 747, 748, 695 N.Y.S.2d 130 (N.Y. App. Div. 1999) (finding that the "fact that the plaintiff's complaint *contains* a claim for liquidated damages precludes class action relief.") (emphasis added).

Defendants reliance on *Foster v. Food Emporium,* No. 99-3860, 2000 U.S. Dist. LEXIS 6053, 2000 WL 1737858 (S.D.N.Y. April 26, 2000), [*17] is likewise unavailing. In stating that "[a]ttempts by plaintiffs to get around CPLR 901(b) by waving the liquidated damages remedy have been rejected by courts as undermining putative lead plaintiffs' ability to represent others who have a statutory right to the remedy," the district court in *Foster* relied on a single decision by the Supreme Court of New York, *Woods v. Champion Courier, Inc.,* 10/09/98 N.Y.L.J. 26, (col. 1). Given the above referenced Appellate Division decisions -- recognizing that CPLR 901(b) does *not* necessarily preclude a class action so long as the named plaintiff waives his right to recover punitive damages, and prospective class members are given the opportunity to opt-out -- this Court is not persuaded by the *Foster* decision.

16   *See also Iglesias-Mendoza v. LaBelle Farm, Inc.,* 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (noting that courts have routinely rejected the argument that "New York Labor Law does not permit class actions claiming liquidated damages unless expressly provided for by the statute giving rise to the cause of action" and finding no problem with plaintiffs waiving their liquidated damages "as long as notice is provided to the Rule 23 class instructing [*18] individuals how to opt-out in order to preserve their claims for liquidated damages."); *Brzychnalski v. Unesco, Inc.,* 35 F. Supp. 2d 351, 353 (S.D.N.Y. 1999) (explaining that plaintiffs may waive their right to seek liquidated damages "and still proceed on a class basis with respect to their remaining claims, as long as prospective class members have the right to opt-out of the class action to preserve their claims for liquidated damages.").

## CONCLUSION

For the reasons stated herein, this Court: (1) grants Defendants' motion to strike references to (a) Defendants' alleged record-keeping violations under the FLSA, (b) Plaintiffs' request for penalties under the New Jersey State Wage and Hour Law, and (c) the phrase "and all affiliates and subsidiaries" from paragraph 3 of the Complaint; (2) denies Defendants' motion to dismiss (or strike) Plaintiffs' state law class action claims on the basis that they are inherently incompatible with Plaintiffs' FLSA collective action; (3) denies Defendants' motion to dismiss Plaintiffs' state law claims on the basis that the Court lacks supplemental jurisdiction over same, [17] and (4) denies Defendants' motion to dismiss Plaintiff Freeman's purported [*19] class action under New York Labor Law. An appropriate Order accompanies this Opinion.

2007 U.S. Dist. LEXIS 92589, *

17   As previously indicated, the Court's denial in this regard is done *without* prejudice. *See supra* note 13.

DATE: December 14, 2007

/s/ Jose L. Linares

JOSE L. LINARES,

UNITED STATES DISTRICT JUDGE

# Exhibit 10

2006 U.S. Dist. LEXIS 97050, *

LEXSEE 2006 U.S. DIST. LEXIS 97050

**GREENE, Plaintiff, v. ROBERT HALF INTERNATIONAL INC. et al., Defendant.**

**No. C05-03248 MJJ**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**2006 U.S. Dist. LEXIS 97050**

**March 28, 2006, Decided
March 28, 2006, Filed**

**COUNSEL:** [*1] For Lizette Greene, individually, on behalf of herself and all others similarly situated, Plaintiff: Mark Andrew Chavez, LEAD ATTORNEY, Chavez & Gertler LLP, Mill Valley, CA; Jonathan E Gertler, Mill Valley, CA; Joshua Sebastian Brownstein, Mark C. Thomas, Michael Ryder Thomas, Brownstein & Thomas LLP, San Francisco, CA; Joshua Geoffrey Konecky, Todd Michael Schneider, W.H. Hank Willson, IV, Schneider & Wallace, San Francisco, CA.

For Robert Half International Inc., Robert Half Corporation, doing business as RHC Corporation, Robert Half Incorporated, Robert Half of California Inc., Defendants: Christian Joseph Rowley, Gilmore F. Diekmann, Jr., LEAD ATTORNEYS, Allison B. Moser, Eden Edwards Anderson, Seyfarth Shaw LLP, San Francisco, CA; Sarah R. Speakman, Schiff Hardin LLP, San Francisco, CA.

**JUDGES:** MARTIN J. JENKINS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** MARTIN J. JENKINS

**OPINION**

**ORDER GRANTING JUDICIAL NOTICE AND DENYING DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE**

Pending before the Court is Defendants Robert Half International Inc., Robert Half Inc., and Robert Half of California, Inc.'s (collectively RHI) Motion to Strike and/or Dismiss Portions of the First Amended Complaint. (Doc. # 21.) Plaintiff Lizette [*2] Greene has filed an Opposition (Doc. # 27), and Defendants have filed a Reply. (Doc. # 28.) Defendants have also filed a Request for Judicial Notice Pursuant to Federal Rule of Evidence 201. (Doc. # 22.)

**I. BACKGROUND**

On August 8, 2005, Plaintiff filed an action against Defendants alleging RHI failed to compensate its non-exempt inside sales employees for hours worked in excess of 40 hours a week and eight hours a day, in violation of both federal and state law. Specifically, Plaintiff brings a collective action pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Plaintiff also brings two supplemental state-based claims: (1) a class action pursuant Federal Rule of Civil Procedure 23(a), (b)(2) and alternatively, (b)(3), under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; and (2) a class action pursuant Federal Rule of Civil Procedure 23(a), (b)(2) and alternatively, (b)(3), under the Private Attorneys General Act (PAGA). On December 1, 2005, Plaintiff amended the Complaint, due to cases currently pending in Los Angeles Superior Court, to seek only civil penalties under PAGA. (Doc. # 15.)

In their Motion to Dismiss, [*3] Defendants focus on two separate aspects of the First Amended Complaint. First, Defendants contend that the state UCL claim is derivative of the federal FLSA claim, and as a matter of law, is therefore preempted because: (1) of an irreconcilable conflict between the procedural requirements of the UCL and FLSA; and (2) the UCL state claim stands as an obstacle to FLSA's purposes and objectives. Second, Defendants argue Plaintiff's class allegations require adjudication on the merits to determine class membership, and ask the Court to strike the class definitions with leave to amend.

For the foregoing reasons, the Court GRANTS the Request for Judicial Notice, DENIES Defendants' Mo-

tion to Strike or Dismiss Plaintiff's UCL claim, and DE-NIES Defendants' Motion to Strike or Dismiss Plaintiff's class allegations.

## II. DISCUSSION

### A. Request for Judicial Notice Pursuant Federal Rules of Evidence 201

Defendants request that the Court take judicial notice of two complaints filed against Defendants in other jurisdictions. Plaintiff has not filed an Opposition to Defendants' Request for Judicial Notice.

Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to reasonable [*4] dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Under Federal Rule of Evidence 201, judicially noticed facts often consist of matters of public records, such as prior court proceedings. *See, e.g., Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1198 (9th Cir. 1988); *Rothman v. Gregor,* 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a filed complaint as a public record); *Del Puerto Water District v. U.S. Bureau of Reclamation,* 271 F. Supp. 2d 1224, 1232 (E.D. Cal. 2003) (taking judicial notice of matters of public record including pleadings, orders, and other papers).

Here, Defendants request the Court take judicial notice of the following two complaints pending in other courts: (1) a class action filed in Los Angeles Superior Court on September, 10, 2004; (2) a class action filed in United States District Court for the District of Massachusetts on December 29, 2004. (Doc. # 22 Ex. A & Ex. B.) Defendants contend these records are relevant to the present action because the claims in the present case are the same as those asserted in the other actions, increasing the risk of conflicting [*5] judgments, and waste judicial resources. Accordingly, the Court takes judicial notice of the requested documents.

### B. Motion to Strike and/or Dismiss Portions of the First Amended Complaint

### 1. Legal Standard - Motion to Dismiss 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News Network, Inc.,* 284 F.3d 977, 980 (9th Cir. 2002). Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory

or failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.,* 88 F.3d 780, 782 (9th Cir. 1996); *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984). Further, dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of a claim. *See Abramson v. Brownstein,* 897 F.2d 389, 391 (9th Cir. 1990). [*6] In considering a 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir. 2000).

### 2. Legal Standard - Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike from the pleadings any insufficient defense, or any matter that is redundant, immaterial, impertinent or scandalous. However, motions to strike under Federal Rule 12(f) "are viewed with disfavor and are infrequently granted." *Lunsford v. United States,* 570 F.2d 221, 229 (8th Cir. 1977); *see also* 2 James 2 James Wm. Moore et al., *Moore's Federal Practice* § 12.37[1] (3d ed. 2000) ("Courts disfavor the motion to strike, because it 'proposes a drastic remedy.' "). Furthermore, courts regard motions to strike with disfavor because they are often used as delaying tactics, and because of the limited importance of pleadings in federal practice. *Stanbury Law Firm v. I.R.S.,* 221 F.3d 1059, 1063 (8th Cir. 2000); *Colaprico v. Sun Microsystems, Inc.,* 758 F. Supp. 1335, 1339 (N.D. Cal. 1991).

### 3. Analysis of Defendants' Challenges

#### a) Preemption

Defendants [*7] first move to strike or dismiss Plaintiff's UCL representative allegations. Defendants contend that under the doctrine of conflict preemption Plaintiff's state UCL claim, based on a violation of the federal FLSA, is preempted by federal law. Plaintiffs, however, argue that a violation of FLSA can be predicate unlawful act or practice to support a UCL claim without preempting the UCL claim.

Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or laws of any state to the Contrary notwithstanding." In analyzing preemption, the Ninth Circuit considers three preemption categories as defined by the Supreme Court: (1) express preemption -- where Congress explicitly defines the extent its enactments preempt state law; (2) field preemption -- where Congress attempts to regulate an area exclusively; and (3) conflict preemption -- where compli-

ance with both federal and state law is impossible or where state law stands as an obstacle to the fulfillment of Congress's purpose and objectives. *Williamson v. General Dynamics Corp.,* 208 F.3d 1144, 1149 (9th Cir. 2000). The Ninth Circuit has also recognized  [*8] "Congressional intent to preempt state law must be clear and manifest." *Id.* at 1150 (citing *Industrial Truck Ass'n v. Henry,* 125 F.3d 1305, 1309 (9th Cir. 1997)).

Defendants in this case do not argue express or field preemption. In fact, the Ninth Circuit previously decided that the FLSA's saving clause evidences Congress's intention not to preempt the field. *Williamson,* 208 F.3d at 1151. The FLSA savings clause provides in part that nothing "shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week established under this chapter." 29 U.S.C. § 218(a). Rather, Defendants argue both types of conflict preemption as defined by the Supreme Court: (1) where compliance with both federal and state law is impossible, and (2) where state law stands as an obstacle to the fulfillment of Congress's purpose and objectives. The Court will therefore focus its attention of these arguments.

**i. Impossibility to comply with both state and federal requirements**

First Defendants argue compliance with both federal FLSA and state UCL statutes is an impossibility. Specifically,  [*9] Defendants contend Congress has mandated that all collective actions under FLSA must be *opt-in* procedures, while class actions under UCL, which are governed by California Code of Civil Procedure § 382, modeled after Rule 23 of the Federal Rules of Civil Procedure, allow only for *opt-out* class actions. Thus, Defendants argue compliance with both the state and federal procedures "is a physical impossibility," and the federal statute thus preempts the state law.

> The FLSA and UCL have contrary, irreconcilable procedural requirements for group actions. The FLSA mandates that such actions be pursued on an opt-in basis, while the UCL requires that such actions be pursued on an opt-out basis. The unavoidable result of this conflict is that the state law must give way to the federal, meaning that an employee may not vindicate rights created by the FLSA through a UCL collective action.

(Doc. # 21 at 4:18-22.)

However, in her opposition, Plaintiff contends that not only can a UCL claim be based on a violation of FLSA, but that opt-in procedures are not irreconcilable with state law opt-out procedures. [1] In support, Plaintiff cites several district court cases representing that these two procedures  [*10] may be maintained in the same case. Defendants failed to cite a single case that holds FLSA conflicts with or preempts state law on these grounds. In their motion, Defendants cite cases that stand for the general proposition that FLSA representative claims must be opt-in and UCL claims must be opt-out, and how these procedures are mutually exclusive. However, none of these cases hold that these two procedures cannot be maintained in the same case. Furthermore, Plaintiff does not seek to certify a FLSA opt-out class or a UCL opt-in class, rather Plaintiff seeks to represent a FLSA opt-in class according to FLSA procedures and a state opt-out class in accordance to Federal Rule 23.

> 1  Plaintiff contends the real issue pertaining to these conflicting procedural requirements remains manageability of proceedings.

For instance, in *Kelley v. SBC, Inc.,* 5 Wage & Hour Cas. 2d (BNA) 16 (N.D. Cal. 1998) the plaintiff brought overtime violation claims under both FLSA and California's UCL. The defendant opposed the action on the grounds that Federal Rule 23 certification of pendant state claims is inappropriate in an action that also includes a claim under FLSA. The court found "the risk of creating  [*11] two separate classes on the State and federal causes of action neither requires nor justifies the dismissal of Plaintiffs' State law claim," and held the opt-in provision of FLSA was not a bar to class certification of pendant state law claims under Rule 23. *Id.* at 39. The *Kelley* Court continued:

> To hold otherwise would create two parallel proceedings in State and federal court, concerning virtually identical issues. If for some reason the Court's holding leads to the creation of two dissimilar classes, or if the maintenance of two classes frustrates efficient case management, the Court can consider decertification at that time.

*Id.* at 39-40.

Other district courts have reached the same conclusion as *Kelley. See, e.g. Beltran-Benitez v. Sea Safari, Ltd.,* 180 F.Supp.2d 772 (E.D.N.C. 2001)(FLSA opt-in class action provision did not warrant court's refusal to exercise supplemental jurisdiction over state law claims to which Rule 23 opt-out provision applied); *DeAsencio*

*v. Tyson Foods, Inc.,* 8 Wage & Hour Cas.2d (BNA) 190 (E.D. Pa. 2002)(rejecting employer's arguments that Rule 23 opt-out procedures are inconsistent or irreconcilable with FLSA's section 216(b) opt-in procedures)(reversed [*12] on other grounds); *see also Scott v. Aetna Servs.,* 210 F.R.D. 261 (D. Conn. 2002)(court granted plaintiff's motion to certify Federal Rule 23 class in same case as FLSA-based opt-in class); *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81 (S.D.N.Y. 2001)(court may exercise supplement jurisdiction over opt-out state wage claim in same case as FLSA opt-in collective action); *O'Brien v. Encotech Construction Services, Inc.,* 203 F.R.D. 346 (N.D. Ill. 2001)(court maintained Rule 23 class action in same case as FLSA opt-in collective action); *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2000 U.S. Dist. LEXIS 17832, at *27 (D. Ill. Nov. 30, 2000)(court held class action superior method of adjudicating state wage claims although potential class members had to opt-in for FLSA claim). Furthermore, in *Aguayo v. Oldenkamp Trucking,* 2005 U.S. Dist. LEXIS 22190, 2005 WL 2436477, at *9 (E.D. Cal. Oct. 3, 2005), the district court, in evaluating whether FLSA preempted a UCL claim, found the "impossibility of compliance with both state and federal standards does not apply," and focused solely on the second type of conflict preemption. 2005 U.S. Dist. LEXIS 22190, at *29, [WL] at 10.

The Court agrees with the district courts in these cases that federal FLSA [*13] claims based on opt-in procedures are not irreconcilable with pendant state claims based on Federal Rule 23 opt-out procedures; therefore, the two causes of action may be maintained in the same case. Additionally, the Court agrees with the district courts' reasoning that by allowing parallel proceedings in state and federal court on actions involving the same case or controversy, great potential exists for confusion of the issues, unnecessary costs, inefficiency and inconsistency of proceedings and results.

**ii. State law stands as an obstacle to the fulfillment of Congress's purpose and objectives.**

In their Reply Defendants also argue that the UCL claim is preempted because it stands as an obstacle to the purposes and objectives of Section 216(b) of the FLSA. According to Defendants, by allowing a UCL claim to be based on a violation of FLSA, the plaintiff circumvents the thoughtful and balanced protection put in place by Congress. Specifically, Defendants contend:

> [T]he purported nationwide UCL class is not primarily an attempt to enforce California's wage and hour laws against California employers for the benefit of California employees, which is what is contemplated by the savings [*14] clause

of the FLSA. Rather the UCL/FLSA class is an express attempt to undercut the procedural requirements and intent of Section 216(b) by premising a purported nationwide UCL action on the FLSA federal law. The UCL itself contains no substantive wage and hour provisions.

(Doc. # 28 at 1:18-24.)

In contrast, Plaintiff maintains a violation of FLSA can be a predicate unlawful act or practice to support a UCL claim, without preempting the UCL claim. In particular, Plaintiff contends that "nothing in the UCL prohibits a civil litigant from using the FLSA violation as the predicate unlawful act merely because a claim brought directly under the FLSA would proceed according to an opt-in procedure." (Doc. # 27 at 7:12-14.) Moreover, Plaintiff asserts that FLSA's savings clause expressly allows a plaintiff to seek enforcement of overtime requirements under state law as well as federal law.

Although the Ninth Circuit has not ruled directly on this point, other district courts have analyzed the relationship between FLSA and FLSA-based UCL claims, and found the opt-in procedure as prescribed by FLSA does not act as a barrier to UCL claims based on violations of FLSA, despite the different procedural [*15] requirements. *see Tomlinson v. Indymac Bank,* 359 F. Supp. 2d 898 (C.D. Cal. Feb. 18, 2005); *Barnett v. Wash. Mut. Bank,* FA, 2004 U.S. Dist. LEXIS 18491, 2004 WL 2011462, (N.D. Cal. Sept. 9, 2004); *Aguayo v. Oldenkamp Trucking,* 2005 U.S. Dist. LEXIS 22190, 2005 WL 2436477 (E.D. Cal. Oct. 3, 2005); *Bahramipour v. Citigroup Global Markets, Inc.,* 2006 U.S. Dist. LEXIS 9010, 2006 WL 449132 (N.D. Cal. Feb. 22, 2006). Reviewing these decisions, the Court finds the reasoning, with respect to whether state UCL claims stand as an obstacle to federal FLSA claims, persuasive.

As a starting point, the Court looks to California's Unfair Competition Law ("UCL"), California Business & Professional Code §§ 17200. This section allows plaintiffs to bring actions based on business practices that are (1) unlawful, (2) unfair, or (3) fraudulent that result in unfair competition. *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.,* 104 Cal. App. 4th 508, 515, 128 Cal. Rptr. 2d 463 (Cal. Ct. App. 2002). Under this statutory scheme, violations of any federal law, state law or local law can serve as the underlying unlawful act. *Id.* Moreover, these "borrowed" violations become independently actionable as unfair competitive practices under the UCL. *Id.* (quoting *Farmers Ins. Exch. v. Superior Court,* 2 Cal. 4th 377, 383, 6 Cal. Rptr. 2d 487, 826 P.2d 730 (1992)).

Nevertheless, [*16] Defendants argue that the wrong alleged in the UCL claim "consists solely of a violation of federal law." (Doc. # 21 at 1:21.) Defendants claim that Congress amended FLSA through the Portal-to-Portal Act of 1947 in response to a flood of suits often concerning uninvolved employees. *Id.* at 4, 5. Defendants advance:

> Congress' aim in adding the "opt-in" language to § 216(b) was to "prevent large group actions, with their vast allegations of liability, from being brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit. *Id. [Cameron-Grant v. Maxim Healthcare Services, Inc.,* 347 F.3d 1240, 1248] Or put another way, "[t]he 'consent in writing requirement sought to eradicate the problem of totally uninvolved employees gaining recovery as a result of some third party's action in filing suit." *Id.* Thus, the Act "prohibit[s] what precisely is advanced under Rule 23 -- a representative plaintiff filing an action that potentially may generate liability in favor of uninvolved class members. *Id.*

(Doc. # 21 at 5:10-16.)

However, in *Tomlinson* where employees alleged overtime violations pursuant to both FLSA and UCL, the district court held Congress did not create an [*17] absolute barrier to relief precluding the state law claim based on opt-out procedures. *See Tomlinson v. Indymac Bank,* 359 F. Supp. 2d 898, 900 (C.D. Cal. Feb. 18, 2005). In that case, although the court focused on whether plaintiffs used the FLSA-based UCL claim to circumvent a statutory barrier to relief and not the issue of preemption, the court found Congress's concerns when amending FLSA "simply are not present in a UCL action, where plaintiffs are limited to restitution." *Id.* at 900. Moreover, the *Tomlinson* court concluded that the opt-in requirement was merely a procedural hurdle, and a UCL claim "is not precluded simply because it is procedurally barred by the underlying statute." *Id.* In support, the *Tomlinson* court cited a California Supreme Court case, *Cortez v. Purolator Air Filtration Prods. Co.,* 23 Cal. 4th 163, 96 Cal. Rptr. 2d 518, 999 P. 2d 706 (Cal. 2000), that allowed a UCL claim despite the fact that the statute of limitations had expired on the underlying statute which supplied the predicate violation. *Id.* The *Tomlinson* court noted that the UCL makes violations of other laws independently actionable, and in essence creates a second cause of action not dependent on the procedures of the underlying statute. [*18] *Id.*

Moreover, *Barnett* is also instructive. *see Barnett v. Washington Mutual Bank, FA,* 2004 U.S. Dist. LEXIS 18491, 2004 WL 2011462, (N.D. Cal. Sept. 9, 2004). As in the last case, the defendants in *Barnett* argued that the plaintiff's overtime violations based on federal FLSA claims preempted the state UCL overtime violations, to the extent the UCL claims were based on violations of FLSA. In particular, the defendants noted that the claims under section 17200 allowed for a longer statute of limitations and called for opt-out procedures in direct contrast to FLSA's opt-in procedures. 2004 U.S. Dist. LEXIS 18491, at *14, [WL] at *4. The *Barnett* court found Congress' adoption of FLSA's statute of limitations and opt-in procedure did not preclude a California UCL claim with a longer statute of limitations and opt-out procedure "in light of the savings clause and the absence of a clear indication from Congress to the contrary." 2004 U.S. Dist. LEXIS 18491, at 19, [WL] at *6. The *Barnett* court cited *Williamson v. Gen. Dynamics Corp.,* 208 F.3d 1144, 1152 (9th Cir. 2000), a Ninth Circuit decision, wherein the Ninth Circuit reversed a district court's finding that FLSA was the exclusive remedy for claims duplicated by or equivalent of rights covered by FLSA. 2004 U.S. Dist. LEXIS 18491, at *20, [WL] at *6. Moreover, the *Barnett* Court [*19] found that rather than protect employers who fail to pay overtime, the "Supreme Court and the Ninth Circuit have consistently found that the central purpose of the FLSA is to enact minimum wage and maximum hour provisions designed to protect employees," *Id.* (citing *Williamson* at 1154.)

Similarly, in *Aguayo v. Oldenkamp Trucking,* 2005 U.S. Dist. LEXIS 22190, 2005 WL 2436477 (E.D. Cal. Oct. 3, 2005), plaintiffs sought to certify two classes, one under FLSA, and another under California's UCL, for alleged overtime violations. Defendants argued the UCL claims, based on opt-out procedures, were preempted by the Portal-to-Portal Act as a means of enforcement of FLSA violations. 2005 U.S. Dist. LEXIS 22190, at *25, [WL] at *8. The *Aguayo* court found that conflict preemption did not apply because "FLSA was designed to give specific minimum protections to individuals workers." 2005 U.S. Dist. LEXIS 22190, at *30, [WL] at *10 (citing *Williamson* at 1150). The Aguayo court reasoned that, if the protection of workers from substandard wages and oppressive working hours remained FLSA's goals, more favorable remedies such as a longer statute of limitations and a potentially easier class certification process should not poise a real threat to the accomplishment of that goal. 2005 U.S. Dist. LEXIS 22190, at *30, [WL] at *10.

More recently on [*20] February 22, 2006, in *Bahramipour v. Citigroup Global Markets, Inc.,* 2006 U.S. Dist. LEXIS 9010, 2006 WL 449132 (N.D. Cal. Feb. 22,

2006), the Northern District analyzed the issue of pre-emption and found a longer statute of limitations and opt-out procedure did not bar the plaintiff's UCL claim based on a violation of FLSA. Although the plaintiff in *Bahramipour* brought a state UCL claim based on a FLSA violation, without an independent FLSA claim, the Court's reasoning is nonetheless applicable. Similar to the other district court decisions, the *Bahramipour* court relied on the Ninth Circuit's decision in *Williamson*, noting that the purpose of FLSA to protect employees "despite the [Portal-to-Portal Act] amendments, . . . the central purpose of the FLSA is to enact minimum wage and maximum hour provisions designed to protect employees." 2006 U.S. Dist. LEXIS 9010. at *19, [WL] at 7 (citing *Williamson*, 208 F. 3d at 1152).

These cases also are consistent with applicable Ninth Circuit authority that has examined the scope of California's overtime laws in reference to FLSA. In *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990), the defendants argued that because Congress expressly excluded seamen from FLSA's overtime requirements, [*21] Congress intended seamen to be excluded from California's overtime requirements as well. The Ninth Circuit disagreed, and described states as possessing "broad authority under their police powers to regulate the employment relationship to protect resident workers." *Id.* at 1415. The Ninth Circuit held "in light of the plain language of FLSA savings clause and in the absence of a clear indication from Congress to the contrary, [the FLSA exemption] does not preclude enforcement of California's overtime provisions to protect California-resident seamen in this case." *Id.* at 1419.

Nevertheless, Defendants in their Supplemental Brief suggest that none of the cases referenced above "squarely" address their argument and that "one of Congress's primary goals in passing the Portal-to-Portal Act was to outlaw FLSA opt-out class actions and to require personal involvement in FLSA class actions." (Doc. # 32 at 1:5, 6.) Defendants cite *Rodriguez v. Texan, Inc.,* 2001 U.S. Dist. LEXIS 24652, *3 (N.D. Ill. Mar. 7, 2001), as supporting their argument. However, the *Rodriguez* court, while questioning the policy behind FLSA's opt-in procedure in light of similar state statutes with opt-out requirements, [*22] also expressed concern on the issue of supplemental jurisdiction. As this court noted earlier, several district courts have found opt-in and opt-out causes of action, although mutually exclusive procedures, may be maintained in one case. Furthermore, the *Rodriguez* Court admitted that "this Court's brief research has not uncovered any precedential discussion or ruling on the appropriateness or inappropriateness of federal class action treatment of such state law claims in this circumstance," and referenced *Ladegaard v. Hard Rock Concrete Cutters, Inc.,* 2000 U.S. Dist. LEXIS

17832, at *27 (D. Ill. Nov. 30, 2000), that granted class certification for such claims. 2000 U.S. Dist. LEXIS 17832, at *1. Ultimately, the *Rodriguez* Court did not find the pendant state claims brought under two separate Illinois statutes were preempted, but merely put the plaintiffs, "on notice that they have an uphill burden in their effort to convert Rodriguez's individual claim into one of broader scope." 2001 U.S. Dist. LEXIS 24652, at *5.

Defendants also cite two district court cases that dismissed common law claims deemed to be preempted by FLSA: *Tombrello v. USX Corp.,* 763 F. Supp. 541 (N.D. Ala. 1991); *Nettles v. Techplan Corp.,* 704 F. Supp. 95 (S.D.S.C. 1988). [*23] However, these cases do not squarely address Defendant's issue in this case. In *Tombrello*, the plaintiff brought a wage claim under FLSA and three pendant state claims based on a collective bargaining agreement. Besides citing cases for the proposition that collective bargaining agreements are preempted by federal labor law, the *Tombrello* court found FLSA "the exclusive remedy for enforcing rights created under the FLSA." *Id.* at 545. In support of this proposition, the *Tombrello* court cited *Nettles* and a Northern District case, *Lerwill v. Inflight Motion Pictures, Inc.,* 343 F. Supp. 1027, 1029 (N.D. Cal. 1972). As the district court in *Barnett* stated, "*Lerwill* does not persuade the court that plaintiffs' claim is preempted." *Barnett,* 2004 U.S. Dist. LEXIS 18491, at *18, 2004 WL 2011462 at *5. The *Barnett* court distinguished *Lerwill* because: (1) it was not a preemption case that engaged in a preemption analysis and, (2) the issue was whether to incorporate FLSA provisions into a private contract. *Id.* Moreover, the Ninth Circuit has noted that *Lerwill* is "weak precedent" for asserting equivalent state law claims are preempted by FLSA. *Id.* (citing: *Williamson,* 208 F.3d at 1153). Also, as noted earlier, the Ninth Circuit [*24] in *Williamson* reversed a district court's finding that FLSA was the exclusive remedy for claims duplicated by or equivalent of rights covered by FLSA. 2004 U.S. Dist. LEXIS 18491, at *20, [WL] at *6.

Here, Plaintiff seeks to bring a cause of action under a California statute that expressly allows violations of federal law to act as the predicate unlawful act and remain independently actionable under the statute. The Ninth Circuit, in addition, has recognized "Congressional intent to preempt state law must be clear and manifest." *Williamson* at 1150 (citing *Industrial Truck Ass'n, Inc. v. Henry,* 125 F.3d 1305, 1309 (9th Cir. 1997)). The Court finds the reasoning in *Tomlinson, Barnett, Aguayo,* and *Bahramipour* sound and consistent with the Ninth Circuit's decision in *Williamson* analyzing preemption. The Court holds that California's UCL is not preempted by FLSA.

**b) Class allegations improperly require adjudication on the merits to determine class membership.**

In their Motion, Defendants also request the Court strike Plaintiff's class allegations with leave to amend because Defendants argue Plaintiff's proposed class improperly requires an adjudication on the merits to determine class membership. Specifically, Defendants argue [*25] the Court cannot discern class members based on Plaintiff's FLSA, UCL, and PAGA class descriptions that include current and former RHI "salaried non-exempt inside sales employees" who "have not been compensated at least at one and one-half times the regular rate of pay for all work performed in excess of forty hours per week." Defendants claim this description lacks clarity as to what alleged class members did for a job, what their duties were, or even their formal job titles. In support, Defendants cite *Oshana v. Coca-Cola Bottling Co.,* 225 F.R.D. 575 (N.D. Ill. 2005), for the proposition that class definitions must be definite enough to ascertain class members.

In response, Plaintiff maintains that the class allegations sufficiently specify type of employee (inside sales person), the way employees are paid, the geographic locations, and the time frame for the class periods, especially given the fact that the case is in its initial stage. Plaintiff further contends the class definitions are distinguishable from *Oshana* where the proposed class definition might be said to encompass "millions of potential members without any identifiable basis for standing." *Id.* at 580. In addition, Plaintiff [*26] maintains that the Motion for Class Certification is the proper time to spec-ify all formal job titles and other particulars, to the extent Plaintiff needs to specify these details at all. Moreover, Plaintiff argues, at the very least, an opportunity should be afforded "to conduct discovery to determine the various formal job titles before narrowing their class definition in such a way that might risk excluding certain inside sales employees. Furthermore, Plaintiff has alleged an across the board policy and practice of misclassifying inside sales employees as exempt." (Doc. # 27 at 10:17-21.)

The Court agrees with Plaintiff that the class allegations are sufficient at this stage of the proceedings. Defendants failed to demonstrate that Plaintiff's class definitions, at this point, are unworthy of consideration and unduly prejudicial requiring adjudication on the merits to determine class membership.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Request for Judicial Notice (Doc. # 22), **DENIES** Defendants' Motion to Strike or Dismiss Plaintiff's UCL claim, and **DENIES** Defendants' Motion to Strike or Dismiss Plaintiff's class allegations (Doc. # 21).

### IT IS SO ORDERED.

Dated:  [*27] 3/28/2006

/s/ Martin J. Jenkins

MARTIN J. JENKINS

UNITED STATES DISTRICT JUDGE