JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038
(212) 545-4000
Attorneys of Record:
    Felice B. Ekelman (FE 5692)
    David S. Greenhaus (DG 0466)
ATTORNEYS FOR DEFENDANTS
GETRONICS WANG LLC;
GETRONICS USA, INC.; and
GETRONICS FLEXIBLE SOLUTIONS, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

KEVIN HUGHES and CRYSTIE KILGER,
on behalf of themselves and all others
similarly situated,

                    Plaintiffs,

            -against-                                    Civil Action No.:07 CV 10356 (LAK)

GETRONICS WANG LLC;                                     **AFFIRMATION OF DAVID S.**
GETRONICS USA, INC.; and                               **GREENHAUS**
GETRONICS FLEXIBLE SOLUTIONS,
LLC,

                    Defendants.

-------------------------------------------------------------X

DAVID S. GREENHAUS, an attorney duly admitted to practice before this Court, declares

pursuant to 28 U.S.C. § 1746 that:

            1.    I am an associate with the law firm Jackson Lewis LLP, counsel for

Defendants Getronics Wang LLC, Getronics USA, Inc. and Getronics Flexible Solutions, LLC

(together the "Defendant").

            2.    The following statements are true based upon my own knowledge, review

of pertinent documents, and information and belief.

3.    Attached as <u>Exhibit A</u> is a copy of the First Amended Complaint discussed in <u>Brickey v. Dolencorp. Inc.</u>, 244 F.R.D. 176 (W.D.N.Y. 2007).

4.    Attached as <u>Exhibit B</u> is a copy of the original Complaint filed in this action.

5.    Attached as <u>Exhibit C</u> is a copy of the decision in <u>Burkhart-Deal v. Citifinancial, Inc.</u>, No. 07-CV-1747, 2008 WL _____, 2008 U.S. Dist. LEXIS 44469 (W.D. Pa. June 5, 2008), which decision is not currently reported by Westlaw.

6.    Attached as <u>Exhibit D</u> is a copy of the decision in <u>Gardner v. Assocs. Commer. Corp.</u>, No. 00-CV-3889, 2000 WL _____, 2000 U.S. Dist. LEXIS 22804 (S.D. Tex. Dec. 19, 2000), which decision is not currently reported by Westlaw.

DAVID S. GREENHAUS

Dated: June 12, 2008
       New York, New York

2

# EXHIBIT A

Charles Joseph (CJ 9442)
Joseph & Herzfeld LLP
757 Third Avenue, 25th Floor
New York, NY 10017
Tel. (212) 688-5640
Fax (212) 688-2548

Kingsley & Kingsley, APC
Eric B. Kingsley
16133 Ventura BL., SUITE 1200
Encino, CA 91436
Phone (818) 990-8300
Fax (818) 990-2903
*Admitted Pro Hac Vice*

Spiro Moss Barness Harrison & Barge LLP
Ira Spiro
Gregory N. Karasik
11377 W. Olympic Boulevard, 5th Floor
Los Angeles California 90064
Phone: (310) 235-2468
Fax: (310) 235-2456
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs and the proposed
Plaintiff Classes*

United States District Court

Western District of New York

| | |
|---|---|
| **TAMMY BRICKEY, BECKY NORMAN, ROSE ROCHOW, SANDRA COGSWELL, MELINDA SAPPINGTON, AND JENNIFER ANDERSON**, on behalf of themselves and all those similarly situated, | Case No. 06 CV 06084 <br><br> **Rule 23** <br><br> **Class Action and FLSA Collective Action** |
| Plaintiffs, | |
| v. | **FIRST AMENDED COMPLAINT** |
| **DOLGENCORP, INC.** and **DOLLAR GENERAL CORPORATION**, | |
| Defendants. | |

Plaintiffs, on behalf of themselves and those similarly situated, allege as follows:

## INTRODUCTION

1

1.     This is a collective and class action instituted by Plaintiffs to recover damages on behalf of themselves and other employees for violations of federal and state wage and hour laws by and on behalf of all employees employed by Defendant as assistant store managers, assistant managers, floating store managers, floating managers, floaters, keyholders and similarly situated employees who were employed in stores operated by Defendants Dolgencorp, Inc. and Dollar General Corporation, throughout the United States. Plaintiffs allege that as a result of Defendants' policies, practices and procedures, Plaintiffs and other employees were, among other things, not compensated at one and one half times their regular rates of pay for hours worked in excess of forty hours per week, required to work without recording their time and without any compensation ("off the clock"), subjected to the alteration of their time and pay records, and other unlawful conduct which resulted in the denial of their earned compensation in violation of federal and state law.

2.     In this pleading, the term "Covered Employees" means all persons who have been, are, or in the future will be employed by Defendants as assistant store managers, assistant managers, floating store managers, floating managers, floaters, keyholders and similarly situated employees and who were so employed during the period of time covered by the statute of limitations applicable to the particular claim for relief in which the term "covered employee" or "class" appears, including periods of time during which the statute of limitations was or may have been tolled or suspended.

3.     In this pleading, "Defendants" means "defendants and each of them," and refers to the defendants named in the particular claim for relief in which the word "Defendants" appears.

4.      The allegations in this pleading are made without any admission that, as to any particular allegation, Plaintiffs bear the burden of pleading, proof, or persuasion. Plaintiffs reserve all rights to plead in the alternative.

## JURISDICTION AND VENUE

5.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (The "FLSA"). Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the state law claims. The state law claims are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is proper in this district because a substantial part of the events and omissions giving rise to the claims occurred in this district. Venue is also proper in this district because Defendants are licensed to do business and are doing business in this district; Defendants have conducted substantial, continuous and systematic commercial activities in this district.

## THE PARTIES

7.      Defendant Dollar General Corporation is a Tennessee corporation with its principal place of business in Tennessee. Dollar General is and has been doing business in New York and in 29 other U.S. states. Defendant Dolgencorp, Inc. is a Kentucky corporation with its principal place of business in Tennessee. Dolgencorp., Inc. is and has been doing business in New York and in 29 other U.S. states. Defendants are hereinafter collectively referred to as "Dollar General."

8.      Plaintiff Becky Norman ("Ms. Norman") is a citizen and resident of New

3

York.  Ms. Norman was employed by Defendants in East Rochester, New York and Geneseo, New York as an assistant manager from March 2004 until May 2005. Dollar General did not compensate Ms. Norman for all the time she worked.  Ms. Norman worked hours in excess of forty (40) hours per workweek without receiving overtime compensation. During her employment with Defendants, Ms. Norman's rights under the FLSA and New York law were violated, as more specifically set forth below.

9.        Plaintiff Tammy Brickey ("Ms. Brickey") is a citizen and resident of Ohio.  Ms. Brickey was employed by Defendants in South Webster, Ohio as an assistant manager from about May 2003 until about March 2004.  Dollar General did not compensate Ms. Brickey for all the time she worked.  Ms. Brickey worked hours in excess of forty (40) hours per workweek without receiving overtime compensation. During her employment with Defendants, Ms. Brickey's rights under the FLSA and Ohio law were violated, as more specifically set forth below.

10.       Plaintiff Rose Rochow ("Ms. Rochow") is a citizen and resident of Ohio. Ms. Rochow was employed by Defendants as a floating manager in various stores throughout Ohio from about May 2003 until May 2004. Dollar General did not compensate Ms. Rochow for all the time she worked. Ms. Rochow worked hours in excess of forty (40) hours per workweek without receiving overtime compensation. During her employment with Defendants, Ms. Rochow's rights under the FLSA and Ohio law were violated, as more specifically set forth below.

11.       Plaintiff Melinda Sappington is a citizen and resident of Missouri. Ms. Sappington was employed by Defendants as an assistant manager in Springfield, Missouri from February 2004 until present. Dollar General did not compensate Ms.

4

Sappington for all of the time she worked. Ms. Sappington worked hours in excess of forty (40) hours per workweek without receiving overtime compensation. During her employment with Defendants, Ms. Sappington's rights under the FLSA were violated.

12.      Plaintiff Sandra Cogswell is a citizen and resident of Missouri. Ms. Cogswell was employed by Defendants as a keyholder in Springfield, Missouri from May 2005 until August 2005. Dollar General did not compensate Ms. Cogswell for all of the time she worked. Ms. Cogswell worked hours in excess of forty (40) hours per workweek without receiving overtime compensation. During her employment with Defendants, Ms. Cogswell's rights under the FLSA were violated.

13.      Plaintiff Jennifer Anderson is a citizen and resident of North Carolina. Ms. Cogswell was employed by Defendants as an assistant manager in North Carolina and Maryland. Dollar General did not compensate Ms. Anderson for all of the time she worked.  Ms. Anderson worked hours in excess of forty (40) hours per workweek without receiving overtime compensation. During her employment with Defendants, Ms. Anderson's rights under the FLSA were violated.

14.      Plaintiffs are informed and believe and thereon allege that at all relevant times each defendant, directly or indirectly, or through agents or other persons, employed Plaintiffs and the other Covered Employees, and exercised control over the wages, hours, and working conditions of Plaintiffs and the other hourly employees.  Plaintiffs are informed and believe and thereon allege that, at all relevant times, each defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the

other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below. Plaintiffs are informed and believe and thereon allege that each defendant acted pursuant to and within the scope of the relationships alleged above, that each defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.    Plaintiffs bring the First Claim for Relief, for violations of the FLSA, as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of themselves and all Covered Employees who were, are, or will be employed by Defendants on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period"), in any position which Dollar General compensates on an hourly basis.

16.    At all relevant times, Plaintiffs and the Covered Employees are and have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendant' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at a rate of time and a half for work in excess of forty (40) hours per workweek, willfully failing to keep records required by the FLSA, and willfully failing and refusing to pay them any compensation for work, particularly hours worked over (40) in a workweek. The claims of Plaintiffs stated herein are similar to those of the other Covered Employees.

17.    The First Claim for Relief is properly brought and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The Covered Employees are readily ascertainable. For purposes of notice and other purposes related to

6

this action, their names and addresses are readily available from Defendants. Notice can be provided to the Covered Employees via first class mail to the last address known to their employer or by other means permitted by applicable law.

18.    Consents by Ms. Brickey, Ms. Norman, Ms. Rochow, Ms. Sappington, and Ms. Cogswell to be parties plaintiffs in the FLSA claims alleged herein have been filed with the court on February 9, 2006. Plaintiff Jennifer Anderson's consent to sue under the FLSA is attached hereto. Plaintiffs are informed and believe and thereon allege that a great many other Covered Employees will sign and file such consents.

## RULE 23 CLASS ALLEGATIONS - OHIO

19.    Plaintiffs Brickey and Rochow ("Ohio Plaintiffs") bring their Ohio state law claim, pursuant to the Ohio Minimum Fair Wage Standards Act, R.C.§§ 4111.01, *et seq.* ("OMFWSA"), under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who were, are, or will be employed by Defendants on or after the date that is two years before the filing of the complaint in this case (the "Ohio Class Period").

20.    The proposed class that the Ohio Plaintiffs seek to represent is defined as all persons who have, within the Ohio Class Period, been, are, or in the future will be employed in Ohio by Defendants as assistant store managers, assistant managers, floating store managers, floating managers, floaters, keyholders and similarly situated employees. All said persons, including Plaintiffs Brickey and Rochow, are referred to herein as the "Ohio Class." The class members are readily ascertainable. The number and identity of the Ohio Class members are determinable from the records of Defendants, as are the shifts assigned and worked, the positions held, and the rates of pay for each

7

Ohio Class member. For purposes of notice and other purposes related to this action, their names and addresses and readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. Proc.23.

21.     The proposed Ohio Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than a three hundred and fifty (350) members of the Ohio Class.

22.     The claims of the Ohio Plaintiffs are typical of those claims which could be alleged by any member of the Ohio Class, and the relief sought is typical of the relief which would be sought by each member of the Ohio Class in separate actions. All the Ohio Class members were subject to the same corporate policies and practices of Defendants, as alleged herein, of altering employees' time records, regularly failing to pay employees the minimum wage by requiring them to work "off the clock," failing to properly compensate employees overtime, and failing to maintain accurate records. Defendants' corporate-wide policies and practices affected all Ohio Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Ohio Class member. The Ohio Plaintiffs and other Ohio Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

23.     The Ohio Plaintiffs are able to fairly and adequately protect the interests of the Ohio Class and have no interests antagonistic to the class. The Ohio Plaintiffs are

8

represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

24.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual Ohio Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Ohio Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The cost to the court system and the public adjudication of individual litigation claims would be substantial and substantially more than if the claims were treated as a class action.  The prosecution of separate actions by individual members of the Ohio Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Ohio Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, classwide proof.  In addition, if appropriate, the court can, and is empowered

9

to, fashion methods to efficiently manage this action as a class action.

25.    Upon information and belief, Defendants and other employers throughout the state violate the OMFWSA. Their current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Their former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

26.    There are questions of law and fact common to the Ohio Class which predominate over any questions affecting only individual class members, including:

     i.  Whether Defendants employed or jointly employed the Ohio Plaintiffs and the Ohio Class within the meaning of the Ohio law.

     ii.  What proof of hours is sufficient where Defendants failed in their duty to maintain time records.

     iii.  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of overtime wages.

     iv.  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked.

     v.  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked.

10

vi.  Whether Defendants failed and/or refused to pay the Ohio
     Plaintiffs and the Ohio Class premium pay for hours worked in
     excess of forty per workweek within the meaning of Ohio law.

vii.  What are and were the policies, practices, programs, procedures,
      protocols and plans of Defendants regarding the types of work and
      labor for which Defendants did not pay the class members at all.

viii.  At what common rate, or rates subject to common methods of
       calculation, were and are Defendants required to pay the class
       members for their work.

ix.  What are the common conditions of employment and in the
     workplace, such as record keeping, breaks, and policies and
     practices regarding labor budgeting, that affect whether the class
     was paid at overtime rates for overtime work.

x.  What are the common conditions of employment and in the
    workplace, such as record keeping, breaks, and policies and
    practices regarding labor budgeting, that affect whether the class
    was paid at least the minimum wage for all work.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

27.     Plaintiff Norman ("New York Plaintiff") brings her New York Minimum
Wage Act claim, pursuant to N.Y. Lab. Law §§ 650, *et seq.* ("NYMWA"), under Rule
23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons
who were, are, or will be employed by Defendants on or after the date that is six years
before the filing of the complaint in this case (the "New York Class Period").

11

28.    The proposed class that the New York Plaintiff seeks to represent is defined as all persons who have, within the New York Class period, been, are, or in the future will be employed in New York by Defendants as assistant store managers, assistant managers, floating store managers, floating managers, floaters, keyholders and similarly situated employees. All said persons, including Plaintiff Norman, are referred to herein as the "New York Class." The class members are readily ascertainable. The number and identity of the New York Class members are determinable from the records of Defendants, as are the shifts assigned and worked, the positions held, and the rates of pay for each New York Class member. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. Proc. 23.

29.    The proposed New York Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than two hundred (200) members of the New York Class.

30.    The claims of the New York Plaintiffs are typical of those claims which could be alleged by any member of the New York Class, and the relief sought is typical of the relief which would be sought by each member of the New York Class in separate actions. All the New York Class members were subject to the same corporate practices of Defendants, as alleged herein, of altering employees' time records, requiring employees to work "off the clock," regularly failing to pay employees their "spread-of-

12

hour" wages, and failing to maintain accurate records. Defendants' corporate-wide policies and practices affected all New York Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Ohio Class member. Mr. Norman and other New York Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

31.     The New York Plaintiff is able to fairly and adequately protect the interests of the New York Class and has no interests antagonistic to the class. The New York Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

32.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual New York Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual New York Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public adjudication of individual litigation claims would be substantial

13

and substantially more than if the claims were treated as a class action. The prosecution of separate actions by individual members of the New York Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the New York Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

33.    Upon information and belief, Defendants and other employers throughout the state violate the NYMWA. Their current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Their former employees are fearful of brining claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

34.    There are questions of law and fact common to the New York Class which predominate over any questions affecting only individual class members, including:

          i.    Whether Defendants employed or jointly employed the New York Plaintiff and the New York Class within the meaning of the Ohio law.

         ii.    What proof of hours is sufficient where Defendants failed in their duty to maintain time records.

       iii.    What were the policies, practices, programs, procedures, protocols

14

and plans of Defendants regarding payment of overtime wages.

iv. What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked.

v. What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages at least minimum wages for all hours worked.

vi. Whether Defendants failed and/or refused to pay the New York Plaintiff and the New York Class premium pay for hours worked in excess of forty per workweek within the meaning of New York law.

vii. Whether Defendants failed and/or refused to pay the New York Plaintiff and the New York Class the "spread of hour" wage.

viii. What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the class members at all.

ix. At what common rate, or rates subject to common methods of calculation, was and is Defendants required to pay the class members for their work.

x. What are the common conditions of employment and in the workplace, such as record keeping, breaks, and policies and practices regarding labor budgeting, that affect whether the class was paid at overtime rates for overtime work.

15

xi. What are the common conditions of employment and in the workplace, such as record keeping, breaks, and policies and practices regarding labor budgeting, that affect whether the class was paid at least the minimum wage for all work.

## RULE 23 CLASS ALLEGATIONS - MARYLAND

35.    Plaintiff Anderson (for allegations pertaining to Ms. Anderson's employment with Dollar General in Maryland, she is herein referred to as "Maryland Plaintiff") brings her Maryland state law claim, pursuant to the Maryland Labor & Employment Code §3-401, *et seq.* ("Maryland Wage and Hour Law"), and Maryland Labor & Employment Code § 3-501, *et seq.*, ("Maryland Wage Payment and Collection Law"), under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who were, are, or will be employed by Defendants on or after the date that is three years before the filing of the complaint in this case (the "Maryland Class Period").

36.    The proposed class that the Maryland Plaintiff seeks to represent is defined as all persons who have, within the Maryland Class Period, been, are, or in the future will be employed in Maryland by Defendants as assistant store managers, assistant managers, floating store managers, floating managers, floaters, keyholders and similarly situated employees. The class members are readily ascertainable. The number and identity of the Maryland Class members are determinable from the records of Defendants, as are the shifts assigned and worked, the positions held, and the rates of pay for each Maryland Class member. For purposes of notice and other purposes related to this action, their names and addresses and readily available from Defendants. Notice can

16

be provided by means permissible under Fed. R. Civ. Proc.23.

37.    The proposed Maryland Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than a three hundred and fifty (350) members of the Maryland Class.

38.    The claims of the Maryland Plaintiffs are typical of those claims which could be alleged by any member of the Maryland Class, and the relief sought is typical of the relief which would be sought by each member of the Maryland Class in separate actions. All the Maryland Class members were subject to the same corporate policies and practices of Defendants, as alleged herein, of altering employees' time records, regularly failing to pay employees the minimum wage by requiring them to work "off the clock," failing to properly compensate employees overtime, and failing to maintain accurate records. Defendants' corporate-wide policies and practices affected all Maryland Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Maryland Class member. The Maryland Plaintiffs and other Maryland Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

39.    The Maryland Plaintiff is able to fairly and adequately protect the interests of the Maryland Class and has no interests antagonistic to the class. The Maryland Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in

17

wage and hour cases.

40.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Maryland Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Maryland Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public adjudication of individual litigation claims would be substantial and substantially more than if the claims were treated as a class action. The prosecution of separate actions by individual members of the Maryland Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Maryland Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, classwide proof. In addition, if appropriate, the court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

41.    Upon information and belief, Defendants and other employers throughout

18

the state violate the Maryland Wage and Hour Law. Their current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Their former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

42.    There are questions of law and fact common to the Maryland Class which predominate over any questions affecting only individual class members, including:

    i.  Whether Defendants employed or jointly employed the Maryland Plaintiffs and the Maryland Class within the meaning of the Maryland law.

    ii. What proof of hours is sufficient where Defendants failed in their duty to maintain time records.

    iii. What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of overtime wages.

    iv. What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked.

    v.  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked.

    vi. Whether Defendants failed and/or refused to pay the Maryland

19

Plaintiffs and the Maryland Class premium pay for hours worked in excess of forty per workweek within the meaning of Maryland law.

vii.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the class members at all.

viii. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work.

ix.  What are the common conditions of employment and in the workplace, such as record keeping, breaks, and policies and practices regarding labor budgeting, that affect whether the class was paid at overtime rates for overtime work.

x.  What are the common conditions of employment and in the workplace, such as record keeping, breaks, and policies and practices regarding labor budgeting, that affect whether the class was paid at least the minimum wage for all work.

## RULE 23 CLASS ALLEGATIONS – NORTH CAROLINA

43.    Plaintiff Anderson (for allegations pertaining to Ms. Anderson's employment with Dollar General in North Carolina, she is herein referred to as "North Carolina Plaintiff") brings her North Carolina state law claim, pursuant to the North Carolina Wage and Hour Act, § 95-25.1 *et seq.* ("North Carolina Wage and Hour Act"), under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of

20

all persons who were, are, or will be employed by Defendants on or after the date that is two years before the filing of the complaint in this case (the "North Carolina Class Period").

44.    The proposed class that the North Carolina Plaintiff seeks to represent is defined as all persons who have, within the North Carolina Class Period, been, are, or in the future will be employed in North Carolina by Defendants as assistant store managers, assistant managers, floating store managers, floating managers, floaters, keyholders and similarly situated employees.  The class members are readily ascertainable.  The number and identity of the North Carolina Class members are determinable from the records of Defendants, as are the shifts assigned and worked, the positions held, and the rates of pay for each North Carolina Class member.  For purposes of notice and other purposes related to this action, their names and addresses and readily available from Defendants.  Notice can be provided by means permissible under Fed. R. Civ. Proc.23.

45.    The proposed North Carolina Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than a three hundred and fifty (350) members of the North Carolina Class.

46.    The claims of the North Carolina Plaintiff are typical of those claims which could be alleged by any member of the North Carolina Class, and the relief sought is typical of the relief which would be sought by each member of the North Carolina Class in separate actions. All the North Carolina Class members were subject to the same

21

corporate policies and practices of Defendants, as alleged herein, of altering employees' time records, regularly failing to pay employees the minimum wage by requiring them to work "off the clock," failing to properly compensate employees overtime, and failing to maintain accurate records. Defendants' corporate-wide policies and practices affected all North Carolina Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each North Carolina Class member. The North Carolina Plaintiffs and other North Carolina Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

47.     The North Carolina Plaintiff is able to fairly and adequately protect the interests of the North Carolina Class and has no interests antagonistic to the class. The North Carolina Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

48.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual North Carolina Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual North

22

Carolina Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public adjudication of individual litigation claims would be substantial and substantially more than if the claims were treated as a class action. The prosecution of separate actions by individual members of the North Carolina Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the North Carolina Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, classwide proof. In addition, if appropriate, the court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

49.    Upon information and belief, Defendants and other employers throughout the state violate the North Carolina Wage and Hour Act. Their current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Their former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

50.    There are questions of law and fact common to the North Carolina Class which predominate over any questions affecting only individual class members, including:

        i.    Whether Defendants employed or jointly employed the North

23

Carolina Plaintiffs and the North Carolina Class within the meaning of the North Carolina law.

ii.  What proof of hours is sufficient where Defendants failed in their duty to maintain time records.

iii.  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of overtime wages.

iv.  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked.

v.  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked.

vi.  Whether Defendants failed and/or refused to pay the North Carolina Plaintiffs and the North Carolina Class premium pay for hours worked in excess of forty per workweek within the meaning of North Carolina law.

vii.  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the class members at all.

viii.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work.

ix.  What are the common conditions of employment and in the

24

workplace, such as record keeping, breaks, and policies and practices regarding labor budgeting, that affect whether the class was paid at overtime rates for overtime work.

x.  What are the common conditions of employment and in the workplace, such as record keeping, breaks, and policies and practices regarding labor budgeting, that affect whether the class was paid at least the minimum wage for all work.

## FACTS

51.  Upon information and belief, Defendants operate over 200 stores in New York and over 7,900 stores throughout the United States.

52.  Upon information and belief, in each of its stores, Defendants employ at least one assistant store manager (or assistant manager or floating store manager or floating manager or floater) and several other hourly employees, usually including at least one keyholder.

53.  Plaintiffs were paid an hourly rate for work performed.  Covered Employees, New York Class member, Maryland Class members, North Carolina class members and Ohio Class members were paid an hourly rate for work performed.

54.  According to Defendants' policies and practices, all employees are required to record their time worked in Defendants' computer time system located at each cash register at the beginning and end of each shift and before and after breaks. Specifically, pursuant to policy and practice, each employee is instructed to record when s/he reports to work and to record the time at which s/he stops working each day.  The record of each employee's time is known as a "time card."

55.  Upon information and belief, Defendants' corporate and intermediate

25

managers constantly pressured store managers to reduce their costs and to stay under or within a budge set by Defendants of labor hours and compensation of each store. If store managers exceeded budgeted and scheduled labor hours, they were subjected to formal or informal discipline. If store managers reduced their costs and stayed within budgeted and scheduled labor hours, they were granted bonuses, raises and other incentives. In order to succeed in this system, store managers were induced to violate federal and state wage and overtime laws and regulations.

56.      Specifically, upon information and belief, Defendants' store managers, with the knowledge and consent of corporate management, systemically violated the law throughout all of Defendants' stores, in the following respects:

1.  Requiring hourly employees to work "off the clock" on a regular basis without recording their time by requiring employees to work through their lunch, although they had "clocked out" and were thus not compensated for that time and by requiring employees to work after their shifts, although they had "clocked out" and were thus not compensated for that time;

2.  Inducing employees to work "off the clock" by promising employees that their "off the clock" time would be applied or would "carry over" to the following week and credited as hours worked for that week (though frequently failing to follow-through on this promise);

3.  Requiring employees to perform tasks, including

paperwork and bank deposits, before or after clocking in

via the computer time system in the cash registers;

4. Failing to pay earned compensation for employees' work;

5. Failing to pay employees at the proper rate for hours

worked in excess of forty hours per week; and

6. Failing to maintain accurate records of employees' time.

57.     As set forth above, Ms. Brickey was employed by Defendants in South

Webster, Ohio as an assistant manager from about May 2003 until about March 2004.

During this time, Ms. Brickey was required on a regular basis to work "off the clock."

During this time, Ms. Brickey's store manager regularly altered her time records by

reducing her recorded hours. Accordingly, Ms. Brickey has sustained substantial losses

from Defendants' failure to pay her overtime compensation and altering of her time

records.

58.     As set forth above, Ms. Rochow was employed by Defendants as a

floating manager in various stores throughout Ohio from May 2003 until May 2004.

During this time, Ms. Rochow was required on a regular basis to work "off the clock."

Accordingly, Ms. Rochow has sustained substantial losses from Defendants' failure to

pay her overtime compensation and altering of her time records.

59.     As set forth above, Ms. Norman was employed by Defendants in East

Rochester, New York and Geneseo, New York as an assistant manager from March 2004

until May 2005. During this time, Ms. Norman was required on a regular basis to work

"off the clock." Accordingly, Ms. Norman has sustained substantial losses from

Defendants' failure to pay her overtime compensation and altering of her time records.

27

60.      As set forth above, Ms. Sappington has been employed by Defendants in Springfield, Missouri as an assistant manager from February 2004 until the present. During this time, Ms. Sappington was required on a regular basis to work "off the clock." Accordingly, Ms. Sappington has sustained substantial losses from Defendants' failure to pay her overtime compensation and altering of her time records.

61.      As set forth above, Ms. Cogswell has been employed by Defendants in Springfield, Missouri as a keyholder from May 2005 until September 2005. During this time, Ms. Cogswell was required on a regular basis to work "off the clock." Accordingly, Ms. Cogswell has sustained substantial losses from Defendants' failure to pay her overtime compensation and altering of her time records.

62.      As set forth above, Ms. Anderson was employed by Defendants in North Carolina and Maryland as an assistant manager from September 2004 until December 2004. During this time, Ms. Anderson was required on a regular basis to work "off the clock." Accordingly, Ms. Anderson has sustained substantial losses from Defendants' failure to pay her overtime compensation and altering of her time records.

63.      Upon information and belief, other assistant store managers, assistant managers, floating store managers, floating managers, floaters, keyholders and similarly situated employees who worked for Defendants' stores throughout the United States and who are Covered employees and/or members of the Ohio Class, the Maryland Class, the North Carolina class and/or the New York Class were subjected to the same policies and practices and have sustained similar losses of compensation for numerous hours worked on behalf of Defendants.

64.      Upon information and belief, Defendants, through their corporate

28

management and regional and district managers, have deliberately trained, supervised, instructed, and authorized store managers to engage in the above unlawful practices and have ratified their actions thereafter, in order to enhance corporate profits and reduce their labor costs.

### FIRST CLAIM FOR RELIEF
### (By the Covered Employees Against For FLSA Overtime and Record Keeping Violations)

65.    Paragraphs 1 – 64 are incorporated here.

66.    At all relevant times, Defendants have been, and continues to be, an "employer" engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203(d) . At all relevant times, Defendants have employed, and continue to employ the Covered Employees as "employee[s]" within the meaning of the FLSA, 29 U.S.C. § 203(e). At all relevant times, Defendants has had gross operating revenues in excess of $500,000.

67.    Throughout the FLSA Class Period, Plaintiffs and the other Covered Employees regularly worked in excess of forty (40) hours per workweek, and continue to do so.

68.    At all relevant times, each Defendant has had, and continues to have, common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay the Covered Employees at time and a half rates for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA.

69.    At all relevant times, Defendants, through its policies and practices described above, violated the FLSA throughout the FLSA Period, as follows:

29

1. By failing to pay Plaintiffs and the other Covered
   employees overtime compensation for hours of work they
   performed for Defendants in excess of 40 hours per week;

2. By regularly and routinely requiring plaintiffs and the other
   Covered Employees to work "off the clock" and failing to
   record, report, and/or compensate Plaintiffs and the
   Covered Employees for compensable time performed
   during their lunch break and before and after their regularly
   scheduled shifts.

3. By failing to make, keep and preserve accurate time records
   with respect to plaintiffs and other FLSA Collective
   Plaintiffs sufficient to determine their wages and hours; and

4. By other practices in violation of the FLSA, 29 U.S.C. §§
   201, *et seq.*

70.    The foregoing conduct, as alleged above, constitutes continuing, willful
violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

71.    As set forth above, Plaintiffs and the other Covered Employees have
sustained losses in their compensation as a proximate result of Defendants' violations.
Accordingly, Plaintiffs, on behalf of themselves and the Covered Employees, seek
damages in the amount of their respective unpaid compensation, [unpaid minimum wage
compensation], and liquidated damages as provided by FLSA, 29 U.S.C. § 216(b),
injunctive relief requiring Defendants to cease and desist from their violations of the
FLSA described herein and to comply with the FLSA, and such other legal and equitable

relief as the Court deems just and proper.

72.    Plaintiffs, on behalf of themselves and the Covered Employees, seek recovery of their attorneys' fees and the costs of this action to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**(Ohio State Law Claims)**

73.    Paragraphs 1 - 26 and 51-64 are incorporated here.

74.    At all relevant times, Defendants have employed, and continue to employ the Ohio Plaintiffs and the Ohio Class members as "employee[s]" within the meaning of the OMFWSA, Ohio Rev. Code § 4111.0. At all relevant times, Defendants' annual gross volume of sales made for business done exceeded $150,000.00.

75.    Throughout the Ohio Class Period, Ohio Plaintiffs and the Ohio Class members regularly worked in excess of forty (40) hours per workweek, and continue to do so.

76.    At all relevant times, each Defendants have had, and continues to have common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay the Ohio Plaintiffs and the Ohio Class members at time and a half rates for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the OMFWSA.

77.    At all relevant times, Defendants, through their policies and practices described above, violated the OMFWSA throughout the Ohio Period, as follows:

        a.  By failing to pay the Ohio Plaintiffs and the Ohio Class members overtime compensation for hours of work they performed for Defendants in excess of 40 hours per week;

31

b. By regularly and routinely requiring the Ohio Plaintiffs and the Ohio Class members to work "off the clock" and failing to record, report, and/or compensate the Ohio Plaintiffs and the Ohio Class members for compensable time performed during their lunch break and before and after their regularly scheduled shifts.

c. By failing to make, keep and preserve accurate time records with respect to the Ohio Plaintiffs and the Ohio Class members sufficient to determine their wages and hours; and

d. By other practices in violation of the OMFWSA.

78.     The foregoing conduct, as alleged above, constitutes continuing, willful violations of the OMFWSA.

79.     Defendant willfully failed to pay Ohio Plaintiff and Ohio Class all wages owed to them, in violation of Ohio Rev. Code §§ 4111.10 and 4113.5.

80.     As set forth above, the Ohio Plaintiffs and the Ohio Class members have sustained losses in their compensation as a proximate result of Defendants' violations. Accordingly, the Ohio Plaintiffs, on behalf of themselves and the Ohio Class members, seek damages in the amount of their respective unpaid compensation, [unpaid minimum wage compensation], injunctive relief requiring Defendants to cease and desist from their violations of the OMFWSA described herein and to comply with the OMFWSA, and such other legal and equitable relief as the Court deems just and proper.

81.     Plaintiffs, on behalf of themselves and the Ohio Class members, seek recovery of their attorneys' fees and the costs of this action to be paid by Defendants, as provided by the OMFWSA, R.C. § 4111.10, and liquidated damages equal to the greater

of six percent of their claims or $200, pursuant to Ohio Rev. Code § 4113.15.

### THIRD CLAIM FOR RELIEF
### (New York State Law Claims)

82.    Paragraphs 1 – 18, 27-34 and 51-64 are incorporated here.

83.    At all relevant times, Defendants have employed, and continue to employ the New York Plaintiff and New York Class as "employee[s]" within the meaning of the NYMWA, New York Lab. Law §§ 2, 190 and 651.

84.    Throughout the New York Class Period, the New York Plaintiff and the New York Class members regularly worked in excess of forty (40) hours per workweek, and continue to do so.

85.    At all relevant times, each Defendants have had, and continues to have common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay the New York Plaintiff and New York Class members at time and a half rates for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the NYMWA.

86.    At all relevant times, Defendants, through its policies and practices described above, willfully violated the NYMWA throughout the New York Class Period, as follows:

        a.   By failing to pay the New York Plaintiff and New York Class members overtime compensation for hours of work they performed for Defendants in excess of 40 hours per week;

        b.   By regularly and routinely requiring the New York Plaintiff and New York Class members to work "off the clock" and failing to record, report, and/or compensate the New York Plaintiff and New York Class members

33

for compensable time performed during their lunch break and before and
after their regularly scheduled shifts.

c.  By failing to make, keep and preserve accurate time records with respect
to the New York Plaintiff and New York Class members sufficient to
determine their wages and hours; and

d.  By failing to pay the New York Plaintiff and New York Class members an
additional hour's compensation at New York's minimum wage for each
day that their "spread of hours" exceeded ten hours, pursuant to 12
NYCRR § 142-2.4.

e.  By other practices in violation of the NYMWA.

87.    The foregoing conduct, as alleged above, constitutes continuing, willful
violations of the NYMWA.

88.    Defendant willfully failed to pay New York Plaintiff and New York Class
all wages owed to them, in violation of New York Lab. Law § 191.

89.    As set forth above, the New York Plaintiff and New York Class members
have sustained losses in their compensation as a proximate result of Defendants'
violations.  Accordingly, New York Plaintiffs, on behalf of themselves and the New York
Class, seek damages in the amount of their respective unpaid compensation, injunctive
relief requiring Defendants to cease and desist from their violations of the New York
laws described herein and to comply with them, and such other legal and equitable relief
as the Court deems just and proper.  Under NYMWA, NY Lab. Code §§ 198 and 663-6,
New York Plaintiffs and the New York Class are entitled to liquidated damages equal to
25% of the back pay the are owed.

34

90.     Plaintiffs, on behalf of themselves and the New York Class, seek recovery of their attorneys' fees and the costs of this action to be paid by Defendants, pursuant to New York Labor Law §§ 198 and 663(1).

## FOURTH CLAIM FOR RELIEF
### (Maryland State Law Claims)

91.     Paragraphs 1–18, 35-42 and 51-64 are incorporated here.

92.     At all relevant times, Defendants have employed, and continue to employ the Maryland Plaintiff and the Maryland Class members as "employee[s]" within the meaning of the Maryland Labor & Employment Code § 3-401, *et seq.* ("Maryland Wage and Hour Law"), and Maryland Labor & Employment Code § 3-501, *et seq.*, ("Maryland Wage Payment and Collection Law").

93.     Throughout the Maryland Class Period, Maryland Plaintiffs and the Maryland Class members regularly worked in excess of forty (40) hours per workweek, and continue to do so.

94.     At all relevant times, each Defendants have had, and continues to have common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay the Maryland Plaintiffs and the Maryland Class members at time and a half rates for work in excess of forty (40) hours per workweek as required by Maryland Wage and Hour Law.

95.     At all relevant times, Defendants, through their policies and practices described above, violated the Maryland Wage and Hour Law throughout the Maryland Class Period, as follows:

a. By failing to pay the Maryland Plaintiffs and the Maryland Class members overtime compensation for hours of work they performed for Defendants

35

in excess of 40 hours per week;

    b.  By regularly and routinely requiring the Maryland Plaintiffs and the Maryland Class members to work "off the clock" and failing to record, report, and/or compensate the Maryland Plaintiffs and the Maryland Class members for compensable time performed during their lunch break and before and after their regularly scheduled shifts.

    c.  By other practices in violation of the Maryland Wage and Hour Law.

96.    The foregoing conduct, as alleged above, constitutes continuing, willful violations of the Maryland Wage and Hour Law.

97.    Defendant willfully failed to pay Maryland Plaintiff and Maryland Class all wages owed to them, in violation of the Maryland Wage and Hour Law.

98.    As set forth above, the Maryland Plaintiffs and the Maryland Class members have sustained losses in their compensation as a proximate result of Defendants' violations. Accordingly, the Maryland Plaintiffs, on behalf of themselves and the Maryland Class members, seek damages in the amount of their respective unpaid compensation, [unpaid minimum wage compensation], injunctive relief requiring Defendants to cease and desist from their violations of the Maryland Wage and Hour Law described herein and to comply with the Maryland Wage and Hour Law, and such other legal and equitable relief as the Court deems just and proper.

99.    Plaintiffs, on behalf of themselves and the Maryland Class members, seek recovery of their attorneys' fees and the costs of this action to be paid by Defendants, as provided by the Maryland Wage and Hour Law, and liquidated damages equal to the backpay owed to the class, pursuant to the Maryland Wage Payment and Collection Law.

## FIFTH CLAIM FOR RELIEF

### (North Carolina State Law Claims)

100.         Paragraphs 1–18, 43–50 and 51-64 are incorporated here.

101.         At all relevant times, Defendants have employed, and continue to employ the North Carolina Plaintiff and the North Carolina Class members as "employee[s]" within the meaning of the North Carolina Wage and Hour Act, North Carolina Gen. Stat. § 95-25.1 *et seq.* ("North Carolina Wage and Hour Act").

102.         Throughout the North Carolina Class Period, North Carolina Plaintiffs and the North Carolina Class members regularly worked in excess of forty (40) hours per workweek, and continue to do so.

103.         At all relevant times, each Defendants have had, and continues to have common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay the North Carolina Plaintiffs and the North Carolina Class members at time and a half rates for work in excess of forty (40) hours per workweek as required by North Carolina Wage and Hour Act.

104.         At all relevant times, Defendants, through their policies and practices described above, violated the North Carolina Wage and Hour Act throughout the Ohio Period, as follows:

> a.  By failing to pay the North Carolina Plaintiffs and the North Carolina Class members overtime compensation for hours of work they performed for Defendants in excess of 40 hours per week;

> b.  By regularly and routinely requiring the North Carolina Plaintiffs and the North Carolina Class members to work "off the clock" and failing to record, report, and/or compensate the North Carolina Plaintiffs and the North Carolina Class members for compensable time performed during

37

their lunch break and before and after their regularly scheduled shifts.

  c. By other practices in violation of the North Carolina Wage and Hour Act.

 105.  The foregoing conduct, as alleged above, constitutes continuing, willful violations of the North Carolina Wage and Hour Act.

 106.  Defendant willfully failed to pay North Carolina Plaintiff and North Carolina Class all wages owed to them, in violation of the North Carolina Wage and Hour Act.

 107.  As set forth above, the North Carolina Plaintiffs and the North Carolina Class members have sustained losses in their compensation as a proximate result of Defendants' violations. Accordingly, the North Carolina Plaintiffs, on behalf of themselves and the North Carolina Class members, seek damages in the amount of their respective unpaid compensation, [unpaid minimum wage compensation], injunctive relief requiring Defendants to cease and desist from their violations of the North Carolina Wage and Hour Act described herein and to comply with the North Carolina Wage and Hour Act, and such other legal and equitable relief as the Court deems just and proper.

 108.  Plaintiffs, on behalf of themselves and the North Carolina Class members, seek recovery of their attorneys' fees and the costs of this action to be paid by Defendants, as provided by the North Carolina Wage and Hour Act, and liquidated damages equal to the backpay owed to the class, pursuant to the North Carolina Wage and Hour Act.

**PRAYER FOR RELIEF**

 WHEREFORE, Plaintiffs pray for relief as follows:

       A.     Designation of this action as a collective action on behalf of the Covered Employees (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all Covered Employees, apprising them of the pendency of this action, and permitting them promptly to file consents to be party plaintiffs in the FLSA claims in this action.

       B.     Designation of Plaintiffs as Representatives of the Covered Employees.

       C.     Certification of the Ohio state law claims a class action pursuant to Fed. R. Civ. Proc. 23(b)(2) and (3).

       D.     Certification of the New York state law claims as a class action pursuant to Fed. R. Civ. Proc. 23(b)(2) and (3).

       E.     Certification of the Maryland state law claims as a class action pursuant to Fed. R. Civ. Proc. 23(b)(2) and (3).

       F.     Certification of the North Carolina state law claims as a class action pursuant to Fed. R. Civ. Proc. 23(b)(2) and (3).

       G.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA, New York law, and Ohio law.

       H.     An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein.

       I.     An award of damages, according to proof, including liquidated damages, to be paid by Defendants.

39

J.     Penalties available under applicable law.

K.     Costs of action incurred herein, including expert fees.

L.     Attorneys' fees, including fees pursuant to 29 U.S.C. § 216,

and other applicable state law.

M.     Pre-Judgment and Post-Judgment interest, as provided by law.

N.     Such other and further legal and equitable relief as this Court

deems necessary, just, and proper.

Respectfully submitted,

Dated: New York, New York
       May 12, 2006

By: _____
      Charles Joseph (CJ 9442)

Joseph & Herzfeld LLP
757 Third Avenue, 25th Floor
New York, NY 10017
Tel. (212) 688-5640
Fax (212) 688-2548

Kingsley & Kingsley, APC
Eric B. Kingsley
16133 Ventura BL., SUITE 1200
Encino, CA 91436
Phone (818) 990-8300
Fax (818) 990-2903
*Admitted Pro Hac Vice*

Spiro Moss Barness Harrison & Barge LLP
Ira Spiro
Gregory N. Karasik
11377 W. Olympic Boulevard, 5th Floor
Los Angeles California 90064
Phone: (310) 235-2468
Fax: (310) 235-2456
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs and the proposed Plaintiff
Class*

40

## DEMAND FOR JURY TRIAL

A.    Plaintiffs hereby demand a jury trial on all causes of action and

claims with respect to which they have a right to jury trial.

41

# PART 2 of 2

# EXHIBITS B-D

# EXHIBIT B

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)
*Pro Hac Vice Motion Forthcoming*
Michael K. Burch (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788

**Outten & Golden LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

FILED
U.S. DISTRICT COURT
2007 NOV 15 PM 1:56
S.D. OF N.Y.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JUDGE KAPLAN

07 CV 10356

KEVIN HUGHES, on behalf of himself
and all others similarly situated,

Plaintiffs,

-against-

GETRONICS WANG LLC,

Defendant.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Kevin Hughes ("Hughes" or "Plaintiff"), individually and on behalf of all others

similarly situated as a class representative, by his attorneys Bruckner Burch PLLC and Outten &

Golden LLP, allege, upon personal knowledge as to himself and upon information and belief as

to other matters, as follows:

1

## PRELIMINARY STATEMENT

1.      Getronics Wang LLC, ("Getronics" or "Defendant") is an Information and Communication Technology (ICT) company which designs, integrates and manages ICT systems for companies across New York and around the world.  Upon information and belief, Defendant employs thousands of workers in New York alone.

2.      Upon information and belief, it has been Getronics's policy to deprive its "desktop support workers," including Hughes, of wages to which they are entitled under the law. Getronics' unlawful conduct includes, but is not limited to, requiring its workers, including Plaintiffs, to work extensive overtime without paying them at overtime wages as required by law.

3.      Upon information and belief, in an attempt to avoid paying some of its workers their earned wages, Getronics has given some of its desktop support workers titles to create the impression that these stock clerks are exempt from overtime pay requirements under state and federal law.  Hughes was a victim of this unlawful conduct.

4.      Getronics scheduled Hughes to work more than forty hours per week.

5.      Throughout his employment at Getronics, Hughes worked overtime but was not paid proper overtime wages of time and a half for the hours that he worked in excess of 40 hours per week.

6.      By the conduct described in this Complaint, Defendant willfully violated the Fair Labor Standards Act and the New York Labor Law by failing to pay its employees, including Plaintiffs, proper overtime wages as required by law.

2

## NATURE OF THE ACTION

7.    This action is brought to recover unpaid wages owed to Hughes and all other similarly situated current and former employees of Defendant as well as injunctive and declaratory relief against Defendant's unlawful actions, and attorneys' fees and costs.

8.    Plaintiff brings this action on behalf of himself and all similarly situated current and former employees of the Defendant who elect to opt into this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and specifically the FLSA's collective action provision (29 U.S.C. § 216(b)), to remedy violations of the wage-and-hour provisions of the FLSA by Defendant, that have deprived Plaintiff and others similarly situated of their lawful overtime wages.

9.    Plaintiff also brings this action on behalf of himself and a class of similarly situated current and former employees of Defendant, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for unpaid overtime wages, pursuant to the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 ("New York Labor Law").

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(a).

3

## THE PARTIES

### The Plaintiff

13.    Hughes is an adult individual who is a resident of Rockaway Beach, New York.

14.    Hughes was an employee of the Defendant in New York State from approximately January 2006 through approximately June 2007.

### The Defendant

15.    Upon information and belief, Getronics is a domestic corporation, incorporated in Delaware, doing business within the City and County of New York.

16.    Getronics maintains corporate headquarters within the City and County of New York at 440 Ninth Avenue, New York, NY 10001.

17.    Upon information and belief, Getronics maintains control, oversight, and direction over the operation of its facilities, including their employment practices.

## CLASS AND COLLECTIVE ALLEGATIONS

18.    Hughes brings FLSA claims for both himself and on behalf and all similarly situated persons who work or have worked for Getronics as Desktop Support Specialists within the past three years who elect to opt in to this action (the "FLSA Collective").

19.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs. Upon information and belief, there are many similarly situated current and former employees of Defendant who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b)

4

20.     Plaintiff also brings New York Labor Law claims on behalf of himself and a class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of "all persons who work or have worked for Getronics as Desktop Support Specialists between November 13, 2001 and the date of judgment in this action (the "Rule 23 Class").

21.     The persons in the Rule 23 Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of the Defendant.

22.     Defendant has acted or has refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

23.     There are questions of law and fact common to the Rule 23 Class that predominate over any questions solely affecting individual members of the Rule 23 Class, including but not limited to:

(a)     whether Defendant has failed to keep true and accurate time records for all hours worked by Plaintiffs and the Rule 23 Class;

(b)     what proof of hours worked is sufficient where employer fails in its duty to maintain true and accurate time records;

(c)     whether Defendant has failed and/or refused to pay Plaintiffs and the Rule 23 Class overtime pay for hours worked in excess of 40 hours per work week within the meaning the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

5

(d)    the nature and extent of Rule 23 Class-wide injury and the appropriate measure of damages for the class;

(e)    whether Defendant has a policy of misclassifying workers as exempt from coverage of the overtime provisions of the New York Labor Law; and

(f)    whether Defendant's policy of misclassifying workers was done willfully or with reckless disregard of the statute.

24.    Hughes' claims are typical of the claims of the Rule 23 Class he seeks to represent. Plaintiffs and the Rule 23 Class work or have worked for Defendant in its retail drugstores and have not been paid overtime wages for the hours that they have worked in excess of 40 hours per week. Defendant has acted and refused to act on grounds generally applicable to the Rule 23 Class, thereby making declaratory relief with respect to the Rule 23 Class appropriate.

25.    Plaintiff will fairly and adequately represent and protect the interests of the Rule 23 Class.

26.    Plaintiff has retained counsel competent and experienced in complex class actions and in labor and employment litigation.

27.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of a wage and hour litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class Members are not *de minimis*, such damages are small compared to the

6

expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant' practices.

## CLASSWIDE FACTUAL ALLEGATIONS

28.    All of the work that Plaintiff and the members of the FLSA Collective and the Rule 23 Class (collectively "Class Members") have performed has been assigned by the Defendant and/or the Defendant has been aware of all of the work that Plaintiff and the Class Members have performed.

29.    Upon information and belief, it has been Defendant's policy and pattern or practice to classify desktop support specialists as exempt from coverage of the overtime provisions of the FLSA and New York Labor Law, without reference to the types of duties these workers performed.

30.    Upon information and belief, Defendant has not trained Plaintiff and the Class Members, or their supervisors, on the differences between exempt and non-exempt work.

31.    As part of its regular business practice, the Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and the New York Labor Law. This policy and pattern or practice includes but is not limited to:

(a)    willfully failing to record all of the time that its employees, including Plaintiff and the Class Members, have worked for the benefit of the Defendant;

(b)    willfully failing to keep payroll records as required by the FLSA and New York Labor Law;

(c)    willfully misclassifying Hughes and the Class Members as exempt from the requirements of the FLSA; and

7

(d)     willfully failing to pay its employees, including Plaintiffs and the Class Members, overtime wages for hours that they worked in excess of 40 hours per week.

32.     Upon information and belief, Defendant's unlawful conduct described in this Complaint is pursuant to a corporate policy or practice of minimizing labor costs by violating the FLSA and the New York Labor Law.

33.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

## PLAINTIFFS' FACTUAL ALLEGATIONS

### Background, Duties, and Compensation

**Plaintiff Hughes:**

34.     Hughes was hired by Getronics in approximately January 2006. When he was hired, Hughes was told by Getronics that he be considered exempt.

35.     Hughes worked for Getronics from approximately January 2006 through approximately June 2007.

36.     At all times relevant to this action, Hughes worked in one of Getronics's office. Hughes was scheduled and/or expected to work more than 40 hours a week.

37.     Hughes's primary duties included, but were not limited to, building, rebuilding and troubleshooting desktop and laptop computers.

38.     Hughes did not hire, fire, schedule, or discipline the other employees who worked along side him.

39.     His hourly rate of pay was not substantially greater than the coworkers with whom he worked.

40.     Hughes did not exercise a meaningful degree of independent discretion with respect to the exercise of his duties.

8

41.    Hughes's primary duties were primarily mechanical in nature.

**Getronics Failed to Keep Accurate Records**

42.    Upon information and belief, consistent with its policy and pattern or practice, Getronics did not keep accurate records as required by the FLSA and New York Labor Law.

**Plaintiff Was Not Paid Proper Overtime Wages**

43.    Consistent with Getronics's policy and pattern or practice, Plaintiff regularly worked in excess of 40 hours per week without being paid overtime wages.

**Getronics' Violation of the Overtime Laws Was Willful**

44.    Upon information and belief, Getronics was or should have been aware that state and federal law required it to pay employees performing non-exempt duties an overtime premium for hours worked in excess of forty per week.  Getronics has on at least one previous occasion been investigated by the United States Department of Labor and/or sued for violations of the FLSA, and was therefore aware and should have been aware of the existence of the FLSA and its overtime requirements.

45.    Upon information and belief, Getronics was aware, or should have been, that Plaintiff, *inter alia*: (a) primarily or solely performed non-exempt duties; (b) performed little or no supervisory functions; (c) did not have the right to hire or fire employees; (d) performed production, as opposed to administrative, work; and (e) wielded little or no discretion or judgment.

46.    Upon information and belief, Getronics was or should have been aware that Plaintiff and the putative Class were not "executives" exempt from overtime protections.

47.    Upon information and belief, Getronics was aware, or should have been, that Plaintiff and the putative Class were not "administrators" exempt from overtime protections.

9

48.    Getronics's failure to pay Plaintiff overtime wages for hours worked in excess of 40 hours per week was willful.

### FIRST CAUSE OF ACTION
#### (Fair Labor Standards Act)
#### (Brought on Behalf of Plaintiff and all FLSA Class Members)

49.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

50.    Getronics has engaged in a widespread pattern and practice of violating the FLSA, as detailed in this Complaint.

51.    At all times relevant, Plaintiff was engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

52.    The overtime wage provision set forth in § 207 of the FLSA applies to Getronics

53.    Getronics is an employer engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

54.    At all times relevant, Plaintiff was an employee within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

55.    Getronics has failed to pay Plaintiff and the FLSA Class the overtime wages to which they were entitled under the FLSA.

56.    Getronics' violations of the FLSA, as described in this Complaint have been willful and intentional. Getronics has not made a good faith effort to comply with the FLSA with respect to its compensation of Plaintiff and other similarly situated current and former employees.

57.    Because Getronics' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

10

58.    As a result of Getronics' willful violations of the FLSA, Plaintiff and all others similarly situated have suffered damages by being denied overtime wages.

59.    As a result of the unlawful acts of Getronics, Plaintiff and the FLSA Class have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### (New York Labor Law: Unpaid Overtime Wages)
### (Brought on Behalf of Plaintiff and all Rule 23 Class Members)

60.    Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

61.    At times relevant to this action, Plaintiff was an employee and Getronics has been an employer within the meaning of the New York Labor Law.

62.    The overtime wage provisions of Article 19 of the New York Labor Law and its supporting regulations apply to Getronics.

63.    Getronics failed to pay Plaintiff and the Rule 23 Class the overtime wages to which they were entitled under the New York Labor Law.

64.    By Getronics' failure to pay Plaintiffs and the Rule 23 Class Members overtime wages for hours worked in excess of 40 hours per week, it has willfully violated the New York Labor Law Article 19, §§ 650 et seq., and the supporting New York State Department of Labor Regulations, including but not limited to the regulations in 12 N.Y.C.R.R. Part 142.

65.    Due to Getronics' violations of the New York Labor Law, Plaintiff and the Rule 23 Class Members are entitled to recover from Getronics their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

11

(Plaintiff does not seek liquidated damages under the New York Labor Law for himself or on behalf of the Rule 23 Class Members)

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all other similarly situated persons, prays for the following relief:

A.    That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Getronics as desktop support specialists. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages.

B.    Unpaid wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b) and the supporting United States Department of Labor regulations;

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

E.    Designation of Plaintiff as representative of the Rule 23 Class, and counsel of record as Class Counsel;

F.    Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under New York Labor Law, Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations;

12

G.      Unpaid overtime pay pursuant to N.Y. Lab. Law Article 19, §§ 650 <u>et seq.</u>,

and the supporting New York State Department of Labor regulations (Plaintiff does not seek

liquidated damages under the New York Labor Law for himself or on behalf of the Rule 23

class);

H.      Pre-judgment interest;

I.      An injunction requiring Defendant to pay all statutorily-required wages

pursuant to the New York Labor Law;

J.      Attorneys' fees and costs of the action; and

K.      Such other relief as this Court shall deem just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by the Complaint.

Dated:      November 15, 2007.

Respectfully submitted,

**OUTTEN & GOLDEN LLP**

By: _____
        Justin M. Swartz (JS 7989)

**Outten & Golden LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

**AND**

**BRUCKNER BURCH PLLC**
Richard J. (Rex) Burch (TX 24001807)

13

*Pro Hac Vice Motion Forthcoming*
Michael K. Burke (TX 24012359)
*Pro Hac Vice Motion Forthcoming*
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788

**Attorneys for Plaintiff and the Putative Classes**

14

# EXHIBIT C

1 of 1 DOCUMENT

**AMY BURKHART-DEAL, individually and on behalf of all others similarly situated, Plaintiffs, vs. CITIFINANCIAL, INC., and DOES 1 through 10, inclusive, Defendants.**

No. 7-1747

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

*2008 U.S. Dist. LEXIS 44469*

**June 5, 2008, Decided
June 5, 2008, Filed**

**COUNSEL:** [*1] For AMY BURKHART-DEAL, individually and on behalf of all others similarly situated, Plaintiff: Alfred G. Yates, Jr., LEAD ATTORNEY, Law Offices of Alfred G. Yates, Jr., Pittsburgh, PA.; Gerald D. Wells, III, Robert Biela, LEAD ATTORNEYS, Schiffrin Barroway Topaz & Kessler, Road Radnor, PA.

For CITIFINANCIAL, INC, Defendant: Christopher K. Ramsey, Stephanie R. Reiss, LEAD ATTORNEYS, Morgan, Lewis & Bockius, Pittsburgh, PA.; Samuel S. Shaulson, LEAD ATTORNEY, Morgan, Lewis & Bockius, New York, NY.

**JUDGES:** Donetta W. Ambrose, Chief Judge.

**OPINION BY:** Donetta W. Ambrose

**OPINION**

**OPINION AND ORDER**

**SYNOPSIS**

In this civil action, Plaintiff, individually and on behalf of others similarly situated, alleges that Defendant Citifinancial, Inc., [1] her employer, violated the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201, et seq.,* and Pennsylvania labor laws, *43 P.S. §§ 333.13, 333.104(c), 34 Pa. Code § 231.41* . Therefore, she brings a putative collective opt-in action pursuant to the FLSA, *29 U.S.C. §§ 207, 216,* as well as a putative opt-out class for violations of state law, pursuant to *Fed. R. Civ. P. 23.*

More specifically, Plaintiff claims that Defendant violated both federal and state law by failing to pay minimum wage for [*2] all hours worked, and failing to pay appropriate overtime.

> 1    Plaintiff also seeks redress against several unidentified Doe Defendants. For the sake of clarity, I refer to the Defendants collectively, in the singular.

Before the Court is Defendant's Motion to Dismiss Counts three and four of the Complaint, which assert state law class claims. For the following reasons, Defendant's Motion will be granted in part.

**OPINION**

**DISCUSSION**

**I. APPLICABLE STANDARDS**

In deciding a motion to dismiss, all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff. *Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988).* In ruling on a motion for failure to state a claim, I must look to "whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide the defendants with adequate notice to frame an answer." *Id. at 666.* A complaint "need not plead law or match facts to every element of a legal theory." *Weston v. Pennsylvania, 251 F. 3d 420, 429 (3d Cir. 2001).* Stating a claim requires a complaint with

enough factual matter, taken as true, to suggest the required element; this "simply [*3] calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" that element. *Bell Atl. Corp. v. Twombly, U.S. , 127 S. Ct. 1955, 1965-66, 167 L. Ed. 2d 929 (2007)*. The movant bears the burden of demonstrating entitlement to relief. *Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005)*.

## II. DEFENDANTS' MOTION

I first address Defendant's central argument: that an opt-out class action under *Rule 23* conflicts, impermissibly, with a collective opt-in action under *FLSA Section 216.* [2] According to this argument, Congress limited the scope of certain collective actions under the FLSA by requiring class members to affirmatively opt in to such actions. *29 U.S.C. § 216(b)*. In contrast, state law actions brought pursuant to the pertinent portions of *Rule 23* require class members to opt out of the action. *Barabin v. Aramark Corp., No. 02-8057, 2003 U.S. App. LEXIS 3532, 2003 WL 355417, at *1 (3d Cir. Jan. 24, 2003)*. *Rule 23* class actions are not permitted under the FLSA. *See 29 U.S.C. § 216(b)*. Because of this clash, Defendant argues, allowing Plaintiff's state law claims to proceed under *Rule 23* as an [*4] opt-out action undermines the FLSA's opt-in requirements.

> 2    The "incompatibility" argument must be distinguished from a challenge to the exercise of supplemental jurisdiction over the state law claims. *De Asencio v. Tyson Foods, Inc., 342 F.3d 301 (3d Cir. 2003)*, examined the latter. Defendants here expressly concede that supplemental jurisdiction is not at issue, as Plaintiff has asserted jurisdiction premised on the Class Action Fairness Act ("CAFA"), *28 U.S.C. § 1332(d)*. Therefore, I focus solely on the "incompatibility" argument.

The Court of Appeals for the Third Circuit has not yet ruled on the question of whether parallel opt-in and opt-out actions of the type at issue here, in which each has an independent jurisdictional basis, may proceed in a single lawsuit. District courts within this Circuit have addressed the issue, however, with varying results. Courts barring dual actions have, informed by preemption principles, engaged in thorough analyses of the readily apparent conflict between the FLSA opt-in provision and the corollary opt-out aspect of *Rule 23.* [3]

> 3    Plaintiff cites to a 2003 law review article referring to this as a minority position. Since the time of that article, [*5] however, the position disallowing parallel claims appears to have gained some traction within this Circuit.

I take particular note of the relatively recent decision in *Ellis v. Edward D. Jones & Co., L.P., 527 F. Supp. 2d 439 (W.D. Pa. 2007)*. [4] As my colleague noted in that case, the opt-in language of the FLSA was designed to "prohibit what precisely is advanced under *[Fed. R. Civ. P.] 23 ...." Id. at 447* (quoting *Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1249 (11th Cir. 2003)*); *see also Ramsey v. Ryan Beck & Co., Inc., 2007 U.S. Dist. LEXIS 56129, 5-7 (E.D. Pa. July 31, 2007)*; *cf. Woodard v. FedEx Freight East, Inc., No. CV-06-1968, 2008 U.S. Dist. LEXIS 11919 (M.D. Pa. 2008)*. This conflict cannot be brushed aside as insignificant. Our Court of Appeals has stated that "mandating an opt in [sic] class or an opt-out class is a crucial policy decision," and that "the distinction between opt-in and opt-out classes is crucial." *De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 310, 311 (3d Cir. Pa. 2003)*. The distinction resonates with particular force in this case, in which the FLSA and state law claims are based on identical factual foundations. [5] Because of the identity [*6] of claims, to permit a mirror-image *Rule 23* class to proceed alongside an FLSA collective action would not only nullify Congress' mandate, but also disregard the crucial nature of its choice.

> 4    In light of Judge Gibson's thoughtful and comprehensive decision, as well as my own consideration of pertinent authority, I am reluctant to create a district split on this already unsettled issue. Plaintiff attempts to distinguish Ellis on grounds that the case arose in the context of a settlement. Plaintiff fails to explain, however, how the case posture was material to Judge Gibson's decision to dismiss plaintiffs' parallel state claims, rather than permit them to pursue FLSA opt-in and state law opt-out remedies at the same time.
> 5    In *Lehman v. Legg Mason, Inc., 532 F. Supp. 2d 726 (M.D. Pa. 2006)*, as cited by Plaintiff, the federal claims were based on failure to pay overtime and the minimum wage. Although asserted state law claims rested on the same allegations, plaintiffs also asserted state law claims that did not overlap the FLSA claims - -

2008 U.S. Dist. LEXIS 44469, *6

for example, state law claims for failure to keep accurate records of hours and wages earned, and failure to provide statements of the same to employees. [*7] In such a case, a *Rule 23* action would not necessarily nullify the FLSA opt-in requirement. Our Court of Appeals has noted that opt-in and opt-out actions - such as a claim for employment discrimination, alongside one for overtime pay - - might proceed in tandem. *See De Asencio, 342 F.3d at 310, n.4.* Notably, this example does not refer to overlapping claims such as those at issue here.

The fairly brief analyses offered by the cited cases within this Circuit are insufficient to dissuade me from following *Ellis* and other more thorough dissections of this matter. Several of the cases permitting dual actions to proceed did not rely on or address the compatibility of the FLSA and *Rule 23. See Lenahan v. Sears, Roebuck, No. 02-0045, 2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006), Farhy v. Janney Montgomery Scott, LLC, No. 06-3202, No. 06-3969 2007 U.S. Dist. LEXIS 39112 (E.D. Pa. Apr. 26, 2007); Trotter v. Perdue Farms, No. 99-893-RRM, 2001 U.S. Dist. LEXIS 13212 (D. Del. August 16, 2001); Chemi v. Champion Mortg., No. 5-1238, 2006 WL 454363 (D.N.J. Feb. 26, 2006); Dinardo v. Stevens Gutter Cleaning, No. 07-5529, 2008 U.S. Dist. LEXIS 14946 (D.N.J. Feb. 28, 2008).* Others found dismissal [*8] premature rather than inappropriate, for reasons left largely unexplained. *E.g., Jackson v. Alpharma, No. 07-3250, 2008 U.S. Dist. LEXIS 12787 (D.N.J. Feb. 21, 2008).* [6] These cases are of little assistance at present, and offer no grounds for choosing to follow their reasoning over that of *Ellis.*

> [6]    In *Alpharma,* the Court stated as follows: "[A]ssuming that CAFA jurisdiction exists, it is unclear what would be accomplished by dismissal of the state claims, because Plaintiff could simply file a separate lawsuit in this district solely on the basis of the state claims. Moreover, at the class certification stage of the litigation, the parties will have a clearer picture of the nature and extent of the claims, and the Court will be better equipped to address the issues relating to the opt-in and opt-out procedures." *Alpharma, 2008 U.S. Dist. LEXIS 12787, at *14.* Neither the *Alpharma* court nor the present parties, however, identified any information that might be gleaned at the certification stage, which would affect the compatibility of the opt-in and opt-out procedures. In addition, the mere fact that claims might properly be asserted in separate actions does not render them appropriate [*9] in a single action. In *De Asencio,* for example, in which the Court found supplemental jurisdiction inappropriate, Plaintiffs would have been able to file a separate lawsuit - albeit not in the same district - - solely on the basis of the state law claims. Despite that fact, which the Court did not ignore, it held that the state and federal claims should not proceed together.

I note, too, that *Alpharma* relied, in small part, on the defendant's failure to supply authority dismissing a CAFA class state law claim based on inherent incompatibility. *Ellis,* however, involved a CAFA class state law claim.

## CONCLUSION

In sum, the inherent incompatibility of Plaintiff's FLSA claims and state law class claims, in this particular case, require dismissal of the state law class claims. [7] Absent clear guidance from our Court of Appeals, and viewing this problem through the lens of *De Asencio,* I am persuaded by the thorough analysis of my colleague in *Ellis* and will adopt a similar approach.

> [7]    The dismissal will be in part and without prejudice, as I do not now rule upon the ability of Ms. Burkhart-Deal or any opt-in plaintiff to bring or maintain individual claims for violation of state law either in [*10] this Court or in another forum. Individual state law claims are not addressed by either Defendant's Motion to Dismiss or today's Opinion and Order.

## ORDER

AND NOW, this 5th day of June, 2008, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Dismiss [Docket No. 21] is GRANTED in part, and Counts three and four of Plaintiff's Complaint are DISMISSED, to the extent that they assert class claims, without prejudice.

BY THE COURT:

/s/ Donetta W. Ambrose

Donetta W. Ambrose

2008 U.S. Dist. LEXIS 44469, *10

Chief Judge, U.S. District Court

# EXHIBIT D

LEXSEE 2000 U.S. DIST. LEXIS 22804

**JOHANNA GARDNER, Individually and on behalf of the similarly situated
employees and former employees, Plaintiff vs. ASSOCIATES COMMERCIAL
CORPORATION AND ASSOCIATES CORPORATION OF NORTH AMERICA
(A Texas Corporation), Defendants**

**CIVIL ACTION NO. H-00-3889**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
TEXAS, HOUSTON DIVISION**

*2000 U.S. Dist. LEXIS 22804*

**December 19, 2000, Decided
December 19, 2000, Filed; December 20, 2000, Entered**

**COUNSEL:** [*1] For Johanna Gardner, individually
and on behalf of other similarly situated employees and
former employees, Enrique nmi Vasquez, Andrew E
Zelman, Brad L Kerr, Rosemarie Bosca, Janelle
Carvalho, Kim A Young, Tracy Turnipseed, Scott T
Johnson, Lelio Montagnoli, Plaintiffs: G Scott Fiddler,
Attorney at Law, Houston, TX.

Enrique nmi Vasquez, Plaintiff, Pro se, Vancouver, WA.

Andrew E Zelman, Plaintiff, Pro se, Framingham, MA.

Brad L Kerr, Plaintiff, Pro se, Midvale, Ut.

Rosemarie Bosca, Plaintiff, Pro se, Elizabeth, CO.

Janelle Carvalho, Plaintiff, Pro se, San Lorenzo, CA.

Kim A Young, Plaintiff, Pro se, Peoria Heights, IL.

Tracy Turnipseed, Plaintiff, Pro se, Stone Mountain, GA.

Scott T Johnson, Plaintiff, Pro se, Irving, TX.

Lelio Montagnoli, Plaintiff, Pro se, Portland, OR.

For Associates Commercial Corporation, Associates
Corporation of North America, (A Texas Corporation),
Defendants: Ronald E Manthey, Baker & McKenzie
LLP, Dallas, TX.

**JUDGES:** MELINDA HARMON, UNITED STATES
DISTRICT JUDGE.

**OPINION BY:** MELINDA HARMON

**OPINION**

*ORDER*

Pending before the Court in the above referenced
proposed collective action under *section 216(b)* [1] of the
Fair [*2] Labor Standards Act ("FSLA"), *29 U.S.C. §§
201 et seq.*, seeking recovery of overtime pay for
nonexempt commercial loan officers employed by
Defendants Associates Commercial Corporation ("ACC")
and Associates Corporation of North America
("ACONA") from November 1, 1997 to the present, is
Plaintiff Johanna Gardner's opposed expedited motion for
notice to potential plaintiffs and limited expedited
discovery (instrument # 9).

1 In contrast to a class action under *Federal Rule
of Civil Procedure 23(c), section 216(b) of FLSA*
provides similarly situated employees with an
opt-in, rather than an opt-out procedure. *H&R
Block, Ltd. v. Housden, 186 F.R.D. 399, 399 (E.D.
Tex. 1999)*. Most courts nevertheless employ class
action terminology in dealing with such cases.
*Mooney v. ARAMCO Services Co., 54 F.3d 1207,
1212 (5th Cir. 1995)*.

*Section 216(b)*, which is also incorporated
into the Age Discrimination in Employment Act
of 1967, *29 U.S.C. § 626(b)*, provides in relevant

part that an individual may maintain an action "against any employer (including a public agency) in Federal or State court of competent jurisdiction... for and in behalf of himself... and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *29 U.S.C. § 216(b)*.

[*3] Plaintiff claims that she needs expedited discovery of names and addresses of individuals who worked as commercial loan officers for ACC nationwide during the applicable period so they can decide whether to "opt in" to this suit, because under FSLA, the applicable statute of limitations is two years, or three if the violation is shown to be "willful, and there is no "relating back" or tolling of limitations for opting-in plaintiffs. Thus each passing day diminishes the amount of overtime wages potential plaintiffs can recover, while the claims of others may be barred completely. She relies on *Hoffman La Roche, Inc. v. Sperling, 493 U.S. 165, 169-70, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989)* (affirming district court order requiring employer company to provide names and addresses of discharged employees to facilitate discovery and notice process and authorizing a notice and consent document, with a text and form authorized by the district court, where the district court took no position on the merits of the case, to be sent to those who had not joined the lawsuit to facilitate notice to proper persons and expedite disposition of the suit). Plaintiff states that she expects to provide notice to between [*4] thirty and forty people because ACC had approximately thirty branch offices throughout the country at the time and each had at least one commercial loan officer. She suggests that identification of these individuals (including name, last known address and telephone number, social security number, and date of birth) should not be difficult and that "such plaintiffs will naturally be 'similarly situated' for purposes of *Section 216(b)*." She attaches a list of twenty-seven such individuals whom she has already identified. Ex. B. She also provides a proposed notice, neutral as to the merits of the case, allowing potential plaintiffs the right to choose their own lawyers, and "an almost exact duplication of the notice approved by the district court in *[Johnson v.] American Airlines, Inc.*" *531 F. Supp. 957, 966 (N.D. Tex. 1982)*. Specifically she requests Defendants to provide the discovery listed in Exhibit C in five days from entry of a court order

granting the motion and authorization for issuance of the proposed notice within ten days to those persons identified in Exhibit B, and subsequently to those identified by Defendants in response to the discovery requests. She further [*5] asks that the potential plaintiffs be given forty-five days from the date of the mailing of the notices to opt in to the collective action.

Defendants object to expedited relief because under Local Rule 6D they are entitled to twenty days to respond before the motions is submitted to the Court. [2] They further complain that Plaintiff has failed to meet standards for class notice and her explanation of time pressures is inadequate because her suit does not keep the potential plaintiffs from filing their own wage-and-hour suits at any time. Reduced time also allegedly prejudices Defendants' opportunity to investigate for the full twenty days the factual claims and legal principles raised by Plaintiff's motion. Moreover, Defendants complain of Plaintiff's conclusory statement that she believes other employees holding the same job "will naturally be 'similarly situated' for purposes of *Section 216(b)*." She presents no evidence, but only "sheer speculation." While conceding that a district court has the discretion to facilitate notice to possible opt-in plaintiffs as long as it remains neutral on the merits and avoids any appearance of judicial endorsement of the Plaintiff's suit, Defendants [*6] argue that the court must first "satisfy itself that there are other employees of the [employer] who desire to opt-in and who are 'similarly situated'" in their job requirements and pay provisions. *Dybach v. Florida Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991)*. Defendants maintain that Plaintiff's request would merely burden them with the expense of a frivolous fishing expedition.

> 2    Since Defendants have responded within six days of the filing of the motion, this objection lacks merit. If a response is filed before the submission date, the Court may rule on it immediately.

The Fifth Circuit has approved two different procedures for certifying "similarly situated" individuals for a class. *Mooney, 54 F.3d at 1213*. Under the first, [3] there is a two-step analysis. At the notice stage, the district court decides, usually based on the pleadings and any affidavits that have been submitted, whether notice should be given to potential class plaintiffs. *Id. at 1213-14*. [*7] At this notice stage, since there is little

evidence, the district court may order notice based on nothing more than substantial allegations that the putative class is composed of victims of a single discriminatory decision, policy or plan. *Id. at 1214 n.8, citing Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988), aff'd in part and appeal dismissed in part, 862 F.2d 439 (3d Cir. 1988), aff'd and remanded, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).* If the court decides to "conditionally certify" the class, putative plaintiffs are given notice and an opportunity to opt in, and the suit then proceeds as a representative action throughout discovery. *Id. at 1214.* As the second step, the defendant usually files a motion for decertification after discovery, when the case is nearly ready for trial and when far more information is available to the court for its decision and factual determination of whether the opt-in members are "similarly situated." *Id.* If they are not, the court decertifies the class and the opt-in plaintiffs are dismissed without prejudice. *Id.* If they are, the collective action proceeds to trial. [*8] *Id.*

> 3    Arising out of *Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987), mandamus granted in par, appeal dismissed sub nom. Lusardi v. Lechner, 855 F.2d 1062 (3rd Cir. 1988), vacated in part, modified in part, and remanded sub nom. Lusardi v. Xerox Corp., 122 F.R.D. 463 (D.N.J. 1988), aff'd in part, appeal dismissed, 975 F.2d 964 (3d Cir. 1992).*

The alternative procedure approved by the Fifth Circuit is similar to the "spurious" class action procedure that was eliminated from *Fed.R. Civ. P. 23* and typified by *Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990). Id.* Although under § 216(b) individuals who do not opt in are not bound by the judgment, the court in such representative actions otherwise applies *Rule 23*'s requirements of numerosity, commonality,

typicality, and adequacy of representation to determine if it should certify the class. *Id.*

In weighing [*9] the instant motion, the Court follows the *Lusardi* approach here. The small number of possible plaintiffs, forty or less, whose identity Plaintiff seeks and the fact that Plaintiff has already obtained the names of twenty-seven of them, undermine Defendants' argument that they would be overburdened or prejudiced by the minimal, clearly defined discovery request. By limiting the suit to those who performed the duties of a commercial loan officer at the approximately thirty branch offices since November 1, 1997, Plaintiff demonstrates that she is not seeking a fishing expedition and, without additional discovery from these people, reasonably will reach employees who may be similarly situated to her. Moreover, until those choosing to opt in have done so, a more exact determination of "similarly situated" will remain difficult. Finally, granting the motion would contribute to the efficient development of this litigation and avoid a multiplicity of suits if the putative plaintiffs are similarly situated.

Accordingly, the Court

ORDERS that Plaintiff's expedited motion for notice and for limited expedited discovery is GRANTED. The Court will authorize the discovery and the issuance of [*10] notice by separate order.

**SIGNED** at Houston, Texas, this 19th day of December, 2000.

/s/

MELINDA HARMON

UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, the **AFFIRMATION OF DAVID S. GREENHAUS IN SUPPORT OF DEFENDANTS' MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR DETERMINATION THAT THIS ACTION IS NOT APPROPRIATE FOR CERTIFICATION AS A CLASS OR COLLECTIVE ACTION** and accompanying Exhibits were filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

JUSTIN M. SWARTZ, ESQ.
OUTTEN & GOLDEN
*ATTORNEYS FOR PLAINTIFFS*
3 Park Avenue, 29th Floor
New York, New York 10016

RICHARD J. (REX) BURCH, ESQ.,
BRUCKNER BURCH PLLC
*ATTORNEYS FOR PLAINTIFFS*
1415 Louisiana, Suite 2125
Houston, Texas 77002

DAVID S. GREENHAUS (DG-0466)

\\Nyfs01\nylib\AbeysekeraS\Getronics Wang\Pleadings\DSG Declaration in Supp of Reply.doc

3