**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

**BRUCKNER BURCH PLLC**
Richard J. Burch (admitted *pro hac vice*)
Michael K. Burke (admitted *pro hac vice*)
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KEVIN HUGHES, DIANE GOSIER, and DAVID MANNING, on behalf of themselves and all others similarly situated,**<br><br>　　　　　　　　　　　　**Plaintiffs,**<br>　　　-against-<br><br>**GETRONICS WANG LLC; GETRONICS USA, INC.; and GETRONICS FLEXIBLE SOLUTIONS, LLC;**<br><br>　　　　　　　　　　　　**Defendants.** | **07-CV-10356 (LAK) (THK)** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE
CLASS ACTION SETTLEMENT, AND APPROVAL OF THE FLSA SETTLEMENT**

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

    I.    Procedural History ................................................................................... 2

    II.   Discovery ................................................................................................. 3

    III.  Settlement Negotiations .......................................................................... 4

SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION................... 4

    I.    The Settlement Fund ............................................................................... 4

    II.   Releases................................................................................................... 5

    III.  Eligible Employees ................................................................................. 5

    IV.  Allocation Formula ................................................................................. 6

    V.   Attorneys' Fees, Litigation Costs, and Service Awards ........................ 6

    VI.  Settlement Claims Administration .......................................................... 6

ARGUMENT ....................................................................................................................... 7

    I.    The Settlement Class Meets the Legal Standard for Class Certification............. 7

        A.   Numerosity ................................................................................. 9

        B.   Commonality .............................................................................. 9

        C.   Typicality.................................................................................. 10

        D.   Adequacy of the Named Plaintiffs ........................................... 11

        E.   Certification is Proper Under Rule 23(b)(3)............................. 12

            1.   Common Questions Predominate ................................. 12

            2.   A Class Action is a Superior Mechanism..................... 14

II. The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved in
All Respects ............................................................................................................... 15

    A. The Proposed Settlement is Procedurally Fair ............................................................ 16

    B. The Proposed Settlement is Substantively Fair .......................................................... 17

        1. Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell*
           Factor 1) ............................................................................................................... 18

        2. The Reaction of the Class Has Been Positive .................................................... 19

        3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the
           Case Responsibly (*Grinnell* Factor 3)................................................................ 20

        4. Plaintiffs Would Face Real Risks if the Case Proceeded  (*Grinnell* Factors 4
           and 5) .................................................................................................................... 20

        5. Establishing a Class and Maintaining it Through Trial Would Not Be Simple
           (*Grinnell* Factor 6) ............................................................................................ 22

        6. Defendants' Ability to Withstand a Greater Judgment Is Not Assured
           (*Grinnell* Factor 7) ............................................................................................ 22

        7. The Settlement Fund is Substantial in Light of the Possible Recovery and
           the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ........................... 23

III. Approval of the FLSA Settlement is Appropriate under Federal Law ............................... 24

CONCLUSION ............................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)...........................................................................8, 12, 14

*In re Austrian & German Bank Holocaust Litig.,*
80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000).........................18, 20, 21, 22, 23

*In re BankAmerica Corp. Securities Litig.,*
210 F.R.D. 694 (E.D. Mo. 2002) ............................................................16

*Brooks v. Am. Export Indus., Inc.,*
No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313 (S.D.N.Y. Feb. 17, 1977) .........................23

*Cagan v. Anchor Sav. Bank FSB,*
No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 17, 1990) ................23

*In re Cendant Corp. Litig.,*
264 F.3d 201 (3d Cir. 2001).....................................................................20

*City of Detroit v. Grinnell Corp.,*
495 F.2d 448 (2d Cir. 1974)............................................................. passim

*Consol. Rail Corp. v. Town of Hyde Park,*
47 F.3d 473 (2d Cir. 1995).........................................................................9

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001).......................................................15, 16, 18

*Damassia v. Duane Reade, Inc.,*
No. 04 Civ. 08819, No. 04 Civ. 02295, 2009 U.S. Dist. LEXIS 77489
(S.D.N.Y. July 27, 2009) .........................................................................19

*Denney v. Deutsche Bank AG,*
443 F.3d 252 (2d Cir. 2006).......................................................................7

*Dziennik v. Sealift, Inc.,*
No. 05 Civ. 4659, 2007 WL 1580080 (E.D.N.Y. May 29, 2007).............11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
No. 05 Civ. 10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) .........16

*Frank v. Eastman Kodak Co.,*
228 F.R.D. 174 (W.D.N.Y. 2005)..................................................... passim

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.,*
55 F.3d 768 (3d Cir. 1995)...................................................................................8

*Gen. Tel. Co. of Sw. v. Falcon,*
457 U.S. 147 (1982).............................................................................................9

*Green v. Wolf Corp.,*
406 F.2d 291 (2d Cir. 1968)................................................................................14

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ........................................................................8, 15

*Iglesias-Mendoza v. La Belle Farm, Inc.,*
239 F.R.D. 363 (S.D.N.Y. 2007) ........................................................................12

*In re Ira Haupt & Co.,*
304 F. Supp. 917 (S.D.N.Y. 1969) ......................................................................20

*Joel A. v. Giuliani,*
218 F.3d 132 (2d Cir. 2000)................................................................................24

*Kamean v. Local 363, Int'l Bhd. of Teamsters,*
109 F.R.D. 391 (S.D.N.Y. 1986) ..........................................................................9

*Khait v. Whirlpool Corp.,*
No. 06 Civ. 6831, 2010 U.S. Dist. LEXIS 4067
(E.D.N.Y. Jan. 20, 2010) ...............................................................10, 11, 14, 24

*Lenahan v. Sears, Roebuck & Co.,*
No. 02 Civ. 45, 2006 WL 2085282 (D.N.J. July 24, 2006) ........................... passim

*Lynn's Food Stores, Inc. v. United States,*
679 F.2d 1350 (11th Cir. 1982) ...........................................................................24

*Maley v. Del Global Techs. Corp.,*
186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................................................19

*Marisol A. v. Giuliani,*
126 F.3d 372 (2d Cir. 1997).............................................................................9, 10

*Marisol A. v. Giuliani,*
185 F.R.D. 152 (S.D.N.Y. 199) ..........................................................................21

*Martens v. Smith Barney, Inc.,*
181 F.R.D. 243 (S.D.N.Y. 1998) ........................................................................20

*McBean v. City of New York,*
228 F.R.D. 487 (S.D.N.Y. 2005) ........................................................................12

*McKenna v. Champion Int'l Corp.*,
   747 F.2d 1211 (8th Cir. 1984) ........................................................................24

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
   No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009)....................17, 25

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972).............................................................................23

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................20

*Officers for Justice v. Civil Service Comm'n.*,
   688 F.2d 615 (9th Cir. 1982) ............................................................................23

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)..............................................................................13

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ..........................................................................9

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*,
   No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239 (S.D.N.Y. May 15, 2003) .............................19

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)..............................................................................10

*Ross v. A.H. Robins*,
   700 F. Supp. 682 (S.D.N.Y. 1988)........................................................................19

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986)..............................................................................12

*Spann v. AOL Time Warner, Inc.*,
   No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005)............................................15

*In re Top Tankers, Inc. Sec. Litig.*,
   No. 06 Civ. 13761, 2008 U.S. Dist. LEXIS 58106................................................... 16

*Torres v. Gristede's Operating Corp.*,
   No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) .........................13

*Toure v. Cent. Parking Sys.*,
   No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28, 2007) .........................11

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007)...........................20

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)............................................................................12, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................15, 16, 17

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)..........................................................................13, 20

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)..................................................................19

## STATUTES

29 U.S.C. § 216(b) ..............................................................................................4, 24

California Business & Professions Code §§ 17200 .....................................................3

Fair Labor Standards Act, 29 U.S.C. §§ 209 *et seq.* ("FLSA")........................... passim

New York Labor Law, Article 19, §§ 650 ...................................................................2

## OTHER AUTHORITIES

12 N.Y.C.R.R. Part 142 ..............................................................................................2

Fed. R. Civ. P. 23 .............................................................................................. passim

*Manual for Complex Litigation, Third* (1995)..........................................................16

*Newberg on Class Actions* § 11:27 (4th ed. 2002) ....................................................8

# INTRODUCTION

The parties' settlement of this wage and hour class and collective action providing for monetary relief of $3,700,000 is ready for final Court approval.  The settlement resolves all of Plaintiffs' and Class Members' claims against Defendants CompuCom Systems, Inc., successor by merger to Getronics Wang LLC and Getronics USA, Inc. ("CompuCom"), and Getronics Flexible Solutions, LLC ("GFS") (collectively "Defendants" or "Getronics").  It also satisfies all of the criteria for final approval under federal law.

On October 21, 2009, this Court took the first step in the settlement approval process by granting preliminary approval, appointing Outten & Golden LLP and Bruckner Burch, PLLC as Class Counsel, directing that notice be served on Class Members, and setting February 16, 2010, as the date for the final fairness hearing.  (Declaration of Justin M. Swartz in Support of Plaintiffs' Motion for Certification of Settlement Class, Final Approval of Class Action Settlement, and Approval of FLSA Settlement ("Swartz Decl.")[1] ¶ 40; Ex. E (Preliminary Approval Order).)

On November 23, 2009, Settlement Services, Inc. (the "Claims Administrator") mailed the Notice to Class Members.  (Swartz Decl. ¶ 44; Ex. G (Declaration of Loree Kovach Re: Settlement Administration ("Kovach Decl.") ¶ 6.)  The Claims Administrator remailed the Notice to all Class Members whose Notices were returned for whom an updated address could be located.  (Ex. G (Kovach Decl.) ¶ 7.)  Accordingly, the members of the class have been notified of the terms of the settlement, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement.  Only one Class Member objected to the settlement and one

---

[1]     Unless otherwise indicated, all exhibits are attached to the Declaration of Justin M. Swartz in support of Plaintiffs' Motion for Certification of Settlement Class, Final Approval of the Class Action, and Approval of FLSA Settlement.

Class Member opted out of the settlement. (Swartz Decl. ¶ 42; Ex. G (Kovach Decl.) ¶ 8.) With such overwhelming support, and for the reasons stated below, the Court should grant final approval.

Plaintiffs submit this Memorandum of Law in support of their Motion for Certification of Settlement Class, Final Approval of the Class Action, and Approval of FLSA Settlement ("Plaintiffs' Motion for Final Approval"), pursuant to Federal Rule of Civil Procedure 23(e), for an order: (1) certifying the settlement class described below; (2) approving as fair and adequate the class-wide settlement of this action, as set forth in the Joint Settlement and Release ("Settlement Agreement") attached as Exhibit D to the Swartz Declaration; and (3) approving the FLSA Settlement.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Procedural History

Plaintiffs and Class Members are former and current employees of Defendants who worked as Technical Support Specialists II, II, and IV ("TSS Workers"). TSS Workers provide information and communication technology support for Defendants' clients. Since the filing of this law suit, Defendants no longer classify employees in the position of TSS II or III as exempt from federal and state overtime laws and now pay them for overtime hours worked. (Swartz Decl. ¶ 21.)

On November 15, 2007, Plaintiff Kevin Hughes filed a Class Action Complaint against Defendants Getronics Wang LLC, Getronics USA, Inc., and Getronics Flexible Solutions, LLC, in the Southern District of New York on behalf of himself and all other similarly situated. The Class Action Complaint alleged causes of action for: (1) violations of the Fair Labor Standards Act, 29 U.S.C. §§ 209 *et seq.*, ("FLSA"); and (2) violations of the New York Labor Law, Article

19, §§ 650 *et seq.*, and the supporting New York Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 ("New York Labor Laws" or "NYLL").  On February 26, 2008, Plaintiff Hughes filed a First Amended Complaint, adding Chrystie Kilger as an additional Named Plaintiff.  On November 12, 2008, Plaintiff Hughes filed a Second Amended Complaint, removing Chrystie Kilger.  On May 7, 2009, Plaintiff Hughes filed a Third Amended Complaint, adding Diane Gosier and David Manning as additional Named Plaintiffs.  In addition to the claims already alleged, the Third Amended Complaint included for violations of the California Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq.*, and various provisions of the California Labor Code ("California Labor Laws").

Effective January 1, 2009, Getronics USA, Inc. ceased to exist as a corporate entity.  (Swartz Decl. ¶ 19.)  The legal name of Getronics Wang LLC (the predecessor to Getronics USA, Inc.) and Getronics USA, Inc. is "CompuCom Systems, Inc., successor by merger to Getronics USA, Inc."  (*Id.*)  On June 2, 2009, the Court granted a stipulated request from the Parties to add CompuCom as a named defendant in place of Getronics Wang LLC and Getronics USA, LLC.  (*Id.* ¶ 20.)

## II.    Discovery

The parties engaged in substantial discovery before agreeing to resolve this case.  (Swartz Decl. ¶¶ 4-5, 8-14.)  Plaintiffs interviewed numerous TSS Workers from across the country to determine the hours that they worked, the wages they were paid, their job duties, and other information relevant to their claims.  From these interviews, Plaintiffs obtained supportive declarations from 15 TSS Workers.  (Swartz Decl. ¶ 6.)

Plaintiffs took depositions of two Getronics executives, defended the deposition of Named Plaintiff Kevin Hughes, prepared and filed a memorandum of law in opposition to

Defendants' motion to dismiss, and prepared a motion for conditional certification and class notification pursuant to 29 U.S.C. § 216(b).  (Swartz Decl. ¶¶ 7, 9-11, 18.)

Plaintiffs obtained, reviewed, and analyzed hard-copy documents and electronically-stored data including, but not limited to, Defendants' personnel records, employee handbooks, client contracts, training manuals, payroll data, time records, job descriptions and wage and hour policies.  (Swartz Decl. ¶ 12.)  The parties engaged in numerous discovery disputes that required judicial intervention.  On ten separate occasions, Plaintiffs made written requests for discovery rulings from the Court.  (Swartz Decl. ¶ 13.)

## III.    Settlement Negotiations

The parties participated in private, non-binding mediation in order to resolve this case. Well-known employment law mediator Ruth D. Raisfeld presided over a two-day mediation on February 24 and 25, 2009.  (Swartz Decl. ¶¶ 22-23.)  The parties negotiated long into the night on both days.  After more than 25 hours of formal negotiation, the parties reached a settlement and signed a Memorandum of Understanding.  (Ex. C (MOU); Swartz Decl. ¶ 23.)  During the next several months, the parties negotiated a formal Settlement Agreement, which they filed on September 30, 2009.  (Ex. D (Settlement Agreement); Swartz Decl. ¶ 24.)

## SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

## I.    The Settlement Fund

Defendants agreed to create a Settlement Fund of three million seven hundred thousand dollars ($3,700,000) ("the Fund").  The Fund covers Class Members' awards, service payments, attorneys' fees and costs, and up to $30,000 of the administration fees and costs.  Any administrative costs in excess of $30,000 will be paid by Defendants.  (Ex. D (Settlement Agreement) ¶ 21(c).)  The Fund will be paid out, in full, to the participating Class Members.  The

Fund does not revert to Defendants. (*Id.* ¶ 21(g).) Defendants deposited the Fund in an interest-bearing escrow account on June 16, 2009. (Swartz Decl. ¶ 24; Ex. G (Kovach Decl.) ¶ 4.)

## II. **Releases**

The Settlement Agreement provides that every Class Member who does not timely opt out of the settlement will release his or her NYLL and California Wage Law claims. (Ex. D (Settlement Agreement) ¶¶ 21(c)(iv); 29.) Class members will also release FLSA claims by endorsing their settlement checks. (*Id.* ¶ 21(c)(x).)[2]

## III. **Eligible Employees**

There are two partially overlapping categories of workers entitled to receive payments from the Fund, the "FLSA Class" and the "Rule 23 Class" (collectively, "Class Members"). The FLSA Class consists of TSS Workers who have already submitted "Consents to Be a Party Plaintiff" indicating their desire to join the FLSA component of the case and individuals who join the FLSA Class by endorsing their settlement checks. (Ex. D (Settlement Agreement) ¶ 21(c)(x); Swartz Decl. ¶ 27.)

The Rule 23 Class includes two groups of workers: The "New York Class Members" worked for Defendants in New York between November 15, 2001, and December 31, 2008. (Ex. D (Settlement Agreement) ¶ 8; Swartz Decl. ¶ 27.) The "California Class Members" worked for Defendants in California between February 28, 2005, and December 31, 2008. (*Id.*)

_____

[2] The back of each settlement check will contain a legend stating: "By endorsing this check, I consent to join the FLSA collective action against Defendants, styled *Kevin Hughes, Diane Gosier and David Manning v. Getronics Wang LLC, Getronics USA, Inc. and Getronics Flexible Solutions, LLC*, 07 Civ. 10356 (LAK)(THK) and release Defendants, their predecessors and successors, from all wage and hour claims under the Fair Labor Standards Act, California Business and Professions Code, California Labor Code and the New York State Labor Law brought in the Litigation, including but not limited to unpaid overtime wages, waiting penalties and meal and rest break penalties." (*Id.*)

## IV.    Allocation Formula

Class Members who do not opt out of the settlement will be paid pursuant to an allocation formula based on the number of pay periods worked during the FLSA, New York, and California limitations periods and their job titles.  (Ex. D (Settlement Agreement) ¶ 21(c).)  In recognition of the greater remedies afforded by California law, the Settlement Agreement allocates $175,000 of the Settlement Fund to the California Class Members' claims.  (Ex. D (Settlement Agreement) ¶ 21(c)(i); Swartz Decl. ¶ 28.)  The remaining net settlement fund[3] will be allocated to the Class Members, which includes the FLSA and Rule 23 Class Members.  (Ex. D (Settlement Agreement) ¶ 21(c); Swartz Decl. ¶ 29.)  Defendants will provide the Claims Administrator with information sufficient to allow it to apply the allocation formula.  (Ex. D (Settlement Agreement) ¶ 21(c); Swartz Decl. ¶ 30.)  Settlement awards will be allocated 33 1/3 percent to wages; 33 1/3 percent interest; and 33 1/3 percent to liquidated damages.  (Ex. D (Settlement Agreement) ¶ 21(c)(iv); Swartz Decl. ¶ 32.)  Where applicable, federal, state, and local withholding taxes will be withheld from the settlement checks.  (Ex. D (Settlement Agreement) ¶ 21(c); Swartz Decl. ¶ 32.)

## V.    Attorneys' Fees, Litigation Costs, and Service Awards

Class Counsel have filed a Motion for Approval of Attorneys' Fees and Costs and a Motion for Approval of Class Representatives' Service Awards simultaneously with this Motion.

## VI.    Settlement Claims Administration

Under the Settlement Agreement, Settlement Services, Inc. of Tallahassee, Florida, serves as the Claims Administrator ("Claims Administrator").  (Ex. D (Settlement Agreement) ¶

---

[3] The "net settlement fund" is the Settlement Fund less: (i) Court-approved attorneys' fees and costs;  (ii) Court-approved service payments to the named plaintiffs; (iii) claims administration costs; (iv) the employers' customary shares of payroll taxes; (iv) the California Class Settlement. (Ex. D (Settlement Agreement) ¶ 21(c).)

21(c)(viii).)  The Claims Administrator's fees of up to $30,000 will be paid from the Settlement Fund.  (*Id.*)  Should the Claims Administrator's fees exceed this amount, Defendants will pay the excess.  (*Id.*)

On November 23, 2009, the Claims Administrator mailed the Notice to a negotiated list of 567 Class Members.  (Swartz Decl. ¶ 44; Ex. G (Kovach Decl.) ¶ 6.)  Of the 567 Notices that the Claims Administrator sent out, 38 Notices were returned as undeliverable.  (Ex. G (Kovach Decl.) ¶ 7.)  The Claims Administrator obtained updated addresses from a locator service and re-mailed the Notice to 38 addresses provided by the locator service.  (*Id.*)  Of those 38, 10 were returned as undeliverable.  (*Id.*)  The U.S. Postal Service provided forwarding addresses for 7 of these returned Notices and the Claims Administrator promptly re-mailed the Notices to the new addresses.  (*Id.*)

Only one Class Member has objected to the settlement.  (*Id.* at ¶ 8.)  Likewise, only one Class Member has filed an Opt Out Statement to exclude himself from the Settlement.  (*Id.*)

## ARGUMENT

## I.  The Settlement Class Meets the Legal Standard for Class Certification

When faced with a proposed class settlement, courts first examine whether the settlement class is certifiable.  *See Denney v. Deutsche Bank AG,* 443 F.3d 253, 270 (2d Cir. 2006) ("inquiry into the fairness of a settlement cannot supplant the inquiries . . . regarding whether the requirements for class certification have been met"); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 180-84 (W.D.N.Y. 2005)(certifying class under Federal Rule of Civil Procedure 23(b)(3) before approving settlement).  On October 21, 2009, having found that Plaintiffs met all of the requirements for class certification under

Federal Rule of Civil Procedure 23(a) and (b)(3), the Court preliminarily certified the settlement class. (Ex. E (Preliminary Approval Order) ¶ 9.)

The Court should now grant final certification of the settlement class because all of the certification requirements for settlement purposes are met and Defendants consent to certification for settlement purposes. (Ex. D (Settlement Agreement) ¶ 2.3(A).) Plaintiffs respectfully request that the Court certify the following Class for purposes of effectuating the settlement:

> all individuals in the TSS II, III, and IV job classifications employed in New York from November 21, 2001 to December 31, 2008, and employed in California from February 28, 2005 to December 31, 2008.

This Class satisfies Rule 23(a)'s requirements of numerosity, commonality, typicality and adequacy of representation, and at least one of the subsections of Rule 23(b). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997) (describing class certification requirements for settlement purposes); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (same); *Newberg on Class Actions* § 11:27 (4th ed. 2002) ("*Newberg*") (citing *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995).)

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that:

> questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

*Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997).)

### A.   Numerosity

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, Plaintiffs easily satisfy the numerosity requirement because there are approximately 567 members of the Rule 23 class. (Swartz Decl. ¶ 42.)

### B.   Commonality

The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Frank*, 228 F.R.D. at 181; *see also Lenahan v. Sears, Roebuck & Co.*, No. 02 Civ. 45, 2006 WL 2085282, at *7 (D.N.J. July 24, 2006) ("Here, the commonality requirement is met because the federal and state claims . . . present common operative facts and common questions of law," including whether service technicians should be paid for off-the-clock work). There must be a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394

(S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181.

This case involves numerous common issues. Primarily, the Named Plaintiffs and all Class Members raise common issues all stemming from the same source – that Defendants violated state and federal law by classifying TSS Workers as exempt from the relevant overtime laws. Specifically, Plaintiffs argue that Defendants unlawfully failed to pay its TSS Workers a premium for hours worked over forty in a workweek; misclassified its TSS Workers as exempt from overtime; and failed to maintain accurate payroll records. *See Khait v. Whirlpool Corp.*, No. 06 Civ. 6831, 2010 U.S. Dist. LEXIS 4067, at *7 (E.D.N.Y. Jan. 20, 2010) (finding commonality of issues for class of workers alleging misclassification and unpaid overtime and record-keeping violations) (Ex. H). In the absence of class certification and settlement, each individual Class Member would be forced to litigate each common issue of fact.

### C.    Typicality

Typicality is also satisfied. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (internal quotation marks omitted). "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

The Named Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the Rule 23 Class Members' claims. The Named Plaintiffs held the same

position and had the same job duties as the Class Members. They also suffered the same injury as did the Class Members – that Getronics failed to properly pay them correctly for overtime hours worked. *See Khait*, 2010 U.S. Dist. LEXIS 4067, at *7-8 (finding that plaintiffs ". . . suffered the same alleged injury as class members – that Whirlpool permitted them to perform work without compensation") (Ex. H); *Frank*, 228 F.R.D. at 182 (finding that class members satisfied the typicality requirement where "all class members . . . allege that Kodak failed to pay them . . . overtime wages for hours worked in excess of forty per week during the relevant time period"); *Lenahan*, 2006 WL 2085282, at *8 ("Here, the same allegedly unlawful conduct affected both the named plaintiffs and the putative class members . . . . Both the named plaintiffs and the class members have alleged that Sears' failure to compensate Technicians for work at home and travel time violated the applicable state and federal wage and hour laws. Accordingly, this Court finds the typicality requirement of Rule 23(a)(3) is also satisfied.")

### D. Adequacy of the Named Plaintiffs

Named Plaintiffs also meet the adequacy requirement. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." *Toure v. Cent. Parking Sys.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *18-19 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted) (Swartz Decl. ¶ I.) "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc.*, No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (internal quotation marks omitted).

Regarding the adequacy of the Named Plaintiffs, there is no evidence or indicia that they

have interests that are antagonistic or at odds with Class Members.

### E.  Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Satisfaction of Rule 23(a) "goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality."  *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

### 1.  Common Questions Predominate

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof."  *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted).  The essential inquiry is whether "liability can be determined on a class-wide basis, even when there are some individualized damage issues."  *Id.* at 139.  Where plaintiffs are "unified by a common legal theory" and by common facts, the predominance requirement is satisfied.  *McBean v. City of New York*, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, all members of the class are unified by common factual allegations – that all Class Members were subject to Defendants' wage and hour violations, including failing to pay them for premium overtime hours, misclassifying them as exempt from overtime, and failing to keep accurate time records.  They are also unified by a common legal theory – that Defendants' wage and hour policies violate New York and California law.  *See Iglesias-Mendoza v. La Belle Farm,*

*Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (the issue of whether employees were supposed to be paid overtime was "about the most perfect question[] for class treatment"); *Torres v. Gristede's Operating Corp.,* No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *52 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and this issue "predominates over any individual calculations of overtime wages") (Ex. J); *Lenahan*, 2006 WL 2085282, at *7 ("a similar legal question: whether the alleged failure to pay [plaintiffs] for all hours worked . . . violated the applicable state wage and hour laws . . . . predominate[s] over any factual variations . . . , such as the length of [plaintiffs'] commute or hourly wage. These individual issues affect only [plaintiffs'] potential damages, but not the nature or legal basis of class claims.")

Variations between New York and California wage and hour laws do not defeat predominance here. *See Lenahan*, 2006 WL 2085282, at *8 (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529-30 (3d Cir. 2004) and *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 313-315 (3d Cir. 1998).) "Certification of litigation classes with claims arising under the laws of several states requires a court to determine whether such state law variations render class action litigation unmanageable. These concerns of case manageability, however, are not present in the context of a class being certified for settlement purposes only." *Lenahan*, 2006 WL 2085282, at *8; *Warfarin*, 391 F.3d at 529 ("when dealing with variations in state laws, the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes").

The only individualized issues in this case pertain to the calculation of damages. However, individualized damages calculations do not defeat the Rule 23(b)(3) predominance requirement. *See Frank*, 228 F.R.D. 183 (collecting cases holding that calculation of damages in

overtime litigation does not impact the predominance analysis); *Lenahan*, 2006 WL 2085282, at *8 (same).

## 2. A Class Action is a Superior Mechanism

Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3).[4]

Here, Plaintiffs and the Class Members have limited financial resources with which to prosecute individual actions, and Plaintiffs are unaware of any individual lawsuits that have been filed by Class Members arising from the same allegations. Regarding the forum, concentrating the litigation in this Court is desirable because some of the allegedly wrongful conduct occurred within the jurisdiction of this Court.

Employing the class device here will not only achieve economies of scale for putative Class Members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. *See Khait, 2010*

---

[4] Another factor, whether the case would be manageable as a class action at trial, is not of consequence in the context of a proposed settlement. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a [trial] court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial"); *Frank*, 228 F.R.D. at 183 ("The court need not consider the [manageability] factor, however, when the class is being certified solely for the purpose of settlement."). Moreover, denying class certification on manageability grounds is "disfavored" and "should be the exception rather than the rule." *In re Visa Check*, 280 F.3d at 140 (internal quotation marks omitted).

*U.S. Dist. LEXIS 4067, at* \*11 (Ex. H); *Hanlon*, 150 F.3d at 1023; *Lenahan*, 2006 WL 2085282, at \*9 ("This settlement class involves Sears Technicians nationwide, and, therefore, traditional methods of joinder and consolidation are impracticable.")

A class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative settlement Class Members' claims.

## II. The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved in All Respects

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). *See D'Amato*, 236 F.3d at 86.

Courts examine procedural and substantive fairness in the light of the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116. *See also Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at \*6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). When, as here, "a settlement is negotiated prior to class certification, . . . it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85. *See also Spann*, 2005 WL 1330937, at \*6. Here, even under high scrutiny, procedural and substantive considerations support approving the proposed settlement.

## A.    <u>The Proposed Settlement is Procedurally Fair</u>

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations and after experienced counsel had evaluated the merits of Plaintiffs' claims.  A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)); *see also D'Amato,* 236 F.3d at 85.  "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *see also In re Top Tankers, Inc. Sec. Litig.*, No. 06 Civ. 13761, 2008 WL 2944620, at *3-4 (S.D.N.Y. July 31, 2008); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.") (quoting *Manual for Complex Litigation, Third*, § 30.42 (1995)) (internal quotation marks omitted).

Here, the settlement was reached after Plaintiffs had conducted a thorough investigation and evaluated the claims, and after extensive negotiations between the parties.  Plaintiffs interviewed numerous TSS Workers from several states to determine whether, when, and how they performed work for which Getronics did not compensate them, how much "off-the-clock" work they performed, what instructions their supervisors gave them, and other information relevant to their claims.  (Swartz Decl. ¶ 5.)  From these interviews, Plaintiffs obtained supportive declarations from fifteen TSS Workers. (Swartz Decl. ¶ 6.)

Plaintiffs obtained and analyzed a large quantity of electronically-stored data from several different sources and obtained and analyzed payroll data for TSS Workers. Plaintiffs obtained, reviewed, and analyzed thousands of pages of hard-copy documents, including Defendants' personnel records, employee handbooks, client contracts, training manuals, time records, job descriptions and wage and hour policies. (Swartz Decl. ¶¶ 12.)

To resolve the case, the parties enlisted the services of well-known employment law mediator Ruth D. Raisfeld, who presided over a lengthy two-day mediation on February 24 and 25, 2009. (Swartz Decl. ¶¶ 22-23.) After more than 25 hours of formal negotiation, the parties finally reached a settlement and signed a Memorandum of Understanding. (*Id.* ¶ 23.)

The parties signed the Settlement Agreement on September 30, 2009. (*Id.* at ¶ 24.) At all times during the settlement process, the parties negotiated on an arm's-length basis. (*Id.* at ¶ 25.) These arm's-length negotiations involving counsel and a mediator well-versed in wage and hour law raise a presumption that the settlement they achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116; *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899, at *13 (S.D.N.Y. Mar. 31, 2009) (Ex. L).

### B. <u>The Proposed Settlement is Substantively Fair</u>

The Second Circuit in *Detroit v. Grinnell Corp.* provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d 448 (2d Cir. 1974). The "*Grinnell* factors" guide district courts in this determination. They are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range

of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* at 463. All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

1.      **Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)**

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure a speedy, risk-free recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato*, 236 F.3d 78. This case is no exception, with approximately 567 putative Class Members and state wage and hour claims under two different state laws.

Although the parties have already undertaken considerable expense in litigating this matter, (*see* Swartz Decl. ¶¶ 8), further litigation without settlement would necessarily result in additional expense and delay. Additional discovery would have been required to establish liability and damages. A complicated trial would have been necessary, featuring extensive testimony by Getronics managers and executives, plaintiffs, and numerous Class Members, in addition to extensive expert testimony. Preparing and putting on evidence on the complex factual and legal issues at such a trial would have consumed tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes. A trial of the damages issues, even on a representative basis, would have been costly and would have further deferred closure. Any judgment would have likely been appealed, thereby extending the duration of the litigation. This settlement, on the other hand, makes

monetary relief available to Class Members in a prompt and efficient manner.  Therefore, the first *Grinnell* factor weighs in favor of final approval.

## 2. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."  *Maley v. Del Global Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002).  The lack of Class Member objections "may itself be taken as evidencing the fairness of a settlement."  *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,* No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239, at *4 (S.D.N.Y. May 15, 2003) (quoting *Ross v. A.H. Robins*, 700 F. Supp. 682, 684 (S.D.N.Y. 1988)) (Ex. M).

Here, the Notice included a detailed explanation of the allocation formula.  The Notice also informed Class Members that they could object to or exclude themselves from the Settlement and explained how to do so.  Only one Class Member objected to the Settlement and only one opted out.  (Swartz Decl. ¶ 45; Ex. G (Kovach Decl.) ¶ 8.)  This favorable response demonstrates that the Class approves of the results, which supports final approval.  *See Damassia v. Duane Reade, Inc.*, No. 04 Civ. 08819, No. 04 Civ. 02295, 2009 U.S. Dist. LEXIS 77489, at **4-6 (S.D.N.Y. July 27, 2009) (finding settlement to be fair, reasonable, and adequate where no class members objected and only one class member opted out) ( Ex. N); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (where 13 out of 3,500 class members objected and 3 opted-out, noting that "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require thousands more hours of discovery work for both sides, the parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Warfarin*, 391 F.3d at 537 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 236 (3d Cir. 2001).) "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian*, 80 F. Supp. 2d at 176 (quoting *Martens v. Smith Barney, Inc.*, 181 F.R.D. 243, 263 (S.D.N.Y. 1998)); *see also Frank*, 228 F.R.D. at 185 (approving settlement of case "in relatively early stages of discovery" where parties had exchanged extensive information pertaining to the identities of class members and to Defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive"). The parties' discovery here meets this standard. As outlined in Part I, *supra*, the discovery here was an aggressive effort to litigate the matter and the parties were well-equipped to evaluate the strengths and weaknesses of the case.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

The risks of establishing liability and damages further weigh in favor of final approval. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *21-22 (S.D.N.Y. June 22, 2007) (Ex. 0). In weighing the risks of establishing

liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d at 177 (quoting *Marisol A v. Giuliani*, 185 F.R.D. 152, at 164 (S.D.N.Y. 1999)) (internal quotation marks omitted).

Here, a trial on the merits would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and New York and California state wage and hour laws, and in light of the defenses available to Getronics, which would pose substantial risk as to both liability and damages.

To prove liability, Plaintiffs would have to defeat Defendants' arguments that the TSS Workers were exempt from overtime. Specifically, Defendants would argue that the FLSA's overtime requirements do not apply to the class members because they are employed in positions that are exempt based on their job duties. Accordingly, to ultimately win liability, Plaintiffs would have to show that the TSS Workers do not fit the job duties test for potentially four exempted categories, including (1) Administrative; (2) Computer Professional; (3) Executive; and (4) Professional.

While Plaintiffs believe that they could ultimately establish Defendants' liability on these claims, this would require significant factual development. Plaintiffs believe that their claims are meritorious, however, their counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The settlement alleviates this uncertainty. This factor weighs heavily in favor of final approval.

### 5. Establishing a Class and Maintaining it Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of maintaining the class status through trial is also present. Plaintiffs have not yet filed a Motion for Class Certification, and the parties anticipate that such a determination would be reached only after intense, exhaustive briefing by both parties.

Defendants would likely argue that the number and variety of individual questions (such as how many hours TSS Workers worked, whether or not these hours are reflected in Defendants' records, what job duties TSS Workers performed, the relative importance of these job duties, the relationship between these job duties and Defendants' customers' business operations, whether TSS Workers performed off-the-clock work, and other similar questions) preclude class certification. Defendants would also likely argue that a class action is not a superior method to resolve Plaintiffs' claims and that a class trial would not be manageable.

Should the Court certify the class, the parties acknowledge that Defendants would at some point challenge that certification and move to decertify it, thereby necessitating another round of extensive briefing. They would also seek permission to file an interlocutory appeal under Federal Rule of Civil Procedure 23(f). Risk, expense, and delay permeate such a process. Settlement eliminates this risk, expense, and delay. This factor favors final approval.

### 6. Defendants' Ability to Withstand a Greater Judgment Is Not Assured (*Grinnell* Factor 7)

Plaintiffs have no evidence as to whether Defendants could afford to pay a greater judgment. Although it is feasible that Defendants could, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Accordingly, this factor is not determinative.

### 7. The Settlement Fund is Substantial in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The $3.7 million settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Comm'n.*, 688 F.2d 615, 628 (9th Cir. 1982); *see Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at *12 (E.D.N.Y. May 17, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"); *Brooks v. Am. Export Indus., Inc.*, No. 71 Civ. 5128, 1977 U.S. Dist. LEXIS 17313, at *16-18 (S.D.N.Y. Feb. 17, 1977) (approving settlement of less than 1% of the best possible recovery) ( Ex. P).

The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

Here, each Class Member will receive a series of payments based upon his or her number of weeks of employment with Defendants. (Ex. D (Settlement Agreement) ¶¶ 21(c)(i)-(ii).) Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

These factors therefore weigh in favor of final approval.

\* \* \*

In sum, all of the *Grinnell* factors weigh in favor of granting final approval of the settlement. Because the settlement is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant final approval.

## III.    Approval of the FLSA Settlement is Appropriate under Federal Law.

Plaintiffs also request that this Court finally approve the settlement of their FLSA wage and hour claims. The Settlement Agreement between the parties settles all wage and hour claims brought by the Plaintiffs, both under the FLSA and New York and California wage-and-hour laws. FLSA claims are brought as a "collective action," in which employees must affirmatively "opt-in" to the litigation. *See* 29 U.S.C. § 216(b). While district courts are under an obligation to evaluate the appropriateness of class certification for state class claims under Rule 23, that certification standard is not necessary for FLSA settlements. The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement. *Khait*, 2010 U.S. Dist. LEXIS 4067, at \* 19 (citing *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984) (explaining that FLSA collective actions do not implicate the same due process concerns as Rule 23 actions because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date")) ( Ex. H).

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *Khait*, 2010 U.S. Dist. LEXIS 4067, at \*19 (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982) (Ex. H). "Typically,

courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved. *Id.*; *see also Mohney*, 2009 U.S. Dist. LEXIS 27899, at \*13 (Ex. L).

In this case, the settlement was the result of vigorously contested litigation and arm's length negotiation. (Swartz Decl. ¶¶ 25.) Recognizing the uncertain legal and factual issues involved, the parties engaged in multiple mediation sessions with an experienced mediator and, after numerous rounds of negotiation, ultimately reached the settlement pending before the Court. During the litigation and at the mediation, Plaintiffs and Defendants were both represented by counsel. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding of fair and reasonable arm's length settlement, and is therefore appropriate for final court approval.

**CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court (1) certify as final the Class described above; (2) approve as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement; and (3) approve the FLSA settlement.

Dated:      New York, New York
           February 1, 2010

Respectfully submitted,

By: /s/ Justin M. Swartz
    OUTTEN & GOLDEN LLP
    Justin M. Swartz (JS 7989)
    Adam T. Klein (AK 3293)
    Justin M. Swartz (JS 7989)
    Ossai Miazad (OM 1127)
    3 Park Avenue, 29th Floor
    New York, New York 10016
    Telephone: 212-245-1000

**BRUCKNER BURCH PLLC**
Richard J. Burch (admitted *pro hac vice*)
Michael K. Burke (admitted *pro hac vice*)
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone:  713-877-8788

**Attorneys for Plaintiffs and the Class**