**OUTTEN & GOLDEN LLP**
Adam T. Klein (AK 3293)
Justin M. Swartz (JS 7989)
Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: 212-245-1000

**BRUCKNER BURCH PLLC**
Richard J. Burch (admitted *pro hac vice*)
Michael K. Burke (admitted *pro hac vice*)
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone: 713-877-8788

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KEVIN HUGHES, DIANE GOSIER, and DAVID MANNING, on behalf of themselves and all others similarly situated,**<br><br>      **Plaintiffs,**<br>  **-against-**<br><br>**GETRONICS WANG LLC; GETRONICS USA, INC.; and GETRONICS FLEXIBLE SOLUTIONS, LLC;**<br><br>      **Defendants.** | **07-CV-10356 (LAK) (THK)** |

# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES
# AND REIMBURSEMENT OF EXPENSES

# TABLE OF CONTENTS

I.   INTRODUCTION..................................................................................................1

II.  CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF THIRTY-THREE AND ONE THIRD PERCENT OF THE SETTLEMENT FUND..........................................2

     A.  THE PERCENTAGE METHOD IS THE PREFERRED METHOD IN THE SECOND CIRCUIT FOR AWARDING ATTORNEYS' FEES IN A COMMON CASE FUND ..3

     B.  THE *GOLDBERGER* FACTORS SUPPORT CLASS COUNSEL'S FEE APPLICATION ..............................................................................................6

          1.  Class Counsel's Time and Labor .............................................................6

          2.  Magnitude and Complexity of the Litigation...........................................8

          3.  Risk of Litigation ...................................................................................9

          4.  Quality of Representation .....................................................................11

          5.  Fee in Relation to the Settlement..........................................................13

          6.  Public Policy Considerations ................................................................14

III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF THIRTY-THREE AND ONE THIRD PERCENT OF THE SETTLEMENT FUND ...........................................................................................................15

IV. CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT...................................................................17

V.  CONCLUSION ................................................................................................17

**Page(s)**

Cases

*In re American Bank Note Holographics*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................................................4

*Ansoumana v. Gristede's Operating Corp*,
    201 F.R.D. 81 (S.D.N.Y. 2001) ......................................................................9, 12

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 78101 (S.D.N.Y. Sept. 28, 2006) ..........................3

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
    493 F.3d 110 (2d Cir. 2007)......................................................................4, 5, 14

*Banyai v. Mazur*,
    No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272 (S.D.N.Y. Mar. 30, 2007)..........................6

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
    450 U.S. 728 (1981)......................................................................9

*In re Boesky Sec. Litig.*,
    888 F. Supp. 551 (S.D.N.Y. 1995)......................................................................16

*Bricker v. Planet Hollywood New York, L.P.*,
    No. 08 Civ. 443, 2009 U.S. Dist. LEXIS 76613 (S.D.N.Y. Aug. 13, 2009) ..........................12

*Brunson v. The City of New York*,
    Nos. 94 Civ. 4507, 94 Civ. 5632, 2000 U.S. Dist. LEXIS 18434, at *13 (S.D.N.Y.
    Dec. 21, 2000)......................................................................10

*Clark v. Ecolab*,
    No. 07 Civ. 8623, 2009 U.S. Dist. LEXIS 108736 (S.D.N.Y. Nov. 17, 2009) ..........................11

*Cohen v. Apache Corp.*,
    No. 89 Civ. 0076, 1993 U.S. Dist. LEXIS 5211 (S.D.N.Y. Apr. 21, 1993)..........................14

*In re Continental Ill. Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ......................................................................4

*Damassia v. Duane Reade, Inc.*,
    No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS 77489 (S.D.N.Y. July
    24, 2009) ......................................................................11

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980)......................................................................14, 15

*Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)...................................................................................10

*Dolgow v. Anderson,*
    43 F.R.D. 472, 487 (E.D.N.Y. 1968) .................................................................15

*Duchene v. Michael Cetta, Inc.,*
    No. 06 Civ. 4576, 2009 U.S. Dist. LEXIS 85955 (S.D.N.Y. Sept. 10, 2009) ........13

*In re EVCI Career Colls. Holding Corp. Sec. Litig.,*
    No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *49 (S.D.N.Y. July 27, 2007)..............5

*Frank v. Eastman Kodak Co.,*
    228 F.R.D. 174 (W.D.N.Y. 2005)....................................................................9, 12

*In re Gilat Satellite Networks, Ltd.,*
    No. 02 Civ. 1510, 2007 U.S. Dist. LEXIS 68964 .................................................13

*Gilliam v. Addicts Rehab. Ctr. Fund,*
    05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) ...................13

*In re Global Crossing Sec. & ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................6, 11

*Goldberger v. Integrated Res. Inc.,*
    209 F.3d 43 (2d Cir. 2000).........................................................................4, 6, 14

*Grace v. Ludwig¶*
    *46 U.S. 905 (1974)* ........................................................................................15

*Hicks v. Morgan Stanley & Co.,* 01 Civ. 10071,  2005 WL 2757792, at *9-10 (S.D.N.Y.
    Oct. 24, 2005)  ................................................................................................15

*In re Indep. Energy Holdings PLC,*
    2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. 2003)..............................................13, 17

*Karpus v. Borelli*
    *(In re Interpublic Sec. Litig.*), No. 03 Civ. 1194, 2004 U.S. Dist. LEXIS 21429
    (S.D.N.Y. Oct. 26, 2004) .....................................................................................5

*Khait v. Whirlpool Corp.,*
    No. 06 Civ. 6831, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010).................... passim

*In re Lloyd's Am. Trust Fund Litig.,*
    96 Civ. 1262, 2002 U.S Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002) ...............16

*Maley v. Global Techs. Corp.,*
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................3, 13, 16

*Miltland Raleigh-Durham v. Myers*,
    840 F. Supp. 235 (S.D.N.Y. 1993)........................................................17

*Mohney v. Shelly's Prime Steak*,
    06 Civ. 4270 (PAC), 2009 U.S. Dist. LEXIS 27899 (S.D.N.Y. Mar. 31, 2009)............3, 9, 13

*In re NASDAQ Market-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ..........................................................3, 16

*In re Polaroid ERISA Litig.*,
    No. 03 Civ. 8335, 2007 U.S. Dist. LEXIS 51983 (S.D.N.Y. July 19, 2007)........................4, 5

*Prasker v. Asia Five Eight LLC*,
    No. 08 Civ. 5811, 2010 U.S. Dist. LEXIS 1445 (S.D.N.Y. Jan. 4, 2010)...................... passim

*In re Prudential Sec. Inc. Ltd. P'ship Litig.*,
    912 F. Supp. 97 (S.D.N.Y. 1996)...........................................................8

*In re Ramp Corp. Sec. Litigation*,
    No. 05 Civ. 6521, 2008 U.S. Dist. LEXIS 213 (S.D.N.Y. Jan. 4, 2008)..............................4, 5

*Rabin v. Concord Assets Group, Inc.*,
    No. 89 Civ. 6130, 1991 U.S. Dist. LEXIS 18273 ....................................16

*In re RJR Nabisco, Inc. Sec. Litig.*,
    No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS 12702 (S.D.N.Y. Aug. 24, 1992) ........................16

*Sand v. Greenberg*,
    No. 08 Civ. 7840, 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010)...................................15

*Savoie v. Merchs. Bank*,
    166 F.3d 456, 461 n.4 (2d. Cir. 1999)...................................................5, 16

*Stefaniak v. HSBC Bank USA, N.A.*,
    No. 05 Civ. 720, 2008 U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. June 28, 2008) ...............13

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)................................................3, 4

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)...............................................4, 14

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993)...........................................................3

*Taft v. Ackermans*,
    No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007)............................11

*Torres v. Gristede's Operating Corp.*,
 No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 29, 2006) ........................12

*Varljen v. H.J. Meyers & Co.*,
 No. 97 Civ. 6742, 2000 U.S. Dist. LEXIS 16205 (S.D.N.Y. Nov. 6, 2000) ............................6

*Vela v. City of Houston,*
 276 F.3d 659 (5th Cir. 2001) ............................................................................................5, 14

*Velez v. Majik Cleaning Serv., Inc.*,
 No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007).................4, 5, 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005)..............................................................................................3, 4, 5

*Westerfield v. Washington Mut. Bank*,
 Nos. 06-CV-2817, 08 2009 U.S. Dist. LEXIS 94544 (E.D.N.Y. Oct. 8, 2009) ....................11

## I.    INTRODUCTION

In connection with Plaintiffs' Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Approval of the FLSA Release ("Motion for Final Approval"), which was filed on February 1, 2010, in the above-captioned action,[1] Court-appointed Class Counsel, the law firms of Outten & Golden LLP and Bruckner Burch, PLLC (together "Class Counsel"), respectfully move this Court for an award of attorneys' fees in the amount of one third (331/3%) of the Settlement Fund (the "Fund") and reimbursement of $34,167 in out-of-pocket expenses that Class Counsel incurred in successfully prosecuting the claims in this action.

Over the past two years, Class Counsel has spent more than 3,100 attorney and paralegal hours prosecuting this case. (Declaration of Justin M. Swartz in Support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Reimbursement of Expenses and Unopposed Motion for Service Payments ("Swartz Decl.") Ex. D[2].) Multiplied by each attorney's and paralegal's hourly rate, this results in a lodestar amount of approximately $1,073.086. (Ex. D.) Class Counsel's request for thirty-three percent of the Fund is approximately 1.5 times "lodestar," well within the range of what courts have awarded in similar cases. Courts routinely award counsel two to three times lodestar in class action settlements.

Class Counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result. (Swartz Decl. ¶ 17.) For the

---

[1]    For a detailed account of the factual and procedural background of this case, including settlement negotiations and administration, Class Counsel refer the Court to the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval and the supporting Declaration of Justin M. Swartz.
[2] Unless otherwise indicated, all exhibits are attached to the Declaration of Justin M. Swartz in support of Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees, Reimbursement of Expenses and Unopposed Motion for Service Awards.

reasons set forth below, Class Counsel respectfully submit that the attorneys' fees and expense reimbursements are fair and reasonable under the applicable legal standards, and, in light of the contingency risk undertaken and the result achieved, should be awarded.

## II.	CLASS COUNSEL ARE ENTITLED TO A REASONABLE FEE OF THIRTY-THREE AND ONE THIRD PERCENT OF THE SETTLEMENT FUND.

Class Counsel are entitled to reasonable attorneys' fees to compensate them for their work in recovering lawful wages on behalf of the Class. The Settlement Agreement, which has been preliminarily approved by the Court, provides that "Class Counsel will apply to the Court for attorneys' fees of no more than $1,233,333 and litigation costs of no more than $40,000." (Ex. G (Settlement Agreement) ¶ 23.) In addition, the Notice of Settlement of Class Action Lawsuit and Fairness Hearing ("Notice") that was sent to all Class Members stated the following:

> Class Counsel will ask the Court to approve payment of up to $1,233,333 (33 1/3% of the settlement fund established by Defendants) to them for attorneys' fees plus litigation expenses of no more than $40,000. The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement.

(Ex. H (Notice) ¶ 15.)

Class Counsel are asking the Court to approve a request for thirty-three and one third percent of the Fund plus expenses. This request is reasonable and well within the range approved by courts in similar cases. Allowing attorneys to recover adequate fees in wage and hour cases "furthers the remedial purposes of the FLSA and the NYLL." *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 4, 2010) (citing cases explaining the labor laws' remedial purposes).

**A.**  **THE PERCENTAGE METHOD IS THE PREFERRED METHOD IN THE SECOND CIRCUIT FOR AWARDING ATTORNEYS' FEES IN A COMMON FUND CASE.**

Although there are two ways to compensate attorneys for successfully prosecuting statutory claims – the lodestar method and the percentage of the fund method – courts in this Circuit prefer the percentage of the fund method in common fund cases like this one. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method . . . ."); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6831, 2010 U.S. Dist. LEXIS 4067, at *22 (E.D.N.Y. Jan. 20, 2010) (following the "'trend'" and adopting the percentage of the fund method); *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 4, 2010) ("In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award."); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277, at *11-12 (S.D.N.Y. May 28, 2009) (same); *Mohney v. Shelly's Prime Steak*, 06 Civ. 4270, 2009 U.S. Dist. LEXIS 27899, at *16-17 (S.D.N.Y. Mar. 31, 2009) (same); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases adopting the percentage of the fund method); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (same).

District courts in this Circuit repeatedly choose the percentage method. *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 78101, at *24 (S.D.N.Y. Sept. 28, 2006) (citations omitted) ("every significant Southern District opinion facing the issue since *Goldberger* has embraced the percentage approach . . ."  A majority of courts in other circuits also favor the percentage method in common fund cases. *See Maley v. Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("[T]here is a strong consensus – both in this Circuit and across the country – in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery."); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271

(D.C. Cir. 1993) ("[W]e join the Third Circuit Task Force and the Eleventh Circuit, among others, in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.")

There are several reasons that courts prefer the percentage method. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores*, 396 F.3d at 122. *See also*, *Goldberger*, 209 F.3d at 47-50; *In re Ramp Corp. Sec. Litig.*, No. 05 Civ. 6521, 2008 WL 58938, at *2 (S.D.N.Y. Jan. 3, 2008); *In re Polaroid ERISA Litig.*, No. 03 Civ. 8335, 2007 WL 2116398, at *2 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *24 (S.D.N.Y. June 22, 2007).

The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *Strougo*, 258 F. Supp. 2d at 262 (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order") (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992).)

This market-based rationale is consistent with recent Second Circuit attorneys' fees jurisprudence. In *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, the Second Circuit held that a "presumptively reasonable fee" takes into account what a

"reasonable, paying client" would pay. 493 F.3d 110, 111-12 (2d Cir. 2007). Employment plaintiffs, including wage and hour plaintiffs routinely agree to pay their lawyers a percentage of their recoveries. (Swartz Decl. ¶ 16); (Declaration of Mariann Meir Wang ("Wang Decl.") ¶¶ 7-8; *see also, Vela v. City of Houston,* 276 F.3d 659, 681 (5th Cir. 2001) (noting the "customary contingency" is "35 to 40% percent" in labor litigation). "While *Arbor Hill* is not controlling because it does not address a common fund fee petition, it supports use of the percentage of the fund method." *Khait*, 2010 U.S. Dist. LEXIS 4067, at *24-25.

The percentage of the fund method also promotes early resolution. It "provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores*, 396 F.3d at 122; *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2; *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *2; *Velez*, 2007 U.S. Dist. LEXIS 46223, at *24. The percentage method discourages plaintiffs' lawyers from delaying their clients' recovery by running up their billable hours, one of the most significant downsides of the lodestar method. *Karpus v. Borelli (In re Interpublic Sec. Litig.*), No. 03 Civ. 1194, 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

The percentage method also preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Id.* (quoting *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger*, 209 F.3d at 48-49; *see also In re Ramp Corp. Sec. Litig.*, 2008 WL 58938, at *2 n.2; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 WL 2230177, at

*16 (S.D.N.Y. July 27, 2007); *Banyai v. Mazur*, No. 00 Civ. 9806, 2007 U.S. Dist. LEXIS 25272, at *11 (S.D.N.Y. Mar. 30, 2007).

While courts still use a lodestar "cross check" when applying the percentage of the fund method, the "cross check" does not require to scrutinize the fee records rigorously. *Goldberger*, 209 F.3d at 50; *see, e.g., In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check). Instead, courts compare an "unexamined lodestar figure" to the requested fee to determine its propriety. *Varljen v. H.J. Meyers & Co.*, No. 97 Civ. 6742, 2000 WL 1683656, at *5 (S.D.N.Y. Nov. 8, 2000).

**B.      THE *GOLDBERGER* FACTORS SUPPORT CLASS COUNSEL'S FEE APPLICATION.**

Reasonableness is the touchstone for determining attorneys' fees. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications:

(1)      the time and labor expended by counsel;

(2)      the magnitude and complexities of the litigation;

(3)      the risk of litigation;

(4)      the quality of representation;

(5)      the requested fee in relation to the settlement; and

(6)      public policy considerations.

209 F.3d at 50 (quotations omitted). All of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

**1.      Class Counsel's Time and Labor**

Class Counsel expended significant effort to achieve the $3.7 million settlement. Before resolving this case, Class Counsel engaged in substantial formal and informal discovery to

evaluate the value of the claims, including interviewing class members nationwide to determine the hours that they worked, the wages they were paid, their work duties, and other information relevant to their claims, obtaining supportive declarations, and analyzing thousands of pages of hard-copy documents and electronically-stored data, including, but not limited to, Defendants' personnel records, employee handbooks, client contracts, training manuals, payroll data, time records, job descriptions and wage and hour policies. (Swartz Decl. ¶ 26.) The parties engaged in numerous discovery disputes that required judicial intervention. On ten separate occasions, Plaintiffs made written requests for discovery rulings from the Court. (Swartz Decl. ¶ 27.) Plaintiffs also took depositions of two Getronics executives, defended the deposition of Named Plaintiff Kevin Hughes, prepared and filed a memorandum of law defeating Defendants' motion to dismiss, and prepared a motion for conditional certification and class notification pursuant to 29 U.S.C. § 216(b). (Swartz Decl. ¶¶ 21-24.)

As part of the settlement process, Class Counsel prepared for and attended a mediation that lasted two 12+ hour days. (*Id.* ¶ 31.) After the parties had reached a preliminary agreement on the terms of settlement, Class Counsel engaged in several months of negotiation to achieve the final Settlement Agreement. (*Id.* ¶ 32.)

Class Counsel filed motions for preliminary and final approval of the settlement. (*Id.* ¶¶ 33-35.) After Notice issued, Class Counsel responded to many calls from class members with questions about the settlement. (*Id.* ¶ 39.)

For all of these reasons, Class Counsel expended over 3130 hours of professional time for an aggregate lodestar of $1,073,086.50. (*Id.* ¶ 9.) The hours reported are reasonable for a case of this magnitude and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. (*Id.* ¶ 7.)

Although O&G is relatively large for a plaintiffs' side employment law firm, along with co-counsel Bruckner Burch, it deployed a small team of attorneys and staff in order to minimize duplication of efforts and maximize billing judgment. (*Id.* ¶ 8.) Class Counsel also made every effort to have work performed by the attorney or paralegal with the lowest hourly rate who was able to perform it effectively. (*Id.*)

Moreover, the requested fee is not based solely on time and effort already expended. It is also meant to compensate Class Counsel for time that Class Counsel will be required to spend administering the settlement in the future. "The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request." *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 U.S. Dist. LEXIS 1445, at \*17-18 (S.D.N.Y. Jan. 4, 2010). In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment. For example, many Class Members have had questions regarding the settlement and we expect that they will continue call us requesting information as the settlement administration continues. (Swartz Decl. ¶ 11.) Class Counsel will not file a supplemental fee application notwithstanding their commitment to see this settlement through to the end. (Swartz Decl. ¶ 12.)

### 2. <u>Magnitude and Complexity of the Litigation</u>

The size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *Goldberger*, 209 F.3d at 50; *In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 912 F. Supp. 97, 100 (S.D.N.Y. 1996). Courts have recognized that wage and hour cases involve complex legal issues: "FLSA claims typically involve complex mixed questions of fact and law . . . . These statutory questions must be resolved in light of volumes of legislative history and over

four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981).

Among FLSA cases, the most complex type is the "hybrid" action brought here, where state wage and hour violations are brought as ("opt out") class actions pursuant to Federal Rule of Civil Procedure 23, in the same action as the FLSA collective action ("opt in") mechanism pursuant to 29 U.S.C. § 216(b). Because the same set of operative facts are being applied and analyzed similarly under both statutory frameworks, justice is served by having the litigation in one forum for consistency and efficiency. *See Ansoumana v. Gristede's Operating Corp,* 201 F.R.D. 81, 89 (S.D.N.Y. 2001). However, hybrid cases require complex questions of law, especially where, as here, multiple states' wage-and-hour laws are at issue.

In this case, disputed questions of fact loomed large, including whether Defendants unlawfully failed to pay its class members a premium for hours worked over forty in a workweek; misclassified class members as exempt from overtime; and failed to maintain accurate payroll records.

Given these mixed questions of law and fact, this factor supports approving Class Counsel's attorneys' fee request. *See Frank*, 228 F.R.D. at 189 (mixed questions of fact and law supported court's award of attorneys' fees representing 38% of the common fund); *see also Khait,* 2010 U.S. Dist. LEXIS 4067, at *21-27 (awarding O&G attorneys' fees of 33% of the common fund in FLSA and state wage and hour case involving similar factual and legal questions); *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *14-19 (same).

### 3. <u>Risk of Litigation</u>

The risk of litigation is also an important factor in determining a fee award. Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of

an award. *Detroit v. Grinnell Corp.,* 495 F.2d 448, 470 (2d Cir. 1974). "[D]espite the most

rigorous and competent of efforts, success is never guaranteed." *Id.* at 471.

Class Counsel undertook to prosecute this action without any assurance of payment for

their services, litigating this case on a wholly contingent basis in the face of tremendous risk.

(Swartz Decl. ¶ 15.)  Large-scale wage and hour cases of this type are, by their very nature,

complicated and time-consuming.  Any lawyer undertaking representation of large numbers of

affected employees in such actions inevitably must be prepared to make a tremendous

investment of time, energy, and resources.  Due also to the contingent nature of the customary

fee arrangement, lawyers are asked to be prepared to make this investment with the very real

possibility of an unsuccessful outcome and no fee of any kind.

Moreover, the facts and circumstances of this case presented numerous and substantial

hurdles to a successful recovery of unpaid wages.  The absence of accurate time records not only

contributed to the complexity of this case, but also presented a significant challenge to proving

that Plaintiffs and class members worked overtime.  (Swartz Decl. ¶ 18.)  In addition, if the case

went to trial, Plaintiffs would have to disprove Defendants' arguments that class members were

exempt from overtime because they are employees employed in positions that are exempt based

on their job duties.  To ultimately win liability, Plaintiffs would have to show that class members

do not fit the job duties test for potentially four exempted categories, including (1)

Administrative; (2) Computer Professional; (3) Executive; and (4) Professional.  Such claims can

and would be disputed by Defendants' witnesses, giving rise to credibility issues and significant

risk at trial. *See Brunson v. The City of New York*, Nos. 94 Civ. 4507, 94 Civ. 5632, 2000 WL

1876910, at *4 (S.D.N.Y. Dec. 22, 2000) (where class counsel "faced significant obstacles in the

lack of reliable means of verifying hours worked and tasks performed by individual plaintiffs," class counsel was entitled to a 50% premium for their achievement of a settlement).

Despite these risks, Class Counsel secured a substantial settlement. Accordingly, the risk of litigation and collection weigh in favor of Class Counsel's request for attorneys' fees.

### 4.    Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing*, 225 F.R.D. at 467). The $3.7 million settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. The settlement amounts will be available to Class Members without the uncertainty and delay of trial. Critically, since this lawsuit was filed, Defendants no longer classify employees in the positions of TSS II or TSS III as exempt from overtime laws. This change in the Defendants' practices weighs in favor of granting Plaintiffs' attorneys' fees motion.

Class Counsel has substantial experience prosecuting large-scale wage and hour class and collective actions. *See, e.g., Khait,* 2010 U.S. Dist. LEXIS 4067, at *21 (O&G lawyers "have substantial experience prosecuting and settling . . . wage and hour class actions . . . ."); *Clark v. Ecolab,* No. 07 Civ. 8623, 2009 U.S. Dist. LEXIS 108736, at *20 (S.D.N.Y. Nov. 17, 2009) (O&G are "skilled and experienced employment class action lawyers ... [and] have extensive experience prosecuting and settling nationwide wage and hour class and collective actions"); *Westerfield v. Washington Mut. Bank,* No. 06 Civ. 2817, No. 08 Civ. 287, 2009 U.S. Dist. LEXIS 94544, at * 12-13 (E.D.N.Y. Oct. 2, 2009) (same); *Damassia v. Duane Reade, Inc.*, No.

04 Civ. 8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS 77489, at *8 (S.D.N.Y. July 24, 2009) (noting that O&G "has substantial experience prosecuting and settling employment class actions, including wage and hour class actions and are well-versed in wage and hour law and in class action law"); *Reyes*, 2009 U.S. Dist. LEXIS 45277, at *7 ("[O&G] 'has an established record of competent and successful prosecution of large wage and hour class actions, and the attorneys working on the case are likewise competent and experienced in the area.'"); *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *49 (S.D.N.Y. Sept. 29, 2006) ("[O&G] is qualified, experienced, and generally able to conduct the [class wage and hour] litigation.") (internal quotations omitted); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 87 (S.D.N.Y. 2001) (O&G is "experienced and well-qualified in the fields of labor law and class litigation and, in particular, wage-and-hour class litigation"); *Bricker v. Planet Hollywood New York, L.P.*, No. 08 Civ. 443, 2009 U.S. Dist. LEXIS 76613, at *3 (S.D.N.Y. Aug. 13, 2009) (noting Bruckner Burch PLLC provided "high quality representation" as class counsel).

Class Counsel's skill and experience was directly responsible for the favorable settlement and weighs in favor of granting the requested fees. (Swartz Decl. ¶ 4); (Burch Decl. ¶¶ 2-7); *See Velez*, 2007 U.S. Dist. LEXIS 46223, at *25 (holding that "Lead Counsel's experience representing plaintiffs in class actions" supported a 33.33% contingency fee award); *Frank*, 228 F.R.D. at 189 (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

**5. <u>Fee in Relation to the Settlement</u>**

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See, e.g., In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007). "[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement." *Id.* (quoting *In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 U.S. Dist. LEXIS 17090, at *20 (S.D.N.Y. Sept. 26, 2003) (internal quotation marks omitted).)

Class Counsel's thirty-three percent (33⅓%) fee request is "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008). Courts in this Circuit have routinely granted requests of thirty-three percent of substantial settlement funds. *See Khait,* 2010 U.S. Dist. LEXIS 4067, at *21 (awarding class counsel 33% of $9.25 million settlement fund in FLSA and 13 state wage and hour law off-the-clock case); *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *16 (awarding class counsel $346,500 of a $1,050,000 settlement fund in FLSA and NYLL tip misappropriation case) (citations omitted)*; Duchene v. Michael Cetta, Inc.*, No. 06 Civ. 4576, 2009 U.S. Dist. LEXIS 85955, at *8-9 (S.D.N.Y. Sept. 10, 2009) (awarding class counsel 32.2% of $3,150,000 fund in FLSA and NYLL tip misappropriation case); *Mohney*, 2009 U.S. Dist. LEXIS 27899, at *13, 16-17 (awarding O&G 33% of $3,265,000 fund in FLSA and NYLL case); *Stefaniak v. HSBC Bank USA, N.A.*, No. 05 Civ. 720, 2008 U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. June 28, 2008) (awarding O&G and co-counsel 33% of $2.9 million fund in FLSA and NYLL case); *Maley*, 186 F. Supp. 2d at 370 (awarding 33 1/3% fee on fund valued at $11.5 million); *Cohen v. Apache Corp.*, No. 89 Civ. 0076, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (awarding 33 1/3% of the $6.75 million fund).

The Second Circuit's *Arbor Hill* decision ". . . supports a 33% recovery in a case like this one where Class Counsel's fee entitlement is entirely contingent upon success." *Khait,* 2010 U.S. Dist. LEXIS 4067, at *25. One-third is the standard contingency rate in employment litigation in this district. (Swartz Decl. ¶ 16); (Wang Decl. ¶¶ 7-8); *see also, Vela v. City of Houston,* 276 F.3d 659, 681 (5th Cir. 2001) (noting the "customary contingency" is "35 to 40% percent" in labor litigation).

### 6. Public Policy Considerations

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering attorneys' fees awards, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399. Allowing attorneys to recover sufficient fees in wage and hour cases "furthers the remedial purposes of the FLSA and the NYLL." *Prasker v. Asia Five Eight LLC*, No. 08 Civ. 5811, 2010 U.S. Dist. LEXIS 1445, at *17 (S.D.N.Y. Jan. 4, 2010) (citing cases explaining the labor laws' remedial purposes). Where relatively small claims, like the wage and hour claims here, can only be prosecuted through aggregate litigation, the law relies largely on "private attorneys general" to prosecute them. *Prasker*, 2010 U.S. Dist. LEXIS 1445, at *17 (citing *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980)). Attorneys who fill this role "must be adequately compensated for their efforts." *Prasker*, 2010 U.S. Dist. LEXIS 1445, *17. Without "sufficient incentive to bring common fund cases that serve the public interest," *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000), private lawyers would not take cases like this one and "wage and hour abuses would go without remedy." *Prasker*, 2010 U.S. Dist. LEXIS 1445, *17 ("attorneys would be unwilling to take on the risk.") *cf. Sand v.*

*Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010) (attorneys' fees

are meant to "encourage members of the bar to provide legal services to those whose wage

claims might otherwise be too small to justify the retention of able, legal counsel."). If courts

denied sufficient attorneys' fees, "no attorneys . . . would likely be willing to take on . . . small-

scale class actions[.]" *Id.* Courts, therefore, look with favor upon awarding attorney fees in class

actions that "encourage the vigilance of private attorneys general to provide corporate therapy

protecting the public investor who might otherwise be victimized." *Grace v. Ludwig,* 484 F.2d

1262, 1267 (2d Cir. 1973) *cert denied*, 416 U.S. 905, 94 S. Ct. 1610 (1974). Fee awards in cases

like this serve the additional purpose of discouraging future misconduct of a similar nature. *See*

*Roper*, 445 U.S. at 338-39; *see also Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968),

*reversed and remanded on other grounds*, 438 F.2d 825 (2d Cir. 1970).

## III. THE LODESTAR CROSS CHECK FURTHER SUPPORTS AN AWARD TO CLASS COUNSEL OF THIRTY-THREE AND ONE THIRD PERCENT OF THE SETTLEMENT FUND.

Following *Goldberger*, courts usually apply the percentage method and loosely use the

lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50. The Second

Circuit "encourages the practice of requiring documentation of hours as a 'cross check' on the

reasonableness of the requested percentage." *Id.* As part of the cross check, the lodestar is

determined by multiplying the hours reasonably expended on the case by a reasonable hourly

rate. *See Hicks v. Morgan Stanley & Co.*, 01 Civ. 10071, 2005 WL 2757792, at *9-10

(S.D.N.Y. Oct. 24, 2005). Courts then consider whether a multiplier is warranted based on

factors such as (1) the contingent nature of the expected compensation for services rendered; (2)

the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of

representation; and (4) the results achieved.  *In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562

(S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie*, 166 F.3d at 460.

        Courts regularly award lodestar multipliers from 2 to 6 times lodestar.  *See, e.g., In re

Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 U.S Dist. LEXIS 22663, at *78-81

(S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers

awarded by courts within the Second Circuit"); *Maley*, 186 F. Supp. 2d at 371 (the "modest

multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Market-Makers Antitrust Litig.*, 187

F.R.D. at 489 (awarding multiplier of 3.97 times lodestar); *Rabin v. Concord Assets Group, Inc.,*

No. 89 Civ. 6130, 1991 U.S. Dist. LEXIS 18273, at *3-4 (S.D.N.Y. Dec. 19, 1991) (awarding

multiplier of 4.4); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 U.S. Dist. LEXIS

12702, at *19-22 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6).  Here, Class Counsel

seeks a lodestar multiplier of 1.15 – which is well within the range awarded by courts in this

Circuit.  (Swartz Decl. ¶ 10.)

        In calculating the lodestar for cross check purposes, the "hours documented by counsel

need not be exhaustively scrutinized by the district court."  *Goldberger*, 209 F.3d at 50.  Rather,

the "reasonableness of the claimed lodestar can be tested by the court's familiarity with the

case[.]"  *Id.*  Class Counsel spent more than 3,100 hours litigating and settling this matter.  (Ex.

D.)  The time spent by Class Counsel is described in the accompanying Declaration of Justin M.

Swartz and Class Counsel's contemporaneous time records attached thereto.  (Swartz Decl. ¶¶

19-35; Ex. C (Time Records); Burch Decl, Ex. 1 (Time Records).  The hours worked by Class

Counsel result in a lodestar of $1,073,086.50.  If the Court grants this motion, Class Counsel will

recover approximately 1.15 times their lodestar fees.

**IV.    CLASS COUNSEL IS ENTITLED TO REIMBURSEMENT OF EXPENSES UNDER THE SETTLEMENT AGREEMENT.**

Class Counsel requests expenses in the amount of $34,167 to be paid from the Fund. "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (citing *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)). Here, Class Counsel's un-reimbursed expenses were incidental and necessary to the representation of the Class. (Swartz Decl. ¶ 13.) They include costs for telephone charges, postage, transportation, working meals, photocopies, electronic research, and other expenses. (*Id.*)

**V.    CONCLUSION**

For the reasons set forth above, Class Counsel respectfully request that the Court grant Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Reimbursement of Expenses, and enter an Order: (i) awarding attorneys' fees in the amount of thirty-three and one third percent of the Fund; and (ii) reimbursing $34,167 in out-of-pocket expenses that Class Counsel incurred in successfully prosecuting the claims in this action.

Dated:        New York, New York
              February 1, 2010

                         Respectfully submitted,

                         **OUTTEN & GOLDEN LLP**
                         By:

                         /s/ Justin M. Swartz
                         Justin M. Swartz (JS 7989)

                         **OUTTEN & GOLDEN LLP**
                         Adam T. Klein (AK 3293)
                         Justin M. Swartz (JS 7989)

Ossai Miazad (OM 1127)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000

**BRUCKNER BURCH PLLC**
Richard J. Burch (admitted *pro hac vice*)
Michael K. Burke (admitted *pro hac vice*)
1415 Louisiana, Suite 2125
Houston, Texas 77002
Telephone:  713-877-8788
**Attorneys for Plaintiffs and the Class**